## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW MEXICO

| | | |
|---|---|---|
| NEW MEXICO TOP ORGANICS—ULTRA HEALTH, INC., and JACOB R. CANDELARIA, TOMAS LORENZO VALENCIA, BRYCE BRYANT-FLYNN, MATIAS TRUJILLO, as father and guardian of MT, a minor, ERICA ROWLAND, and ARIEL McDOUGAL, on behalf of themselves and all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>BLUE CROSS AND BLUE SHIELD OF NEW MEXICO, TRUE HEALTH NEW MEXICO, INC., CIGNA HEALTH AND LIFE INSURANCE COMPANY, MOLINA HEALTHCARE OF NEW MEXICO, INC., PRESBYTERIAN HEALTH PLAN, INC., PRESBYTERIAN INSURANCE COMPANY, INC., and WESTERN SKY COMMUNITY CARE, INC.,<br><br>Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | Civil Action No.: _____<br><br>(Removed from the Second Judicial District Court, State of New Mexico, County of Bernalillo, Case No. D-202-CV-202203237) |

## NOTICE OF REMOVAL

Pursuant to 28 U.S.C. §§ 1331, 1332(d), 1441, 1442(a), and 1446, and 29 U.S.C. § 1132,

Defendants, Cigna Health and Life Insurance Company ("Cigna"), Blue Cross and Blue Shield of

New Mexico, an unincorporated division of Health Care Service Corporation, a Mutual Legal

Reserve Company ("HCSC"), True Health New Mexico, Inc. ("True Health"), Presbyterian Health

Plan, Inc. and Presbyterian Insurance Company, Inc. (collectively, "Presbyterian"), and Western

Sky Community Care, Inc. (collectively, the "Removing Defendants"), hereby remove this action

from the Second Judicial District Court, County of Bernalillo, State of New Mexico, where it is

now pending, to the United States District Court for the District of New Mexico.[1] The Removing Defendants state as follows to establish the United States District Court's jurisdiction:

## INTRODUCTION

1.     Stated broadly, Plaintiffs' putative class-action Complaint alleges that Defendants, who administer health plans, must pay for the cost of medical marijuana distributed under the Lynn and Erin Compassionate Use Act, NMSA 1978 § 26-2B-1 *et seq.*, to their plan members for behavioral/mental health conditions. Cplt. ¶¶ 1-6, 9-13, 163-174, 200-204. According to Plaintiffs' sweeping theory, Defendants' obligation to pay for medical marijuana extends to benefit plans governed by federal laws such as Medicaid and the Employee Retirement Income Security Act of 1974 ("ERISA"), notwithstanding that it is illegal to manufacture, distribute, dispense, or possess marijuana, except for federally approved research studies, under the federal Controlled Substances Act. *See id.*; 21 U.S.C. §§ 812, 841, 844; *Gonzales v. Raich*, 545 U.S. 1, 10-15 (2005). A copy of the Complaint, as well as the summons served on Cigna, is attached as **Exhibit 1**.

2.     This Court has original jurisdiction of Plaintiffs' action on three separate grounds. First, the claims asserted against Cigna and True Health arise under a federal law, namely, ERISA, 29 U.S.C. § 1001 *et seq*. Plaintiff Bryant-Flynn alleges that Cigna has failed to pay benefits allegedly due for his medical cannabis under "his employer's group health program." Cplt. ¶¶ 17, 52, 169, 172. Similarly, Plaintiff Valencia alleges that True Health failed to pay benefits allegedly due for his medical cannabis under a "Large Group PPO" health plan he maintains "through his employer." Cplt. ¶¶ 16, 45, 169, 172. These "group" health plans are

---

[1] Counsel for Defendant Molina Healthcare of New Mexico, Inc. ("Molina") has advised that Molina consents to removal and will file a separate notice confirming said consent. Hence, Molina is not referred to as a Removing Defendant here.

employee welfare benefit plans governed by ERISA, 29 U.S.C. §§ 1002(1), 1003(a), since they are established and maintained by the Plaintiffs' employers for the purpose of providing medical and surgical benefits to their employees. Cplt. ¶¶ 16, 45, 52. Because Bryant-Flynn's claims against Cigna, and Valencia's claims against True Health, allege the failure to pay benefits allegedly due under ERISA plans, ERISA completely preempts those claims and converts them into federal claims that are removable to this Court. *Speer v. Prudential Ins. Co. of Am.*, 645 Fed. App'x. 821, 824 (10th Cir. 2016).

3.      Second, original jurisdiction of this action exists under the Class Action Fairness Act, 28 U.S.C. § 1332(d), because (1) the proposed class has more than 100 members, (2) the parties are minimally diverse, and (3) the amount in controversy exceeds $5,000,000, and Plaintiffs cannot meet their burden of establishing that any exception to jurisdiction exists.

