## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF NEW MEXICO

NEW MEXICO TOP ORGANICS—ULTRA HEALTH, INC.,
a New Mexico corporation,
JACOB R. CANDELARIA, on behalf of himself and all others similarly situated,
MATIAS TRUJILLO, as father and guardian of MT, a minor,
and on behalf of himself and all others similarly situated,
ERICA ROWLAND, on behalf of herself and all others similarly situated, and
ARIEL MCDOUGAL, on behalf of herself and all others similarly situated,

     **Plaintiffs,**

**vs.**                                          **1:22-cv-00546-KG-LF**

BLUE CROSS AND BLUE SHIELD OF NEW MEXICO,
PRESBYTERIAN HEALTH PLAN, INC.,
a New Mexico corporation, and
WESTERN SKY COMMUNITY CARE, INC.,
a New Mexico corporation,

     **Defendants.**

## FIRST AMENDED CLASS ACTION COMPLAINT
## FOR DAMAGES AND DECLARATORY JUDGMENT

This class action lawsuit seeks a determination that medical cannabis is a healthcare service for treatment of behavioral health conditions. As a behavioral health service, under New Mexico statute effective January 1, 2022, the cost of medical cannabis must be fully covered by insurance—for both Medicaid participants and those who obtained insurance in the private market.[1] This action is brought pursuant to Rules 1-023(A), 1-023(B)(1), 1-023(B)(2), and 1-023(B)(3) of the New Mexico Rules of Civil Procedure.[2]

---

[1] Plaintiffs acknowledge that participants or beneficiaries of health insurance plans regulated by the Employee Retirement Income Security Act of 1974 (ERISA) are not seeking relief.

[2] Although Defendants removed Plaintiffs' original Complaint to the District of New Mexico, Plaintiffs maintain that there is no federal jurisdiction over the First Amended Complaint, and the case is subject to remand. Accordingly, Plaintiffs cite to the New Mexico Rules of Civil Procedure.

New Mexico Top Organics—Ultra Health, Inc. and the individual plaintiffs, for themselves and the class members, bring this action through their attorneys, SaucedoChavez, P.C. (Christopher T. Saucedo, Morris J. Chavez, Ryan H. Harrigan, Frank T. Apodaca) and state as follows:

## Background

1.      Medical cannabis is a reasonable and necessary medical service for many debilitating health conditions.  This has already been determined by New Mexico legislation, the New Mexico Court of Appeals, the New Mexico Medical Cannabis Advisory Committee, and several professional studies and publications.

2.      Among the debilitating health conditions for which medical cannabis may be an appropriate service are a variety of behavioral health conditions, including posttraumatic stress disorder.

3.      Further, extensive research and scientific publications link behavioral health issues—and particularly posttraumatic stress disorder—to poverty.  The basic conclusion is that persons who suffer from a behavioral health issue have an increased likelihood of living in poverty.

4.      In New Mexico, persons living in poverty should—at the very least—have proper medical care through Medicaid, which must include health services for behavioral health.

5.      In New Mexico, the cost of a service that is used to treat a behavioral or mental health disorder must be a covered service without cost-sharing.  Said another way, a health insurance policy that offers coverage for behavioral or mental health services must pay one hundred percent (100%) of the cost of such service.

6.      But qualified medical cannabis users for behavioral health conditions pay—and have paid since January 1, 2022—the entirety of the cost of their medical cannabis.

7.      Many persons on Medicaid cannot afford medical cannabis, so the individuals go without recognized relief for behavioral conditions.

8.      In the matter of *Sacred Garden, Inc. v. New Mexico Taxation & Revenue Department*, 2021-NMCA-038, ¶ 17, the New Mexico Court of Appeals recognized that:

> the Compassionate Use Act was intended to make medical marijuana accessible to those with debilitating medical conditions who might benefit from the use thereof. It is reasonably self-evident that the deduction from gross receipts for prescription drugs was similarly intended to make medical treatment more accessible, by lessening the expense to those who require it. These statutes should be read harmoniously, to give effect to their commonality of purpose.

9.      As New Mexico has recognized the need to exclude gross receipts from the sale of medical cannabis for those with debilitating conditions, the same is true with medical cannabis and behavioral health.  The relevant statutes should be read harmoniously so that behavioral health treatment is more accessible through insurance coverage.

10.     New Mexico Top Organics-Ultra Health, Inc. ("Ultra Health") and individual plaintiffs seek to clarify insurance coverage for medical cannabis and provide appropriate health services for those most in need.

11.     Consistent with New Mexico law, Ultra Health and the individual plaintiffs seek a declaratory judgment for themselves and for every other similarly situated person that medical cannabis is a behavioral/mental health service.

12.     This declaration, in turn, will result in adequate provision of behavioral health services for persons suffering from a behavioral health condition.

13.     As well, through this action, the individual plaintiffs seek recovery for themselves, and for every other similarly situated behavioral or mental health patient unlawfully subjected to paying for the entire cost of medically necessary cannabis, in violation of state law; and further seek disgorgement of the millions of dollars in excess profits and revenues retained by each

defendant by their blanket denials of coverage for the cost of behavioral or mental health services in violation of New Mexico law.

### Parties

14.     Plaintiff New Mexico Top Organics—Ultra Health, Inc. is a New Mexico corporation with its principal place of business located at 255 Camino Don Tomas, Bernalillo, NM 87004.