4.      Third, although the Complaint asserts only state-law claims, each of the claims necessarily raises disputed and substantial issues of federal law, including whether federal law— namely, the Controlled Substances Act—permits a State to mandate coverage, under a health plan regulated by federal law, of substances prohibited by the Controlled Substances Act. *Grable & Sons Metal Prods. v. Darue Eng'g & Mfg.*, 545 U.S. 308 (2005) (holding that state-law claim to quiet title was properly removed to district court because it hinged on whether IRS had validly seized taxpayer's property and sold it to defendant). Plaintiffs here are seeking a judicial declaration that "the entire cost of medical cannabis shall be covered by health policies sold in New Mexico" and that such health plans must not impose cost-sharing on medical cannabis. Cplt. Prayer for Relief ¶ (e)-(f). These claims necessarily and unavoidably raise the substantial federal issue of whether a state may mandate that insurers administering or offering health plans under the auspices of federal laws such as ERISA and Medicaid must cover cannabis, although it

is proscribed by the Controlled Substances Act. *See* 21 U.S.C. §§ 812, 841, 844; *Raich*, 545 U.S. at 10-15. In addition, for the Defendants which are Managed Care Organizations ("MCOs") operating Medicaid plans that are federally funded and governed by federal Medicaid law, Plaintiffs' claims necessarily raise issues regarding whether coverage of marijuana violates the provisions of federal Medicaid law.

5.      Finally, to the extent necessary, this Court has supplemental jurisdiction over any state law claims because those claims "form part of the same case or controversy" as the claims over which the Court has original jurisdiction. 28 U.S.C. § 1367.

6.      Each basis for the Court's removal jurisdiction is discussed separately below.

## I.      ERISA's Civil Enforcement Provision, § 1132(a), Completely Preempts Plaintiffs' State Law Claims against Cigna and True Health, and Converts Them into Federal Claims.

7.      A civil action brought in a State court of which the district courts of the United States have original jurisdiction may be removed to federal court by the defendant or defendants. 28 U.S.C. § 1441. The district courts' original jurisdiction extends to "federal question" cases, that is, all "civil actions arising under the Constitution, laws, or treaties of the United States." 28 U.S.C. § 1331; *Metro. Life Ins. Co. v. Taylor*, 481 U.S. 58, 62-63 (1987).

8.      Under the well-pleaded complaint rule, the defendant's assertion of a federal defense to a state-law claim by itself does not create federal question jurisdiction. *Bd. of Cty. Comm'rs of Boulder Cty. v. Suncor Energy (U.S.A.) Inc.*, 25 F.4th 1238, 1255 (10th Cir. 2022). But this rule is subject to an exception for the doctrine of complete preemption, under which the preemptive force of a federal statute is so "extraordinary" that it "converts an ordinary state common law complaint into one stating a federal claim for purposes of the well-pleaded complaint rule." *Metro. Life Ins. Co. v. Taylor*, 481 U.S. 58, 65 (1987).

9.      ERISA is one of the federal laws that has complete preemptive force. *Salzer v. SSM Health Care of Okla. Inc.*, 762 F.3d 1130, 1134 (10th Cir. 2014). Thus, a claim falling within the scope of ERISA's civil enforcement provision, § 502(a), 29 U.S.C. § 1132(a), "even if pleaded in terms of state law, is in reality based on federal law." *Aetna Health Inc. v. Davila*, 542 U.S. 200, 207-208 (2004); *Suncor Energy*, 25 F.4th at 1256 (preempted state-law cause of action becomes "purely a creature of federal law, notwithstanding the fact that state law would provide a cause of action in the absence of the federal law"). Such completely preempted claims are removable to federal court notwithstanding the well-pleaded complaint rule. *Taylor*, 481 U.S. at 66; *see also Aetna Health*, 542 U.S. at 207-208.

10.     ERISA preempts any "state law claim or remedy based on any wrongful withholding of benefits promised under an employee benefit plan." *Speer v. Prudential Ins. Co. of Am.*, 645 Fed. App'x. 821, 824 (10th Cir. 2016). Put another way, if "interpretation of the terms of [plaintiffs'] benefit plans forms an essential part of their [state-law] claim," and "liability would exist only . . . because of [defendants'] administration of ERISA-regulated benefit plans," the claim is completely preempted. *Salzer*, 762 F.3d at 1138; *see also Aetna Health*, 542 U.S. at 210 ("[I]f an individual brings suit complaining of a denial of coverage for medical care, where the individual is entitled to such coverage only because of the terms of an ERISA-regulated employee benefit plan, and where no legal duty (state or federal) independent of ERISA or the plan terms is violated, then the suit falls 'within the scope of' ERISA § 502(a)(1)(B)"); *Taylor*, 481 U.S. at 62-63 ("[A] suit by a beneficiary to recover benefits from a covered plan … falls directly under § 502(a)(1)(B) of ERISA, which provides an exclusive federal cause of action for resolution of such disputes").

11.     In this case, ERISA completely preempts Plaintiffs' claims against Cigna and True Health because Plaintiffs allege that Cigna and True Health failed to pay benefits for medical cannabis allegedly due under Plaintiff Bryant-Flynn's and Plaintiff Valencia's ERISA-regulated plans.

12.     Specifically, Plaintiffs allege that Bryant-Flynn "participates in his employer's group health program with Cigna" and has had coverage under that plan since June 2021. Cplt. ¶ 52. Similarly, Plaintiffs allege that Valencia has received health benefits "through his employer," Southwest Wellness, pursuant to a "Large Group PPO plan" with True Health and has had coverage under that plan since at least January 1, 2022. Cplt. ¶¶ 16, 45.