15.     Plaintiff Jacob R. Candelaria is a resident of Bernalillo County, New Mexico. Plaintiff Candelaria is a qualified patient as defined by the Lynn and Erin Compassionate Use Act, 26-2B-1 to -7 for the debilitating medical condition of posttraumatic stress disorder.  Plaintiff Candelaria, through his husband's employer, University of New Mexico Hospitals, held a health insurance policy from Blue Cross and Blue Shield effective, in part, January 1, 2022 to the date of filing this complaint.  His policy covers behavioral health services.  Plaintiff Candelaria is not a participant or beneficiary of an employee benefit plan as defined by ERISA and does not otherwise have standing under § 502(a)(1)(B) of ERISA to bring a claim against Blue Cross and Blue Shield of New Mexico.

16.     Matias Trujillo is a resident of Sandoval County, New Mexico, and is the natural father and guardian of MT, a minor.  MT is a qualified patient as defined by the Lynn and Erin Compassionate Use Act, 26-2B-1 to -7 for the debilitating medical condition of non-verbal autism. Matias and MT, for the relevant time-period of January 1, 2022 to the date of filing this complaint, are participants in the Medicaid program and have Presbyterian's Centennial Care 2.0 plan, which covers behavioral health services.

17.     Erica Rowland is a resident of Bernalillo County, New Mexico.  Plaintiff Rowland is a qualified patient as defined by the Lynn and Erin Compassionate Use Act, 26-2B-1 to -7 for

the debilitating medical condition of posttraumatic stress disorder.  Plaintiff Rowland, for the relevant time-period of January 1, 2022 to the date of filing this complaint, is a participant in the Medicaid program and has Western Sky's Centennial Care 2.0 plan, which covers behavioral health services.

18.     Ariel McDougal is a resident of Bernalillo County, New Mexico.  Plaintiff McDougal is a qualified patient as defined by the Lynn and Erin Compassionate Use Act, 26-2B-1 to -7 for the debilitating medical condition of posttraumatic stress disorder, among other conditions.  Plaintiff McDougal, for the relevant time-period of January 1, 2022 to the date of filing this complaint, is a participant in the Medicaid program and has Blue Cross and Blue Shield of New Mexico's Centennial Care 2.0 plan, which covers behavioral health services.

19.     Defendant Blue Cross and Blue Shield of New Mexico ("BCBSNM"), is a division of Health Care Service Corporation, a Mutual Reserve Company.  BCBSNM does business in New Mexico and is located at 5701 Balloon Fiesta Parkway NE, Albuquerque, NM 87113.

20.     Defendant Presbyterian Health Plan, Inc. is a New Mexico corporation with its principal place of business located at 9521 San Mateo Boulevard, NE, Albuquerque, NM 87113.

21.     Defendant Presbyterian Health Plan, Inc. holds a MCO contract with the State of New Mexico and provides Centennial Care 2.0 Medicaid benefits to over 60% of all New Mexico participants in the New Mexico Centennial Care 2.0 program.

22.     Defendant Western Sky Community Care, Inc. is a New Mexico corporation with its principal place of business located at 5300 Homestead Rd, NE, Albuquerque, NM 87110.

**Jurisdiction and Venue**

23.     Each Defendant is licensed to sell insurance, and does in fact sell insurance, in the state of New Mexico and is subject to the jurisdiction of New Mexico state district courts.

24.     Venue is proper in the County of Bernalillo, New Mexico, under NMSA 1978 §
38-3-1(A), as at least one of the plaintiffs resides in the County of Bernalillo, New Mexico, all
defendants conduct business in the County of Bernalillo, New Mexico, and many if not all of the
violations of law complained of herein occurred in this county.

**Individual Class Representatives**

**Jacob R. Candelaria**

25.     Jacob R. Candelaria is a New Mexico Senator, a graduate of Princeton University,
and a practicing attorney.  But few know of his daily struggle, as Mr. Candelaria has to manage
the emotional and psychological damage of severe childhood trauma.

26.     Jacob suffered sexual abuse and neglect as a child resulting in a lifetime of struggle
with posttraumatic stress disorder.

27.     For many years he relied solely upon antidepressant medications such as citalopram
to control his PTSD—but with little success.

28.     In the summer of 2019, his primary physician suggested that Jacob include cannabis
as part of his behavioral health treatment program—and he did.

29.     Jacob obtained his medical cannabis card and was considered a Qualified Patient
pursuant to the Lynn & Erin Compassionate Use Act.

30.     Cannabis allowed him to experience immediate improvement with his focus and
overall wellbeing.

31.     As part of his PTSD treatment protocol, Jacob continues to use and experience the
medical benefits of cannabis.

32.     Jacob is insured with Blue Cross Blue Shield of New Mexico through his husband's employer but has personally paid for the entire cost of his medical cannabis.  Mr. Candelaria spends an average of $500-$1,000 per month on medical cannabis out-of-pocket.

**Matias Trujillo**

33.     Matias Trujillo is the natural father and guardian of MT, a minor. Matias and MT are Medicaid participants and have Presbyterian's Centennial Care 2.0 plan.

34.     MT suffers from non-verbal autism and epilepsy. Throughout his young life, MT tried many prescription medications. The medications, at best, only mildly improved his condition but at the cost of making him oblivious to his surroundings.

35.     In 2015, MT was approved as a Qualified Patient pursuant to the Lynn & Erin Compassionate Use Act.  He was one of the first pediatric patients to be approved as a Qualified Patient.

36.     MT's daily experience and behavior immediately improved once he started taking medical cannabis. His improved condition continues today.