13.     In Count One, Plaintiffs allege that Cigna and True Health "violated the Behavioral Health Services Equity Acts [*e.g.*, NMSA 1978 § 59A-23-16] by requiring class members, including Plaintiffs [Bryant-Flynn and Valencia], to pay 100% of their respective medical cannabis costs" under their employers' health plans. Cplt. ¶¶ 16, 45, 52, 164. In Count Two, Plaintiffs allege that "Valencia and Bryant-Flynn and other members of the class entered into valid written contracts with [True Health and Cigna] for health insurance, including the offering of behavioral health services," Cplt. ¶ 169, that their health insurance policies incorporate "all applicable state and federal laws," Cplt. ¶ 171, and that True Health and Cigna breached those health insurance policies because Valencia and Bryant-Flynn have "paid one hundred percent (100%) of the cost of their medical cannabis in violation of the Behavioral Health Services Equity Acts." Cplt. ¶ 172.[2]

---

[2] Plaintiffs further allege that Cigna's and True Health's failure to pay 100% of the cost of Bryant-Flynn's and Valencia's medical cannabis under their health plans violates the covenant of good faith and fair dealing (Count Three); constitutes an "unconscionable trade practice" under the New Mexico Unfair Practices Act, NMSA 1978 § 57-12-2, and the New Mexico Insurance Code, NMSA 1978 § 59A-16-24(A); and resulted in Cigna and True Health "being unjustly enriched" (Count Six). Finally, Plaintiffs seek a declaratory judgment (in Count Seven) requiring that health plans issued in New Mexico, including Bryant-Flynn's and Valencia's employer sponsored plans, must avoid cost sharing for medical cannabis and that "the entire cost of medical cannabis shall be covered by all health

14.     To adjudicate these Plaintiffs' (and other similar situated class members') claims, a court must interpret the coverage provisions and exclusions within Bryant-Flynn's and Valencia's health plans to determine what benefits the plans affords for medical cannabis, what cost sharing the plans impose on medical cannabis, and whether Cigna and True Health have failed to provide the benefits afforded by the plans. Because Cigna's alleged liability to Bryant-Flynn and True Health's alleged liability to Valencia would not exist but for their administration of those Plaintiffs' ERISA-regulated plans, and interpretation of the plan terms is essential to determining whether they are entitled to benefits for their medical cannabis, ERISA completely preempts their claims. *Speer*, 645 Fed. App'x. at 824 (ERISA completely preempted state-law claims by beneficiary who alleged plan's insurer misdirected his share of life insurance benefit to his brother); *Salzer*, 762 F.3d at 1138 (ERISA completely preempted beneficiary's claim that medical provider tortiously interfered with his health insurance contract by filing lien for amounts that were covered by plan); *see also Aetna Health*, 542 U.S. at 210 (state-law statutory claim for damages stemming from health insurer's allegedly negligent determination of benefits under health plan was completely preempted).

15.     Finally, the health insurance policies that Plaintiffs refer to throughout the Complaint for Bryant-Flynn and Valencia are "employee welfare benefit plans" as defined in ERISA, 29 U.S.C. § 1002(1). ERISA broadly defines "employee welfare benefit plan" as "any plan, fund, or program … established or maintained by an employer or by an employee organization … for the purpose of providing for its participants or their beneficiaries, through the purchase of insurance or otherwise, (A) medical, surgical, or hospital care or benefits, or benefits in the event of sickness, accident, disability, death or unemployment." 29 U.S.C. § 1002(1). The

---

policies sold in New Mexico." Cplt. ¶ 204(d)-(e). To the extent these claims are not expressly preempted, the Court has supplemental jurisdiction over them and any remaining state law claims asserted by Plaintiffs. *See infra*.

plan document for Bryant-Flynn's health insurance plan shows that his employer, The Verdes Foundation, established the plan to provide medical and surgical benefits to its employees and their dependents.  And as noted, Plaintiffs allege that Valencia receives health benefits "through his employer," Southwest Wellness, pursuant to a "Large Group PPO plan" with True Health. Cplt. ¶¶ 16, 45. Such employer-sponsored health plans are regulated by ERISA. *Salzer*, 762 F.3d at 1138, n.5 (noting that a health insurance plan was ERISA-governed because it "was established and maintained by Hospital Corporation of America, an employer engaged in commerce or an industry affecting commerce"). A copy of Bryant-Flynn's plan document is attached as **Exhibit 2**.[3]

## II.   This Court Has Original Jurisdiction under the Class Action Fairness Act.

16.     This Court also has original jurisdiction over this action under the Class Action Fairness Act ("CAFA"), 28 U.S.C. § 1332(d). CAFA, a provision that Congress passed to "expand substantially federal court jurisdiction over class actions," grants federal courts original jurisdiction over putative class actions when (1) the proposed class has more than 100 members, (2) "the parties are minimally diverse," and (3) the amount in controversy exceeds $5,000,000. *Woods v. Std. Ins. Co.*, 771 F.3d 1257, 1262 (10th Cir. 2014) (citing, among other things, 28 U.S.C. §§ 1332(d)(2), (d)(5)(B)) (internal quotations omitted). All three requirements are met here, and Plaintiffs cannot meet their burden of proving that any exception to CAFA jurisdiction applies.

### A.  This Case Meet the Threshold Requirements for CAFA Jurisdiction.

17.     First, Plaintiffs' Complaint alleges that they "believe that there will be more than 10,000 members of the Class." Cplt. ¶ 157; *see also id.*, ¶ 76 (alleging that as of January 31,

---

[3] Upon information and belief, Plaintiffs have a copy of Valencia's plan document, *see* Cplt. p. 25, n.1, but it can be provided upon request.