37.     However, Matias pays the entire cost of MT's medical cannabis.

**Erica Rowland**

38.     Erica Rowland is an experienced businesswoman who is temporarily unemployed. But she is actively working to start a new business in the cannabis industry and focusing on the medicinal value of cannabis.

39.     The cannabis industry is Erica's passion because she believes—based on her own experience—that cannabis is an exceptional health service option for behavioral health issues, among other conditions.

40. Erica suffered childhood trauma that resulted in a lifetime of anxiety. In 2010, she was diagnosed as suffering from PTSD.

41. In 2012, Erica was approved as a Qualified Patient pursuant to the Lynn & Erin Compassionate Use Act. She experienced immediate improvement with her mental health.

42. Erica is a Medicaid participant and has Western Sky's Centennial Care 2.0 plan.

43. Erica pays for the entire cost of her medical cannabis.

**Ariel McDougal**

44. Ariel McDougal is an employee of Ultra Health and is passionate about the medicinal possibilities of cannabis.

45. Due to childhood trauma, she deals with anxiety on a daily basis. She takes antidepressants and anxiety medications but with only limited beneficial outcomes.

46. In 2014, Ariel was approved as a Qualified Patient pursuant to the Lynn & Erin Compassionate Use Act. Her qualifying conditions include PTSD and other conditions.

47. Her mental health dramatically improved once she included medical cannabis as part of her treatment protocol.

48. Ariel is a Medicaid participant and has BCBSNM's Centennial Care 2.0 plan.

49. Ariel pays the entire cost of her medical cannabis.

**Lynn and Eric Compassionate Use Act**

50. The Lynn and Erin Compassionate Use Act, NMSA 1978, §§ 26-2B-1 to -7 (2007), after being passed by the legislature, was signed by Governor Bill Richardson and went into effect July 1, 2007. In 2019, it was amended, being generally expanded, and signed into law by Governor Michelle Lujan Grisham on April 4, 2019.

51.     "The purpose of the Lynn and Erin Compassionate Use Act ("LECUA") is to allow the beneficial use of medical cannabis [for a qualified patient] in a regulated system for alleviating symptoms caused by debilitating medical conditions and their medical treatments." NMSA 1978 § 26-2B-2.

52.     According to the Cannabis Control Division and the Regulation and Licensing Department for the State of New Mexico, for only the month of May 2022 alone, medical cannabis sales exceeded $17 million.

53.     A "'qualified patient' [under LECUA] means a resident of New Mexico who has been diagnosed by a practitioner as having a debilitating medical condition and has received written certification and a registry identification card pursuant to the Lynn and Erin Compassionate Use Act on the basis of having been diagnosed, in person or via telemedicine, by a practitioner as having a debilitating medical condition." NMSA 1978 § 26-2B-3(N).

54.     "Debilitating medical conditions," as defined in the Act, include certain behavioral health conditions such as posttraumatic stress disorder ("PTSD") and severe anorexia, among others. NMSA 1978 § 6-2B-3(F); N.M. Admin. Code 7.34.3.8.

55.     As of January 31, 2022, New Mexico has 130,345 Qualified Patients as defined by LECUA.  And 71,101 Qualified Patients—more than half of the total—suffer from the debilitating condition of Posttraumatic Stress Disorder.

56.     Posttraumatic stress disorder ("PTSD") is a psychiatric disorder that may occur in people who have experienced or witnessed a traumatic event such as a natural disaster, a serious accident, war, or rape or who have been threatened with death, sexual violence or serious injury. *See* American Psychiatric Association, https://psychiatry.org/patients-families/ptsd/what-is-ptsd.

57.     People with PTSD have intense, disturbing thoughts and feelings related to their experience that last long after the traumatic event has ended.  They may relive the event through flashbacks or nightmares; they may feel sadness, fear or anger; and they may feel detached or estranged from other people.  People with PTSD may avoid situations or people that remind them of the traumatic event, and they may have strong negative reactions to something as ordinary as a loud noise or an accidental touch. *Id.*

### New Mexico Precedent

58.     Appellate courts in New Mexico have already addressed the question of whether medical cannabis is a reasonable and necessary medical service—and conclusively have determined that indeed it is.

59.     The New Mexico Court of Appeals held that, within the workers' compensation context, medical cannabis may be a reasonable and necessary medical care or service. *Vialpando v. Ben's Automotive Services*, 2014-NMCA-084 (workers' compensation matter). It found that every "aspect of a worker's reasonable and necessary treatment [need not] be directly received from a health care provider.  Such a requirement would be unworkable." *Vialpando v. Ben's Automotive Services*, 2014-NMCA-084, ¶ 10.  Further, it held that in New Mexico, the certification process for medical cannabis "requires the functional equivalent of a prescription." *Vialpando v. Ben's Automotive Services*, 2014-NMCA-084, ¶ 12.

60.     Recently, in the matter of *Sacred Garden, Inc. v. New Mexico Taxation & Revenue Department*, 2021-NMCA-038, ¶ 11, the New Mexico Court of Appeals confirmed once again that the certifications for medical cannabis, pursuant to the LECUA, are the "functional equivalent" of a prescription.

61.     In doing so, the Court of Appeals held that medical cannabis dispensed consistent with the LECUA qualified for deductions from gross receipts taxes for prescription drugs. *Id*. ¶ 1.