2022, New Mexico had over 130,000 "Qualified Patients" under the Lynn and Erin

Compassionate Use Act, with more than 70,000 Qualified Patients who were diagnosed with

Posttraumatic Stress Disorder). Accordingly, "the number of members of all proposed plaintiff

classes in the aggregate" exceeds 100 members. *See* 28 U.S.C. § 1332(d)(5)(B).

18.     Second, the parties are minimally diverse in that "any member of a class of

plaintiffs is a citizen of a State different from any defendant." *See* 28 U.S.C. § 1332(d)(2)(A).

19.     Plaintiffs allege, among other things, that Plaintiff New Mexico Top Organics—

Ultra Health, Inc. ("Ultra") is a New Mexico corporation with its principal place of business in

Bernalillo, New Mexico, making Ultra a citizen of New Mexico. *See* Cplt. ¶ 14; *see also*

*Grynberg v. Kinder Morgan Energy, L.P.*, 805 F.3d 901, 905 (10th Cir. 2015) ("For diversity, a

corporation is a citizen of its state of incorporation and the state where its principal place of

business is located."). Plaintiffs also concede that Cigna Health and Life Insurance Company

("Cigna") "is a foreign corporation with its principal place of business located at 1601 Chestnut

Street, Philadelphia, PA 19192." Cplt. ¶ 23. Because Ultra is a citizen of New Mexico, and Cigna

is a "foreign corporation" located in Pennsylvania, the parties satisfy CAFA's minimum

diversity requirements. *See* 28 U.S.C. § 1332(d)(2)(A).

20.     In addition, while Plaintiffs named Blue Cross and Blue Shield of New Mexico

("BCBSNM") as a defendant, BCBSNM is not a legal entity. *See* Declaration of Arlene K. Lim,

attached as **Exhibit 3**, at ¶ 7. Rather, BCBSNM is an unincorporated division of HCSC, a

Mutual Legal Reserve Company organized under Illinois law with its principal place of business

in Chicago, Illinois. *See id.*, ¶¶ 4-7; *see also* Illinois Dep't of Insurance – Company Search,

attached as **Exhibit 4** (HCSC is registered with the Illinois Department of Insurance as a

"Domestic Mutual" company with its "Corporate Home" in Chicago, Illinois) (accessed July 18,

2022). In New Mexico, as in other states, "[a] separate, unincorporated, operating 'division' of a corporation, as opposed to an incorporated subsidiary, is not entitled to separate legal treatment" from the company. *Plains Elec. Generation & Transmission Coop. v. N.M. PUC*, 126 N.M. 152, 159 (1998) (quoting 1 William Meade Fletcher et al., *Fletcher Cyclopedia of the Law of Private Corporations* § 43, at 732 (perm. ed. rev. vol. 1990)). Consequently, the Court must consider the citizenship of HCSC, not BCBSNM, and HCSC is a citizen of Illinois. **Ex. 3**, at ¶¶ 4-7; **Ex. 4**; *see also*, *e.g.*, *Shattuck Pharm. Mgmt., P.C. v. Prime Therapeutics, LLC*, No. CIV-21-0221-F, 2021 U.S. Dist. LEXIS 120949, at *8-10 (D. Ok. June 29, 2021) (finding that Blue Cross Blue Shield of Oklahoma, which, like BCBSNM, is an unincorporated division of HCSC, is a citizen of Illinois because "[a]s an unincorporated division of HCSC, the citizenship of BCBSOK is the same as the citizenship of HCSC"); *Coghlan v. Blue Cross Blue Shield of Texas*, No. H-12-2703, 2013 U.S. Dist. LEXIS 5111, at *4-6 (S.D. Tex. Jan. 14, 2013) (finding that Blue Cross Blue Shield of Texas, another unincorporated division of HCSC, is a citizen of Illinois for diversity purposes, and noting that "unincorporated divisions are citizens of the state of which the corporation that owns the division is a citizen").

21.     That Ultra is a citizen of New Mexico, and HCSC is a citizen of Illinois, further satisfies CAFA's minimum diversity requirement. *See* 28 U.S.C. § 1332(d)(2)(A).

22.     The third and final requirement for CAFA jurisdiction – that the amount in controversy exceed $5,000,000 – is apparent from Plaintiffs' Complaint. *See* 28 U.S.C. § 1332(d)(2). Specifically, Plaintiffs claim that they are seeking, among other forms of relief, "disgorgement of the ***millions of dollars*** of excess profits and revenues retained by ***each Defendant*** . . ." Cplt. ¶ 13 (emphasis added). With seven defendants named in Plaintiffs'

Complaint, Plaintiffs' demand for "millions of dollars" from "each Defendant" demonstrates that the amount in controversy exceeds $5,000,000. *Id.*; 28 U.S.C. § 1132(d)(6).

### B. Plaintiffs Cannot Meet Their Burden of Proving Any Exception to CAFA Jurisdiction Exists.

23.     Once Removing Defendants meet the three threshold elements for CAFA jurisdiction, as is the case here, Plaintiffs bear the burden of proving that one of the narrow exceptions to CAFA jurisdiction exists by a preponderance of the evidence. *See Fulgenzi v. Smith*, No. 12-1261, 2013 U.S. Dist. LEXIS 190980, at *3 (D.N.M. July 2, 2013). The exceptions to CAFA jurisdiction consist of (1) the "discretionary" exception under 28 U.S.C. § 1332(d)(3), (2) the "local controversy" exception under 28 U.S.C. § 1332(d)(4)(A), (3) the "home state" exception under 28 U.S.C. § 1332(d)(4)(B), (4) the state government exception under 28 U.S.C. § 1332(d)(5)(A), and (5) those enumerated in 28 U.S.C. § 1332(d)(9). Plaintiffs cannot prove that any exception applies.