62.     Moreover, the New Mexico Court of Appeals has repeatedly "rejected the notion that potential conflict with equivocal federal policy precludes medical marijuana from receiving similar treatment to other drugs that are dispensed under carefully controlled circumstances." *Id.* ¶ 13.

63.     The New Mexico legislature has also spoken on this issue. Section 32A-3A-15 states "[f]or the purposes of medical care, including an organ transplant, a qualified patient's use of cannabis pursuant to the Lynn and Erin Compassionate Use Act *shall be considered the equivalent of the use of any other medication* under the direction of a physician and shall not be considered to constitute the use of an illicit substance or otherwise disqualify a qualified patient from medical care." NMSA 1978 § 32A-3A-15 (2019) (emphasis added).

64.     And perhaps most telling is the decisive action of the Medical Cannabis Advisory Committee to the New Mexico Cannabis Program, which is comprised of medical physicians and other health professionals within the State of New Mexico.

65.     On January 15, 2009, the Medical Cannabis Advisory Committee approved inclusion of posttraumatic stress disorder as a qualifying condition for medical cannabis services.

66.     The Medical Cannabis Advisory Committee made its determination of approval following an extensive review of scientific and professional publications, and clinical studies and public comment.

## Professional Studies

67.     Consistent with the above legal determination and precedent, evidence abounds concerning the efficacy of medicinal cannabis in the treatment of a range of psychiatric disorders.

*See* Jerome Sarris et al., *Medicinal cannabis for psychiatric disorders: a clinically-focused systematic review*, BMC Psych. 20, 24 (Jan. 16, 2020) at 1.[3]

68.    The various cannabinoids in cannabis interact with the endocannabinoid system in humans, which itself appears to play an important role in responses to stress and anxiety. Susan A. Stoner, *Effects of Marijuana on Mental Health: Anxiety Disorders*, Alcohol & Drug Abuse Institute, University of Washington (June 2017) at 4.[4]   Accordingly, the two primary active ingredients of cannabis, THC and CBD, both have effects with regard to anxiety. *Id*. at 4-5.

69.    Studies have also concluded that "Cannabis provides temporary relief from PTSD-related symptoms." Emily M. LaFrance et al., Short and Long-Term Effects of Cannabis on Symptoms of Post-Traumatic Stress Disorder, 274 J. Affective Disorders 298, 298 (2020).[5]

70.    Specifically, smoking cannabis with high THC content generally provides relief to patients experiencing distress-related symptoms. Sarah S. Stith et al., *The effectiveness of inhaled Cannabis flower for the treatment of agitation/irritability, anxiety, and common stress*, J. Cannabis Rsch. 2:47 (Dec. 9, 2020) at 1 ("The findings suggest the majority of patients in our sample experienced relief from distress-related symptoms following consumption of Cannabis flower, and that among product characteristics, higher THC levels were the strongest predictors of relief.").[6] *See also id*. at 12 ("Our findings suggest that self-directed use of Cannabis flower, especially that with higher THC levels, is associated with significant improvements in at least short-term feelings of distress in many users, likely a contributing factor to its widespread popularity and consumption in the U.S.").

---

[3] Available at https://bmcpsychiatry.biomedcentral.com/articles/10.1186/s12888-019-2409-8.
[4] Available at http://adai.uw.edu/pubs/pdf/2017mjanxiety.pdf.
[5] Available at https://www.sciencedirect.com/science/article/pii/S0165032720306364.
[6] Available at https://jcannabisresearch.biomedcentral.com/articles/10.1186/s42238-020-00051-z#citeas.

71.     Similarly, using CBD and CBD-containing compounds is helpful in alleviating symptoms of schizophrenia, social anxiety disorder, and comorbidities of ASD, and ADHD. Rabia Khan et al., *The therapeutic role of Cannabidiol in mental health: a systematic review*, J. Cannabis Rsch. 2:2 (Jan 2, 2020) at 19-20.[7]

### **Cost Sharing Prohibited for Behavioral Health Services**

72.     Ensuring that proper health care is affordable is a New Mexico priority. In fact, the day before the filing of the initial complaint in this case, Governor Michelle Lujan Grisham entered an Executive Order establishing a prescription drug price task force.

73.     "The executive order executed on [June 9, 2022] directs its members to analyze and report solutions to manage and minimize the cost of prescriptions for New Mexicans. The proactive order underscores the administration's relentless commitment to improving health care access and affordability for all residents." Press Release, Office of the Governor Michelle Lujan Grisham, June 9, 2022.

74.     More significantly, in 2021, the New Mexico Legislature passed Senate Bill 317, which was then signed into law by Governor Michele Lujan Grisham with an effective date of January 1, 2022.

75.     The bill was sponsored by Senator Jeff Steinborn and Senator Martin Hickey.

76.     The bill eliminated health insurance cost sharing for "behavioral health services."

77.     Various parts of Senate Bill 317 have been codified into NMSA 1978, Sections 59A-22-57, 59A-23-16, 59A-46-57, and 59A-47-51, which apply to different types of health insurance (collectively referred to as the Behavioral Health Services Equity Acts).

---

[7] Available at https://jcannabisresearch.biomedcentral.com/articles/10.1186/s42238-019-0012-y.