24.     The discretionary exception will not apply because, among other reasons, Plaintiffs cannot prove that (1) "greater than one-third but less than two-thirds of all proposed plaintiff classes in the aggregate . . . are citizens of" New Mexico, or (2) "the primary defendants are citizens of" New Mexico. *See* 28 U.S.C. § 1332(d)(3).

25.     The local controversy exception will not apply because, among other reasons, Plaintiffs cannot prove that at least one defendant is a defendant (1) "from whom significant relief is sought by members of the plaintiff class," (2) "whose alleged conduct forms a significant basis for the claims asserted by the proposed plaintiff class," and (3) "who is a citizen of" New Mexico. *See* 28 U.S.C. § 1332(d)(4)(A)(II).

26.     The home state exception will not apply because, among other reasons, Plaintiffs cannot prove that "the primary defendants[ ] are citizens of" New Mexico. *See* 28 U.S.C. § 1332(d)(4)(B).

27.     The state government exception does not apply because this is not a case where "the primary defendants are States, State officials, or other governmental entities against whom the district court may be foreclosed from ordering relief." 28 U.S.C. § 1332(d)(5)(A).

28.     Further, this action does not concern (1) a covered security as defined under 16(f)(3) of the Securities Act of 1933 and/or section 28(f)(5)(E) of the Securities Exchange Act of 1934, (2) the internal affairs or governance of a corporation or other form of business enterprise, or (3) the rights, duties, and obligations created by or pursuant to any security, as defined under section 2(a)(1) of the Securities Act of 1933. *See* 28 U.S.C. § 1332(d)(9).

29.     In short, Plaintiffs cannot meet their burden of proving that any exception to CAFA jurisdiction exists.

### III.     <u>This Court Has Jurisdiction under 28 U.S.C. § 1331, as the Case Presents a Substantial Federal Question.</u>

30.     This Court also has original federal question jurisdiction under 28 U.S.C. § 1331, which provides for "original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States."

31.     A case may "arise under" federal law for purposes of federal question jurisdiction under 28 U.S.C. § 1331, and therefore be removable to federal court, if "the plaintiff's right to relief necessarily depends on resolution of a substantial question of federal law." *Gilmore v. Weatherford*, 694 F.3d 1160, 1170 (10th Cir. 2012). This substantial federal question doctrine captures the "commonsense notion that a federal court ought to be able to hear claims recognized under state law that nonetheless turn on substantial questions of federal law, and thus justify

resort to the experience, solicitude, and hope of uniformity that a federal forum offers on federal issues." *Grable,* 545 U.S. at 312.

32.     As the Supreme Court has explained, "[T]he question is, does a state-law claim necessarily raise a stated federal issue, actually disputed and substantial, which a federal forum may entertain without disturbing any congressionally approved balance of federal and state judicial responsibilities." *Grable*, 545 U.S. at 314. The Tenth Circuit has summarized these four prongs for "arising under" jurisdiction under § 1331 as follows:  the federal issue must be "(1) necessarily raised, (2) actually disputed, (3) substantial, and (4) capable of resolution in federal court without disrupting the federal-state balance approved by Congress." *Safe Streets Alliance v. Hickenlooper*, 859 F.3d 865 (10th Cir. 2017). All four elements are met here.

### A.  Plaintiffs' Claims Necessarily Raise Numerous Federal Issues.

33.     As to the first element, Plaintiffs' claims necessarily raise several federal issues. First, Plaintiffs' claims necessarily require the court to determine whether health insurance carriers may be compelled by state law to provide coverage for medical marijuana, which is illegal under federal law. The federal Controlled Substances Act, 21 U.S.C. § 841(a)(1), makes marijuana a Category I controlled substance, which is illegal to dispense.  Plaintiffs' claims, which require a determination of whether the state can compel a health insurance carrier to violate federal law, necessarily raise a federal question. *See Grabel,* 545 U.S. at 310 (state quiet title action necessarily raised a federal question because it depended upon the interpretation of federal tax law); *PharmaCann Penn, LLC v. BV Dev. Superstition RR, LLC*, 318 F. Supp. 3d 708, 712 (E.D. Pa. 2018) (holding that whether a property owner could open a medical marijuana dispensary despite deed restrictions prohibiting use of the property for any "unlawful" purpose constituted a substantial federal question). All of Plaintiffs' claims rest upon Plaintiffs'

underlying allegation that medical marijuana should be covered by their respective health plans, and that Defendants breached their obligations under their contracts and New Mexico law by not paying for medical marijuana, and so this issue is necessarily raised by each of Plaintiffs' claims.

34.     Notably, the reach of the Controlled Substance Act extends beyond the issue of *whether* marijuana can be covered, as "the CSA is a comprehensive regulatory regime specifically designed to regulate which controlled substances can be utilized for medicinal purposes, *and in what manner.*" *Raich*, 545 U.S. at 27 (emphasis added).  In *Raich*, the Supreme Court held that "even if respondents are correct that marijuana does have accepted medical uses . . . the CSA would still impose controls" that would displace state law, as the "CSA requires manufacturers, physicians, pharmacies, and other handlers of controlled substances to comply with statutory and regulatory provisions mandating registration with the DEA, compliance with specific production quotas, security controls to guard against diversion, recordkeeping and reporting obligations, and prescription requirements. . . . Accordingly, the mere fact that marijuana—like virtually every other controlled substance regulated by the CSA—is used for medicinal purposes cannot possibly serve to distinguish it from the core activities regulated by the CSA." *Id.* at 27-28.