78. The various sections all state that health insurers that offer coverage of behavioral health services "shall not impose cost sharing on those behavioral health services." *Id.*

79. Behavioral health services means "professional and **ancillary services** for the treatment, habilitation, prevention and identification of mental illnesses, substance abuse disorders and trauma spectrum disorders, including . . . **all medications**." *Id.* (emphasis added)

80. In response to a media request in February 2022, Senators Steinborn and Hickey said that "the law makes it clear insurance coverage of medical cannabis should be offered to patients." Santa Fe New Mexican, *New state law requires health insurers cover medical cannabis for some conditions*, Feb. 23, 2022.

81. Medical cannabis is a behavioral health service as defined by NMSA 1978, Sections 59A-22-57, 59A-23-16, 59A-46-57, and 59A-47-51. Alternatively, medical cannabis is a "medication" within the meaning of these sections of law.

<u>**New Mexico's Benchmark**</u>

82. In March 2010, President Barack Obama signed the Patient Protection and Affordable Care Act ("ACA"). In addition to expanded Medicaid eligibility, the ACA established minimum benefits in the private market.

83. Pursuant to the ACA, all qualified health plans sold in the private market must cover, at a minimum, certain categories referred to as Essential Health Benefits. The standardized group of benefits is called a benchmark.

84. A state sets its own benchmark plan based on the Essential Health Benefits and existing health plans in the state.

85.     The benchmark is also used to calculate an actuarial value of the benefits, which is then used to calculate the premium tax credits consumers receive from the federal government to subsidize purchasing coverage through the state established health insurance marketplace.

86.     The New Mexico benchmark serves as a baseline of the minimum scope of benefits for health plans sold in the state.

87.     Health plans sold in New Mexico must include all benchmark requirements.

88.     The New Mexico benchmark for 2022 includes Mental/Behavioral Health Outpatient Services and Inpatient Services without a quantitative limit on either service.

89.     Specifically, the New Mexico benchmark requires that both inpatient and outpatient behavioral/mental health services are covered by health plans sold in the state.

90.     The New Mexico benchmark does not exclude medical cannabis as a behavioral or mental health service.

### Managed Care Organizations

91.     Under Title XIX of the Social Security Act, known as the Medicaid Act, 42 U.S.C. §§ 1396-1396u, the United States government created a cooperative relationship between the federal government and the states that elect to share the medical expenses of persons who have limited financial resources.

92.     New Mexico has elected to participate in the federal Medicaid program. States that choose to participate in the Medicaid program must administer Medicaid "in the best interests of recipients." 42 U.S.C. § 1396a(a)(19).

93.     In 1973, the New Mexico legislature passed the New Mexico Public Assistance Act, NMSA 1978, §§ 27-2-1, et seq. (1973) to implement such participation.

94.    New Mexico's statutes charge the Human Services Division with implementing and regulating the Medicaid program in New Mexico. The HSD administers and regulates the Public Assistance Act and otherwise administers and regulates New Mexico's participation in the Medicaid program.

95.    In 1994, the New Mexico legislature enacted NMSA 1978, § 27-2-12.6 (1994), which provides for a managed care system within the parameters of the New Mexico Public Assistance Act.

96.    Pursuant to 42 U.S.C. § 1396a, the HSD created a State Plan that governs the implementation of federal and state law in implementing the Medicaid program in New Mexico.

97.    The state of New Mexico now operates its Medicaid program through a managed care system known as Centennial Care 2.0. To implement the program, the state of New Mexico contracts with three (3) Managed Care Organizations ("MCO"): Blue Cross Blue Shield of New Mexico, Presbyterian Health Plan, Inc. ("PHP"), and Western Sky Community Care, Inc. (collectively the "MCO Defendants").

98.    In 2021, 43% of New Mexico's population was a Medicaid participant.

99.    As of June 30, 2021 and as part of the Centennial Care 2.0 plan, PHP had 412,342 participants, BCBSNM had 279,028 participants, and Western Sky had 82,095 participants. Upon information and belief, the participant distribution remains relatively the same.

100.    New Mexico mandates a minimum level of services to be provided to Medicaid recipients in an Alternative Benefit Plan, which is an alternative to the New Mexico benchmark.

101.    The New Mexico Alternative Benefit Plan includes services for behavioral health and specifically outpatient services.

102.     New Mexico requires all MCOs to offer, at a minimum, the covered services described in the Alternative Benefits Plan.

103.     The MCO Defendants entered into Medicaid Managed Care Services Agreements ("MMC Services Agreements") with the HSD effective January 1, 2022 to the date of the filing of this lawsuit.

104.     All plans provided by the MCO Defendants as Centennial Care 2.0 plans provide for behavioral/mental health services.

105.     The MMC Services Agreements expressly incorporate all state and federal laws and regulations.

106.     Following the eligibility and application process, Plaintiffs Trujillo, McDougal, and Rowland were approved to participate in the Medicaid program (Centennial Care 2.0) as administered by HSD.

107.     Plaintiff Trujillo chose the Presbyterian plan, Plaintiff McDougal chose the BCBS plan, and Plaintiff Rowland chose the Western Sky plan.

## Class Action Allegations

108.     Plaintiffs bring this action as a class action pursuant to Rules 1-023(A), 1-023(B)(1), 1-023(B)(2), and 1-023(B)(3) of the New Mexico Rules of Civil Procedure.[8]

**Rule 1-023(A)**

109.     The members of the class are so numerous that the joinder of all members is impractical.

---

[8] Plaintiffs maintain that the there is no federal subject matter jurisdiction and therefore the New Mexico Rules of Civil Procedure apply.

110.    As of July 2022, there are 134,101 LECUA Qualifying Patients, of which 73,325 have a qualifying condition of PTSD. Of all 134,101 current Qualified Patients as defined by LECUA, only 688 are not New Mexico residents.