35.     Additionally, Plaintiffs request a judicial declaration that "medical cannabis as a behavioral/mental health service is medically necessary." Cplt. ¶ 204 (requesting declaration that medical cannabis is medically necessary); *see also* Cplt. ¶ 161 (listing whether medical cannabis is "Medically Necessary" as an issue of law and fact common to all class members).  However, the federal government has held that marijuana has "no currently accepted medical use." *U.S. v. Oakland Cannabis Buyers' Co-op.*, 532 U.S. 483, 491 (2001). Under the Controlled Substance Act, a drug can only be included as a Schedule I controlled substance "if the drug 'has no

currently accepted medical use in treatment in the United States,' 'has a high potential for abuse,' and has 'a lack of accepted safety for use … under medical supervision.'" *Id.* at 492 (citing 21 U.S.C. § 812(b)(1)(A)-(C)); *see also Raich*, 545 U.S. at 27 ("[T]he CSA designates marijuana as contraband for *any* purpose; in fact, by characterizing marijuana as a Schedule I drug, Congress expressly found that the drug has no acceptable medical uses.").  As such, Plaintiffs' Complaint raises the issue of whether the court can issue a finding that marijuana is medically necessary – a finding that contravenes the federal government's determination that marijuana has "no currently accepted medical use."

36.     Moreover, with respect to Defendants Blue Cross and Blue Shield of New Mexico, Presbyterian, and Western Sky Community Care (referred to as the "MCO Defendants"; Cplt. ¶ 120), which offer Medicaid managed care plans, Plaintiffs' claims require an interpretation of federal Medicaid law. The Center for Medicare & Medicaid Services ("CMS") regulations mandate that all contracts with MCOs and similar covered entities must "comply with all applicable Federal and State laws and regulations." 42 CFR § 438.3(f)(1). The Medicaid statute and regulations speak directly to the issues raised, including dispensation of drugs and medical necessity. The Medicaid statute contains provisions for payment of drugs, including a definition of "covered outpatient drug," which provides that the "term also does not include any such drug or product for which a National Drug Code number is not required by the Food and Drug Administration or a drug or biological used for a medical indication which is not a medically accepted indication." 42 U.S.C. § 1396r-8(k)(2). And CMS regulations require that "medically necessary services" be defined in insurer contracts with reference to specific statutory criteria. 42 C.F.R. § 438.210(a)(5). The Medicaid statute provides for sanctions for any person or entity who knowingly presents claims "that a person knows or should know are not medically

necessary." 42 U.S.C. §§ 1320a-7a(1)(E). Therefore, whether a state can impose requirements upon a Medicaid MCO that contravene the federal Medicaid laws under which these entities operate and the federal findings of medical necessity is a necessarily raised federal issue appropriately resolved in federal court.

37.     Each of Plaintiffs' claims, including their claims for breach of contract, violation of state statutes, and declaratory judgment, rest upon the underlying allegation that medical marijuana must be covered by their health care plans. Plaintiffs allege that "all applicable federal laws and regulations" are incorporated "under the express language of the written contracts." Cplt. ¶ 171. And with respect to the plaintiffs with Medicaid plans, *see* Cplt. ¶¶ 54, 63, 69, 127, the terms and conditions of their Medicaid health care plans are a creature of the federal Medicaid statute and regulations, and the terms of MCO contracts between the State of New Mexico's Human Services Department and Medicaid MCOs, which set forth what services are or are not covered, are required to be reviewed and approved by CMS. 42 C.F.R. § 438.3(a); *see* Cplt. ¶¶ 113-128. Thus, the interpretation of what services are covered under the MCO plans can only be made by reference to federal law.

38.     Each of these issues is necessary to Plaintiffs' claims, and Plaintiffs cannot escape this conclusion by couching their claims in terms of state law. Each of Plaintiffs' claims rests upon the underlying premise that the Defendants are required to provide coverage for medical marijuana.   Accordingly, in order to state a *prima facie* claim, Plaintiffs must establish that medical marijuana is covered under their contracts—necessitating an interpretation of whether the federal Controlled Substance Act permits them to cover these drugs and, for the MCO Defendants, what federal Medicaid laws and regulations require of Defendants with respect to

their contractual obligations.  Thus, the issue is "necessarily raised" because it is "an 'essential element' of plaintiff's claim." *Gilmore*, 694 F.3d at 1173 (quoting *Grable*, 545 U.S. at 315).

### B.  The Federal Issues in This Dispute are Actually Disputed.

39.     With respect to the second element, there is no question here that this federal issue is "actually disputed." Indeed, the central issue in this lawsuit is Plaintiffs' claim that Defendants must provide coverage for medical marijuana under New Mexico state law, while Defendants maintain that federal law precludes this coverage.