111.    While the exact number of the class members is not known to Plaintiffs at this time, Plaintiffs believe that there will be more than 30,000 members of the class.

112.    LECUA, in its current form, allows for only New Mexico residents to be a Qualified Patient.

113.    The questions of law or fact common to the class members are:

    a.    Whether medical cannabis is a behavioral health service;

    b.    Whether medical cannabis is a health service covered by the New Mexico benchmark or alternative benchmark;

    c.    Whether Plaintiffs and members of the class paid for their medical cannabis, without reimbursement, from January 1, 2022 to the present;

    d.    Whether Defendants in 2022 paid 100% of the cost of medical cannabis for Plaintiffs and the class members;

    e.    Whether Defendants violated the Lynn and Erin Compassionate Use Act; and

    f.    Whether Defendants violated the Behavioral Health Services Equity Acts.

114.    Plaintiffs' claims are typical of the claims of the members of the class and Plaintiffs and all members of the class sustained injuries in New Mexico arising out of Defendants' wrongful conduct complained herein. Namely, Plaintiffs were denied reimbursement for their medical cannabis.

115.    The individual plaintiffs will fairly and adequately protect the interests of the members of the class and have chosen counsel experienced in complex litigation, including class

actions.  The plaintiffs do not have interests that are antagonistic to, or in conflict with, the class they seek to represent.

**Rule 1-023(B)(1)**

115.    The Rule 1-023(B)(1) class shall consist of all persons who: (1) are currently Qualified Patients as defined by LECUA and are New Mexico citizens; (2) have been diagnosed with a mental or behavioral health condition pursuant to LECUA; (3) are members of any health insurance policy or plan that covers behavioral health service by that or some equivalent name; and (4) are not a participant or beneficiary of an employee benefit plan as defined by ERISA and do not otherwise have standing under § 502(a)(1)(B) of ERISA.

116.    If all similarly situated persons prosecuted separate actions, there would be a risk of inconsistent or varying adjudications with respect to individuals that would establish incompatible standards of conduct for Defendants and other insurance carriers.

**Rule 1-023(B)(2)**

117.    The Rule 1-023(B)(2) class shall consist of all persons who: (1) are currently Qualified Patients as defined by LECUA and New Mexico citizens; (2) have been diagnosed with a mental or behavioral health condition pursuant to LECUA; (3) are members of any health insurance policy that covers behavioral health service by that or some equivalent name; and (4) are not a participant or beneficiary of an employee benefit plan as defined by ERISA and do not otherwise have standing under § 502(a)(1)(B) of ERISA.

118.    Defendants acted or refused to act on grounds generally applicable to the class, thereby making appropriate final corresponding declaratory relief with respect to the class as a whole. Defendants' acts or refusals generally applicable to the class all relate to their policies or plans, all of which insufficiently and unlawfully fail to account for the following:

a.   Whether medical cannabis is a behavioral health service;

b.   Whether medical cannabis is a health service covered by the New Mexico benchmark or alternative benchmark;

c.   Whether Plaintiffs and members of the class paid for their medical cannabis, without reimbursement, from January 1, 2022 to the present;

d.   Whether Defendants in 2022 paid 100% of the cost of medical cannabis for Plaintiffs and the class members;

e.   Whether Defendants violated the Lynn and Erin Compassionate Use Act;

f.   Whether Defendants violated the Behavioral Health Services Equity Acts; and

g.    Whether the entire cost of medical cannabis shall be covered by health policies or plans offered in New Mexico that cover behavioral health services and are not ERISA plans.

119.   Final relief of an injunctive nature or of a corresponding declaratory nature settles the legality of the behavior of all Defendants with respect to the class as a whole.

**Rule 1-023(B)(3)**

120.   The Rule 1-023(B)(3) class shall consist of all persons who: (1) are currently Qualified Patients as defined by LECUA and New Mexico citizens; (2) have been diagnosed with a mental or behavioral health condition pursuant to LECUA; (3) purchased medical cannabis to provide relief for their mental or behavioral health condition; (4) are members of a health insurance policy issued by one of the named Defendants; and (5) are not a participant or beneficiary of an employee benefit plan as defined by ERISA and do not otherwise have standing under § 502(a)(1)(B) of ERISA.

121.    The questions of law or fact common to the class members that predominate over any questions affecting only individual members are:

      a.   Whether medical cannabis is a behavioral health service;

      b.   Whether medical cannabis is a health service covered by the New Mexico benchmark or alternative benchmark;

      c.   Whether Plaintiffs and members of the class paid for their medical cannabis, without reimbursement, from January 1, 2022 to the present;

      d.   Whether Defendants in 2022 paid 100% of the cost of medical cannabis for Plaintiffs and the class members;

      e.   Whether Defendants violated the Lynn and Erin Compassionate Use Act;

      f.   Whether Defendants violated the Behavioral Health Services Equity Acts; and

      g.   Whether the entire cost of medical cannabis shall be covered by health policies or plans offered in New Mexico that cover behavioral health services and are not ERISA plans.

123.    A class action is superior to all other available methods for the fair and efficient adjudication of the controversy since joinder of all members is impracticable.

124.    Furthermore, as the damages suffered by Plaintiffs or any individual class members may be relatively small in comparison to the expense of maintaining and prosecuting this action, the expense and burden of individual litigation make it impracticable of the class members to individually redress the wrongs done to them.