### C.  The Federal Issues in this Dispute are Substantial.

40.     Third, Plaintiffs' claims raise a "substantial issue."  A substantial issue is one that "indicat[es] a serious federal interest in claiming the advantages thought to be inherent in a federal forum." *Grable*, 545 U.S. at 313. To determine whether an issue is "substantial," courts have "distinguished between 'a nearly pure issue of law' that would govern 'numerous' cases and issues that are 'fact-bound and situation-specific.'" *Gilmore*, 694 F.3d at 1174 (citing *Empire Healthchoice Assurance, Inc. v. McVeigh*, 547 U.S. 677, 700-01 (2006)). Here, the federal issues regarding whether a state can require health care insurers to pay for a substance that is illegal under federal law are strictly legal issues. Courts and Congress have recognized marijuana regulation as an important federal interest. *See, e.g.*, *Raich*, 545 U.S. at 22 (recognizing Congressional interest in regulating marijuana cultivation and intrastate transportation). For example, in *PharmaCann*, the court held that the issue of whether a medical marijuana dispensary was an "unlawful" use under a land deed raised a "substantial" federal issue, given "the need to pursue certainty on the legal status of marijuana dispensaries" which required a ruling on whether the "proposed dispensary violates federal law," and it found that a ruling on whether the state law violated the federal Controlled Substances Act raised federalism issues that

"would require a court to consider the delicate comity between our federal and state systems." 318 F. Supp. 3d at 713. Similarly, here, the federal issues raised in this lawsuit regarding the interplay of state and federal law, and their application to entities that operate health care plans, raise substantial issues of federal concern. Indeed, with respect to the MCO Defendants, the federal government has a substantial interest in the operation of these plans, which are funded through federal dollars, and in promoting national uniformity. And with respect to the ERISA Defendants, the U.S. Supreme Court has repeatedly stressed the need for national uniformity amongst plan members in different states as one of the reasons underlying ERISA preemption. *See Gobeille v. Liberty Mut. Ins. Co.*, 577 U.S. 312, 320 (ERISA pre-empts a state law that "interferes with nationally uniform plan administration.") (quoting *Egelhoff v. Egelhoff,* 532 U.S. 141, 148 (2001)).

### D. The Federal Issues in this Dispute Are Capable of Resolution in Federal Court without Disrupting the Federal-State Balance Approved by Congress.

41.     Finally, on the fourth element, resolution of this dispute in federal court would not "disturb any congressionally approved balance of federal and state judicial responsibilities." *Grable*, 545 U.S. at 314; *Gilmore*, 694 F.3d at 1174-75 (finding this factor met where "[u]nlike the typical dispute between two private litigants, this action concerns the responsibility that a private defendant owes to a federal agency"). This case raises unique legal questions of particular importance to the federal system. As the court in *PharmaCann* concluded: "Consider the peculiar set of circumstances present here: (1) federal law flatly prohibits certain conduct, (2) state law affirmatively legalizes and licenses that same conduct, and (3) a private actor has chosen to follow only the state law. The Court is hard-pressed to imagine another case in quite this posture." 318 F. Supp. 3d at 713-14.

## IV.  The Court Has Supplemental Jurisdiction Over Any State Law Claims under 28 U.S.C. § 1367(a).

42.     If the Court holds that some of Plaintiffs' claims are subject to federal jurisdiction but that others are not, the Court can, and should, exercise jurisdiction over all claims through its supplemental jurisdiction under 28 U.S.C. § 1367(a), providing for federal jurisdiction over "all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy."

43.     "A district court … may exercise its supplemental jurisdiction when doing so would further the interest of judicial economy, convenience, and fairness . . . ." *U.S. v. Bd. of Cnty. Comm'rs of the Cnty. of Dona Ana, N.M.*, 730 F. Supp. 2d 1327, 1335 (D.N.M. 2010). "[I]f, considered without regard to their federal or state character, a plaintiff's claims are such that he would ordinarily be expected to try them all in one judicial proceeding, then, assuming substantiality of the federal issues, there is power in federal courts to hear the whole." *United Mine Workers v. Gibbs*, 383 U.S. 715, 725 (1966).

44.     The claims against all Defendants boil down to the same legal question—whether New Mexico law can require Defendants to provide coverage for federally prohibited medical marijuana.  There is no doubt that all of the claims form part of the "same case or controversy," such that any state law claims are within this Court's supplemental jurisdiction.

45.     While supplemental jurisdiction rests within the Court's discretion, the Court should exercise its discretion to maintain jurisdiction over all claims, for each of the reasons set forth above. All of the claims in this lawsuit require the resolution of questions of federal law, including whether state law can supersede the requirements of the federal Controlled Substance Act and what services are medically necessary and covered by health care plans, some of which are federally regulated and federally funded MCO plans. Resolving these issues in a single

federal forum serves the interests of judicial economy and convenience, as this same underlying issue will need to be determined for all of Plaintiffs' claims.  If any claims were remanded to state court, there is a risk of inconsistent results, which would create uncertainties not only for Defendants, but for all of the members of their health care plans, both in New Mexico and in other states with similar plans.

46.     Accordingly, if the Court determines that it has federal subject matter jurisdiction over some but not all claims, the Court should exercise jurisdiction over all of the claims in order to resolve these important federal issues in a single forum.

**V.     This Matter is Properly Removed to this Court.**

47.     The Court has federal question jurisdiction over this action pursuant to 28 U.S.C. § 1331 and under CAFA, 28 U.S.C. § 1332(d), and removal is proper under 28 U.S.C. § 1441.

48.     Under the provisions of 28 U.S.C. § 1441(a), Removing Defendants are entitled to remove this action from the Second Judicial District Court of Bernalillo County, New Mexico, to the United States District Court for the District of New Mexico, which embraces the place where this action is pending. Thus, this Court is the appropriate venue for removal as set forth in 28 U.S.C. § 1446(a).