### Count One—Violation of State Law
**(Class representative plaintiffs and class members against all defendants)**

125.    Plaintiffs incorporate by reference the foregoing allegations.

126.     The Defendants violated the Behavioral Health Services Equity Acts by requiring class members, including Plaintiffs, to pay 100% of their respective medical cannabis costs.

127.     The Behavioral Health Services Equity Acts and their implementing regulations were enacted for the special benefit of the class of which Plaintiffs are members. There is no indication of legislative intent to deny a private remedy, a private remedy would assist the underlying purpose of the statute, and public policy supports maintaining of this action to remedy Plaintiffs' injuries caused by the Defendants' violation of law.

128.     As a proximate result, Plaintiffs have suffered actual damages in an amount equal to the amount paid for medical cannabis as a behavioral health service from January 1, 2022 to the present.

129.     The actions of the Defendants in failing to comply with state law were done intentionally and in a reckless and willful disregard of the rights of Plaintiffs for which they are entitled to punitive damages.

### Count Two—Breach of Contract
**(Class representative plaintiffs and class members against all defendants)**

130.     Plaintiffs incorporate by reference the foregoing allegations.

131.     Plaintiffs Candelaria and other members of the class entered into valid written contracts with Defendants for health insurance, including the offering of behavioral health services.

132.     Plaintiffs Trujillo, Rowland, and McDougal and other class members participating in the Medicaid program are beneficiaries of the MCO contracts to provide the health services to Medicaid participants. They are therefore entitled to seek enforcement of the contract.

133.     Under the express language of the written contracts, all applicable federal and state laws and regulations are incorporated into such contracts.

134.    Defendants are in breach of the respective health insurance policies as Plaintiffs have paid, without reimbursement, one hundred percent (100%) of the cost of their medical cannabis in violation of the Behavioral Health Services Equity Acts.

135.    As a proximate result of such actions, Plaintiffs suffered actual damages in the amount actually paid by Plaintiffs for medical cannabis from January 1, 2022 to the present.

136.    The actions of Defendants in failing to comply with New Mexico law and in breaching the contracts were done intentionally and in a reckless and willful disregard of the rights of Plaintiffs for which they are entitled to punitive damages.

### Count Three—Breach of Covenant of Good Faith and Fair Dealing
**(Class representative plaintiffs and class members against all defendants)**

137.    Plaintiffs incorporate by reference the foregoing allegations.

138.    Defendants violated the covenant of good faith and fair dealing that is implied in all contracts in the State of New Mexico by entering into contracts with knowledge that such contracts would be breached by not providing behavioral health services without cost-sharing.

139.    By refusing to cover the costs of medical cannabis as a behavioral health service or medication, Defendants knowingly deprived Plaintiffs of the benefits to which they were entitled by law.

140.    As a proximate result, Plaintiffs suffered actual damages in the amount actually paid by Plaintiffs for medical cannabis.

141.    The actions of Defendants in failing to comply with New Mexico law and in breaching the contracts were done intentionally and in a reckless and willful disregard of the rights of Plaintiffs for which they are entitled to punitive damages.

## Count Four—Unfair Practices Act
### (Class representative plaintiffs and class members against all defendants)

142.    Plaintiffs incorporate by reference the foregoing allegations.

143.    Plaintiffs and Defendants are "persons" within the meaning of NMSA 1978, § 57-12-2(A) (2019).  The Defendants engaged in "trade" or "commerce" within the meaning of NMSA 1978, § 57-12-2(C) (2019).

144.    The Defendants' conduct in failing to pay for medical cannabis as a behavioral health service or medication as required by the Behavioral Health Services Equity Acts constitutes an "unconscionable trade practice" within the meaning of NMSA 1978, § 57-12-2(E) (2019).

145.    The Defendants' conduct in failing to exempt or otherwise specify that medical cannabis is not to be included as a behavioral health service or medication took advantage of the lack of ability or capacity of Plaintiffs to a grossly unfair degree or resulted in a gross disparity between the value received by Plaintiffs and the consideration given by offering behavioral health services as part of a health insurance policy.

146.    Plaintiffs suffered loss of money or property as a result of the Defendants' conduct. Pursuant to NMSA 1978, § 57-12-10(B) and (E) (2005), Plaintiffs seek recovery of their actual damages in the amount actually paid by Plaintiffs for medical cannabis.

147.    Plaintiffs will show that the Defendants conduct was done willfully for which Plaintiffs seek additional damages in the amount of up to three times the actual damages awarded as authorized by NMSA 1978, § 57-12-10(B) (2005).

148.    Plaintiffs additionally seek recovery of their attorneys' fees and costs pursuant to NMSA 1978, § 57-12-10(C) (2005).

**Count Five—Insurance Code Trade Practices and Fraud**
**(non-Medicaid class representative plaintiffs and**
**class members against non-Medicaid defendants)**

149.    Plaintiffs incorporate by reference the foregoing allegations.

150.    Defendants are "insurers" within the meaning of NMSA 1978, § 59A-1-8 (1984).

151.    The Defendants' conduct in failing to pay for medical cannabis as a behavioral health service or medication as required by the Behavioral Health Services Equity Acts constitutes an unconscionable trade practice or "prohibited act" within the meaning of NMSA 1978 § 59A-16-24(A) (1984).

152.    The Defendants' conduct in failing to exempt or otherwise specify that medical cannabis is not to be included as a behavioral health service or medication took advantage of the lack of ability or capacity of Plaintiffs to a grossly unfair degree or resulted in a gross disparity between the value received by Plaintiffs and the consideration given by offering behavioral health services as part of a health insurance policy.