49.     This Notice of Removal has been filed in a timely manner pursuant to 28 U.S.C. § 1446(b) in that it has been filed within 30 days after receipt by Removing Defendants of the initial pleading setting forth Plaintiffs' claim for relief. *E.g.*, **Ex. 1**; *see also infra*, **Exhibit 5**.[4]

50.     All Defendants have joined in or consented to this removal. *See supra*, n.1.

---

[4] In an effort to serve Defendants, Plaintiffs submitted a copy of the Complaint to the New Mexico Office of Superintendent of Insurance ("OSI") on June 23, 2022, and OSI subsequently forwarded a copy of the Complaint to the Removing Defendants on or after June 23, 2022.

51.     A true and correct copy of this Notice of Removal and Notice of Filing of Notice of Removal is concurrently being filed with the Clerk of the Court of the Second Judicial District Court of Bernalillo County, New Mexico.

52.     A copy of state court record is attached as **Exhibit 5**. To the extent necessary, Removing Defendants will supplement the state court record.

WHEREFORE, Removing Defendants give notice that Plaintiffs' claims are removed to this Court, for the exercise of jurisdiction over this action, as though this action had originally been instituted in this Court.

Dated:  July 22, 2022                                    Respectfully submitted,

|  |  |
|---|---|
|  | _/s/ Justin Miller_ |
|  | Ben Allison |
|  | Justin Miller |
|  | Bardacke Allison LLP |
|  | bardackeallison.com |
|  | 141 East Palace Avenue |
|  | Santa Fe NM 87501 |
|  | justin@bardackeallison.com |
|  | ben@bardackeallison.com |
|  | Telephone: 505 995 8000 |
|  | |
|  | Daniel K. Ryan (_pro hac vice_ motion to be filed) |
|  | Peter E. Pederson (_pro hac vice_ motion to be filed) |
|  | Hinshaw & Culbertson LLP |
|  | 151 North Franklin Street, Suite 2500, Chicago, IL 60606 |
|  | O: 312-704-3248 \| F: 312-704-3001 |
|  | dryan@hinshawlaw.com |
|  | ppederson@hinshawlaw.com |
|  | |
|  | _Attorneys for Cigna Health and Life Insurance Company_ |

|  | */s/ Alfred A. Park*<br>PARK & ASSOCIATES, LLC<br>3840 Masthead St. NE<br>Albuquerque, NM 87109<br>Telephone:  (505) 246-2805<br>apark@parklawnm.com<br><br>Christopher Smith (pro hac motion pending)<br>Melissa Z. Baris (pro hac motion pending)<br>HUSCH BLACKWELL LLP<br>190 Carondelet Plaza, Suite 600<br>St. Louis, MO 63105<br>Telephone:  (314) 480-1500<br>Chris.Smith@huschblackwell.com<br>Melissa.Baris@huschblackwell.com<br><br>*Attorneys for Defendant Western Sky Community Care, Inc.* |
|---|---|
|  | */s/ Benjamin E. Thomas*<br>Benjamin E. Thomas<br>Alexander G. Elborn<br>SUTIN, THAYER & BROWNE, P.C.<br>P.O. Box 1945<br>Albuquerque, New Mexico 87103-1945<br>Phone: (505) 883-2500<br>bet@sutinfirm.com<br>age@sutinfirm.com<br><br>Martin J. Bishop (*pro hac vice* forthcoming)<br>Jason T. Mayer (*pro hac vice* forthcoming)<br>REED SMITH LLP<br>10 South Wacker Drive<br>40th Floor<br>Chicago, Illinois 60606-7507<br>Phone: (312) 207-1000<br>mbishop@reedsmith.com<br>jmayer@reedsmith.com<br><br>*Attorneys for Blue Cross and Blue Shield of New Mexico, an unincorporated division of Health Care Service Corporation, a Mutual Legal Reserve Company* |

|  | RODEY, DICKASON, SLOAN, AKIN & ROBB, P.A. |
|  | By: ____/s/ Andrew G. Schultz_____ . |
|  | Andrew G. Schultz |
|  | Linda M. Vanzi |
|  | Melanie B. Stambaugh |
|  | P.O. Box 1888 |
|  | Albuquerque, NM 87103 |
|  | Telephone:      (505) 765-5900 |
|  | Facsimile:      (505) 768-7395 |
|  | E-mail:        aschultz@rodey.com |
|  | lvanzi@rodey.com |
|  | mstambaugh@rodey.com |
|  | *Attorneys for Defendants Presbyterian Health Plan, Inc. and Presbyterian Insurance Company, I* |
|  | **SNELL & WILMER LLP** |
|  | By: */s/ Gregory J. Marshall* |
|  | Gregory J. Marshall |
|  | Albuquerque Plaza |
|  | 201 Third Street N.W., Suite 500 |
|  | Albuquerque, New Mexico 87102-3370 |
|  | Telephone: (602) 382-6514 |
|  | gmarshall@swlaw.com |
|  | Joseph G. Adams (*pro hac motion pending*) |
|  | Snell & Wilmer LLP |
|  | 400 E. Van. Buren St. |
|  | Phoenix, Arizona 8504-2202 |
|  | Telephone: (602) 382-6207 |
|  | jgadams@swlaw.com |
|  | *Attorneys for Defendant True Health New Mexico, Inc.* |