153.    Plaintiffs suffered loss of money or property as a result of the Defendants' conduct. Pursuant to NMSA 1978 § 59A-16-30 (1990), Plaintiffs seek recovery of their actual damages in the amount actually paid by Plaintiffs for medical cannabis.

154.    Plaintiffs will show that the Defendants conduct was done willfully, for which Plaintiffs seek punitive damages in an amount that is deemed proper.

155.    Plaintiffs additionally seek recovery of their attorneys' fees and costs pursuant to NMSA 1978 § 59A-16-30(B) (1990).

**Count Six—Unjust Enrichment**
**(class representative plaintiffs and class members against all defendants)**

156.    Plaintiffs incorporate by reference the foregoing allegations.

25

157.     Defendants offered to perform services under valid written insurance policies in effect in New Mexico that included the offering of behavioral health services and medications. But Defendants failed to pay for medical cannabis as a behavioral health service or medication.

158.     The actions of Defendants in failing to pay one hundred percent (100%) for medical cannabis as a behavioral health service or medication to which Plaintiffs are entitled under law has resulted in these Defendants being unjustly enriched.

159.     As a result of these actions of Defendants, they have been unjustly enriched by withholding the payments, and 100% thereof, for medical cannabis as a behavioral health service or medication.

160.     As a proximate result, Plaintiffs suffered actual damages in the amount actually paid by Plaintiffs for medical cannabis.

161.     The actions of Defendants in unjustly enriching themselves were done intentionally and in a reckless and willful disregard of the rights of Plaintiffs for which they are entitled to punitive damages.

**Count Seven—Declaratory Judgment**
**(all Plaintiffs against all Defendants)**

162.     Plaintiffs incorporate by reference the foregoing allegations.

163.     Plaintiffs are persons interested under a statute of the State of New Mexico, whose rights, status, and other legal relations are affected thereunder as they are health policy holders of a Defendant and are Qualified Patients as defined by the Lynn & Erin Compassionate Use Act.

164.     Plaintiff Ultra Health is a person interested under a statute of the State of New Mexico, whose rights, status, and other legal relations are affected thereunder, as it is a licensed Vertically-Integrated Cannabis Establishment that may lawfully sell cannabis to qualified patients via an agreement with a health insurer.

165.     An actual controversy exists as to Plaintiffs' rights, status, and other legal relations under the Behavioral Health Services Equity Acts. Accordingly, an action for declaratory judgment is authorized pursuant to NMSA 1978 §§ 44-6-2 and 44-6-4 (1975).

166.     Plaintiffs request that the Court declare to Defendants, and all other insurance carriers that offer fully insured health policies in New Mexico, that:

    a.  medical cannabis is a behavioral health service;

    b.  medical cannabis is a health service covered by the New Mexico benchmark or alternative benchmark;

    c.  Plaintiffs and members of the class paid for their medical cannabis/marijuana without insurance coverage from January 1, 2022 to the present;

    d.  Defendants in 2022 paid 100% of the cost of medical cannabis for Plaintiffs and the class members;

    e.  Defendants violated the Lynn and Erin Compassionate Use Act; and

    f.  Defendants violated the Behavioral Health Services Equity Acts.

167.     Plaintiffs pray recovery of their costs pursuant to NMSA 1978 § 44-6-11 (1975).

## JURY DEMAND

Plaintiffs demand trial by jury.

## Prayer for Relief

WHEREFORE, Plaintiffs, for themselves and on behalf of the class members, request the following relief and remedies:

    a.  Certify the class, with possible sub-classes as and if determined appropriate for the just and efficient administration of the class claims;

b.   Declare for Plaintiffs and the class that medical cannabis is a behavioral/mental health service;

c.   Declare for Plaintiffs and the class that medical cannabis is a behavioral/mental health service as defined by the New Mexico benchmark or alternative benchmark;

d.   Declare for Plaintiffs and the class that medical cannabis as a behavioral/mental health service is Medically Necessary;

e.   Declare for Plaintiffs and the class that, as a behavioral/mental health service, the cost for medical cannabis must avoid cost-sharing;

f.   Award damages for the actual cost paid by Plaintiffs and the class for medical cannabis from January 1, 2022 to the time of the award;

g.   Award punitive damages against Defendants in an amount to be determined at trial; and

h.   Award costs and attorneys' fees pursuant to NMSA 1978, § 57-12-10(C) (2005), NMSA 1978 § 59A-16-30(B) (1990), and § 44-6-11 (1975), or as otherwise allowed by law.

Respectfully Submitted,

SAUCEDOCHAVEZ, P.C.

By: */s/Christopher T. Saucedo*,
    Christopher T. Saucedo
    Morris J. Chavez
    Ryan H. Harrigan
    Frank T. Apodaca
800 Lomas Blvd. NW, Suite 200
Albuquerque, NM 87102
T:  (505) 338-3945
csaucedo@saucedochavez.com
mo@saucedochavez.com
rharrigan@saucedochavez.com
fapodaca@saucedochavez.com

I HEREBY CERTIFY that on August 19, 2022, the foregoing was filed electronically through the CM/ECF system, which caused all parties and counsel to be served by electronic means, as more fully reflected on the Notice of Electronic Filing.

*/s/ Christopher T. Saucedo*

Christopher T. Saucedo, Esq.