**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO**

| | | |
|---|---|---|
| NEW MEXICO TOP ORGANICS—ULTRA HEALTH, INC., and JACOB R. CANDELARIA, MATIAS TRUJILLO, as father and guardian of MT, a minor, ERICA ROWLAND, and ARIEL McDOUGAL, on behalf of themselves and all others similarly situated, | ) ) ) ) ) ) ) ) | |
| Plaintiffs, | ) ) | Civil Action No.: 1:22-cv-00546-KG-LF |
| v. | ) ) | |
| BLUE CROSS AND BLUE SHIELD OF NEW MEXICO, PRESBYTERIAN HEALTH PLAN, INC., and WESTERN SKY COMMUNITY CARE, INC., | ) ) ) ) ) | |
| Defendants. | ) | |

**DEFENDANTS' CONSOLIDATED RESPONSE IN OPPOSITION TO
PLAINTIFFS' MOTION TO REMAND**

## <u>TABLE OF CONTENTS</u>

**Page**

INTRODUCTION ............................................................................................................. 1

BACKGROUND ............................................................................................................... 2

I.      Defendants Are Medicaid Managed Care Organizations Participating in New Mexico's Centennial Care 2.0 Medicaid Program, and BCBSNM, a Diverse Defendant, Is the Largest Health Plan in New Mexico. ........................... 2

II.     Cannabis Is Illegal under Federal Law. ................................................................. 3

III.   The Original Plaintiffs Filed a Class Action Complaint in New Mexico State Court, Demanding Coverage for Cannabis. ...................................................... 3

IV.   Defendants Timely Removed This Action to This Court. ...................................... 5

V.     Plaintiffs Filed Their First Amended Class Action Complaint, Dropping Two Plaintiffs and Four Defendants, and Then Moved to Remand. ...................... 6

STANDARD FOR REMOVAL .......................................................................................... 7

ARGUMENT ..................................................................................................................... 7

I.      This Court Has Original Jurisdiction under CAFA, and Plaintiffs Fail to Meet Their Burden of Proving That the Court Should Abstain from Exercising Its Jurisdiction Due to the Local Controversy Exception. .................... 7

        A.      Defendants Have Established the Court's Original Jurisdiction under CAFA. ....................................................................................................... 7

        B.      Plaintiffs Bear the Burden of Establishing That the Narrow Local Controversy Exception Applies. .................................................................. 8

        C.      Plaintiffs Fail to Meet Their Burden of Proving That More Than Two-Thirds of the Proposed Class Are New Mexico Citizens. .................. 9

        D.      Plaintiffs Fail to Meet Their Burden of Proving That The Class Is Seeking "Significant Relief" from a Local Defendant Whose Alleged Conduct Forms a Significant Basis for the Claims Asserted by the Proposed Class. ........................................................................... 11

               i.      Plaintiffs Fail to Prove That the Class Is Seeking "Significant Relief" from a Local Defendant. ................................ 12

               ii.     Plaintiffs Fail to Prove That There Is a Local Defendant Whose Alleged Conduct Forms a Significant Basis for the Class's Claims. .................................................................................... 15

II.     The Court Has Federal Question Jurisdiction Under 28 U.S.C. § 1331, As Plaintiffs' Claims Necessarily Raise Substantial Issues Of Federal Law. ............ 17

        A.      Plaintiffs' Complaint Necessarily Raises Federal Issues. ......................... 18

        B.      The Federal Issues Are Substantial. .......................................................... 24

C.     Federal Jurisdiction Furthers the Federal-State Balance Approved by Congress........................................................................................ 26

III.    This Court Should Exercise Supplemental Jurisdiction Over All State Law Claims Under 28 U.S.C. § 1367. ......................................................... 27

CONCLUSION................................................................................................................ 30

## **TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*Albuquerque Pub. Sch. v. Sledge*,
　No. CV 18-1029, 2019 U.S. Dist. LEXIS 133504 (D.N.M. Aug. 8, 2019)......................22, 27

*Armijo v. Wal-Mart Stores, Inc.*,
　142 N.M. 557 (Ct. App. 2007).................................................................................................18

*Barreras v. Travelers Home & Marine Ins. Co.*,
　No. 12-CV-0354, 2012 U.S. Dist. LEXIS 200819 (D.N.M. Oct. 17, 2012)...............15, 16, 17

*Bowers v. J & M Disc. Towing, LLC.*,
　472 F. Supp. 2d 1248 (D.N.M. 2006) ......................................................................................20

*Braud v. Transp. Serv. Co.*,
　445 F.3d 801 (5th Cir. 2006) ...................................................................................................11

*In re Burlington N. Santa Fe Ry. Co.*,
　606 F.3d 379 (7th Cir. 2010) ..............................................................................................11, 30

*Casias v. Distrib. Mgmt. Corp.*,
　No. 1:11-cv-00874, 2012 U.S. Dist. LEXIS 142693 (D.N.M. Sept. 26, 2012)......................11

*Caterpillar, Inc. v. Williams*,
　482 U.S. 386 (1987)...................................................................................................................7

*City of Chicago v. Int'l Coll. of Surgeons*,
　522 U.S. 156 (1997)..................................................................................................................28

*Coffey v. Freeport McMoran Copper & Gold*,
　581 F.3d 1240 (10th Cir. 2009) ...............................................................................................12

*Cox v. Allstate Ins. Co.*,
　No. CIV-07-1449, 2008 U.S. Dist. LEXIS 41272 (W.D. Okla. May 21, 2008).....................13

*Dutcher v. Matheson*,
　840 F.3d 1183 (10th Cir. 2016) .............................................................................................8, 9

*Empire Healthchoice Assurance, Inc. v. McVeigh*,
　547 U.S. 677 (2006)..................................................................................................................24

*Evans v. Walter Indus.*,
　449 F.3d 1159 (11th Cir. 2006) ....................................................................................10, 12, 17

*Ferrera v. Bd. of the Gadsden Indep. Sch. Dist.*,
   No. 2:11-00053, 2011 U.S. Dist. LEXIS 169663 (D.N.M. Oct. 18, 2011),
   *remand denied*, 2012 U.S. Dist. LEXIS 203512 (D.N.M. Jan. 27, 2012) ...............................19

*Freeport-McMoRan, Inc. v. KN Energy, Inc.*,
   498 U.S. 426 (1991)...........................................................................................................7

*Fulgenzi v. Smith*,
   No. 1:12-cv-1261, 2014 U.S. Dist. LEXIS 187075 (D.N.M. Nov. 13, 2014) ........................16

*Gilmore v. Weatherford*,
   694 F.3d 1160 (10th Cir. 2012) ...............................................................................18, 24, 26

*Gonzales v. Raich*,
   545 U.S. 1 (2005)...........................................................................................3, 21, 22, 26

*Grable & Sons Metal Prods. v. Darue Eng'g & Mfg.*,
   545 U.S. 308 (2005)...............................................................................................18, 24, 26

*Hargett v. RevClaims, LLC*,
   854 F.3d 962 (8th Cir. 2017) .........................................................................................10, 11

*Hemphill v. Liberty Mut. Ins. Co.*,
   No. CV 10-861, 2013 U.S. Dist. LEXIS 200109 (D.N.M. Mar. 28, 2013) ...........................21

*Hern v. Beye*,
   57 F.3d 906 (10th Cir. 1995) ................................................................................................2

*Kitchin v. Bridgeton Landfill, LLC*,
   3 F.4th 1089 (8th Cir. 2021) ...............................................................................................16

*Krumm v. Holder*,
   *No*. 13CV0562, 2014 U.S. Dist. LEXIS 178064 (D.N.M. Mar. 19, 2014),
   *aff'd*, 594 F. App'x 497 (10th Cir. 2014).............................................................................25

*Lax v. APP of N.M. ED, PLLC*,
   2022 U.S. App. LEXIS 19279 (10th Cir. July 13, 2022)...............................................12, 16

*New Mexico Top Organics-Ultra Health, Inc. v. Kennedy*,
   No. 1:17-CV-00599-JAP-LF, 2019 U.S. Dist. LEXIS 7736 (D.N.M. Jan. 16,
   2019) ..................................................................................................................................27

*New Mexico v. Gen. Elec. Co.*,
   335 F. Supp. 2d 1157 (D.N.M. 2003) .............................................................................29, 30

*Nichols v. Chesapeake Operating, LLC*,
   718 F. App'x 736 (10th Cir. 2018) ...............................................................................8, 10, 11

*Nicodemus v. Union Pac. Corp.*,
 440 F.3d 1227 (10th Cir. 2006) ......................................................................18, 24, 25

*P.S.C. v. Diamond D Constr. Co.*,
 131 N.M. 100 (2001) ...................................................................................................20

*Pfeiffer v. Hartford Fire Ins. Co.*,
 929 F.2d 1484 (10th Cir. 1991) ....................................................................................7

*PharmaCann Penn, LLC v. BV Dev. Superstition RR, LLC*,
 297 F. Supp. 3d 537 (E.D. Pa. 2018) ..........................................................................20

*Preston v. Tenet Healthsystem Mem'l Med. Ctr.*,
 485 F.3d 793 (5th Cir. 2007) ......................................................................................10

*Reece v. AES Corp.*,
 638 F. App'x 755 (10th Cir. 2016) ..........................................................................10, 11

*Robinson v. Cheetah Transp.*,
 No. 06-0005, 2006 U.S. Dist. LEXIS 10129 (W.D. La. Feb. 27, 2006)......................12

*Safe Streets Alliance v. Hickenlooper*,
 859 F.3d 865 (10th Cir. 2017) .....................................................................................18

*Sensoria, LLC v. Kaweske*,
 581 F. Supp. 3d 1243 (D. Colo. 2022)....................................................................26, 27

*In re Sprint Nextel Corp.*,
 593 F.3d 669 (7th Cir. 2010) ......................................................................................10

*Standing Akimbo, LLC v. U.S.*,
 141 S.Ct. 2236 (2021)..................................................................................................26

*Stanforth v. Farmers Ins. Co. of Ariz.*,
 No. 09-1146, 2010 U.S. Dist. LEXIS 146966 (D.N.M. Apr. 22, 2010)
 ..................................................................................................................12, 13, 14, 15

*U.S. v. Bd. of Cnty. Comm'rs of the Cnty. of Dona Ana, N.M.*,
 730 F. Supp. 2d 1327 (D.N.M. 2010) .....................................................................29, 30

*U.S. v. Oakland Cannabis Buyers' Co-op.*,
 532 U.S. 483 (2001)....................................................................................................22

*United Intern. Holdings, Inc. v. Wharf (Holdings) Ltd.*,
 210 F.3d 1207 (10th Cir. 2000) ..................................................................................29

*United Mine Workers v. Gibbs*,
 383 U.S. 715 (1966)....................................................................................................28

*Valdez v. Metro. Prop. & Cas. Ins. Co.*,
  867 F. Supp. 2d 1143 (D.N.M. 2012) ...........................................................12, 15

*Woods v. Std. Ins. Co.*,
  771 F.3d 1257 (10th Cir. 2014) ...........................................7, 8, 12, 14, 15, 16, 17

**Statutes**

21 U.S.C. § 812(b) ...........................................................................................3

21 U.S.C. § 812(c) ...........................................................................................3

28 U.S.C. 1331 ...........................................................................1, 5, 17, 28, 30

28 U.S.C. § 1332(d)(1)(A) ...........................................................................12, 14

28 U.S.C. § 1332(d)(2) ...........................................................................................8

28 U.S.C. § 1332(d)(2)(A) ...........................................................................................8

28 U.S.C. § 1332(d)(4)(A) ...........................................................................1, 8, 9

28 U.S.C. § 1332(d)(4)(A)(i)(II)(aa), (bb) ...........................................................1, 12

28 U.S.C. § 1332(d)(5)(B) ...........................................................................................8

28 U.S.C. 1367 ...........................................................................................2, 27, 29

28 U.S.C. § 1367(a) ...........................................................................................6, 28

28 U.S.C. § 1441 *et seq* ...........................................................................................7

42 U.S.C. § 1320a-7a(a)(1)(E) ...........................................................................22

42 U.S.C. § 1396 *et seq* ...........................................................................................25

42 U.S.C. § 1396r–8(a) ...........................................................................................23, 25

42 U.S.C. § 1396r-8(g)(1)(A) ...........................................................................23

42 U.S.C. § 1396r-8(k)(2)(A) ...........................................................................19, 23

42 U.S.C. § 1396w-3a(a)(1), (b) ...........................................................................23

42 U.S.C. § 1396w-3a(h)(1) ...........................................................................23

NMSA 1978, § 26-2B-3(N) ...........................................................................................10

NMSA 1978, § 32A-3A-15 ...........................................................................................4

NMSA 1978, § 59A-22-57 ........................................................................................4

NMSA 1978, § 59A-23-16 ........................................................................................4

NMSA 1978, § 59A-46-57 ........................................................................................4

NMSA 1978, § 59A-47-51 ........................................................................................4

**Rules**

21 C.F.R. § 1301.11 ................................................................................................25

42 C.F.R. § 438.3(f)(1) ..............................................................................................2

**Other Authorities**

BCBSNM MMCSA, available at https://www.hsd.state.nm.us/wp-content/uploads/
 CC-2_0-BLUE-CROSS-BLUE-SHIELD-NM-SIGNED-CONTRACT.pdf..........................22

BCBSNM Member Contract, available at https://www.bcbsnm.com/community-
 centennial/pdf/cc-member-handbook-nm.pdf..............................................................19

*HSD State Budget Request is $1.413 Billion for Fiscal Year 2023*, available at
 https://www.hsd.state.nm.us/2021/09/02/30833/.......................................................25

*Finance Facts – Medicaid*, NEW MEXICO LEGISLATIVE FINANCE COMMITTEE,
 available at https://www.nmlegis.gov/entity/lfc/Documents/Finance_Facts/
 finance%20facts%20medicaid.pdf..............................................................................2

*Pot? Weed? Marijuana? What Should We Call It?* NPR (Sept. 19, 2019),
 available at https://www.npr.org/local/309/2019/09/19/762044859/pot-weed-
 marijuana-what-should-we-call-it...............................................................................3

PHP Member Contract, available at
 https://onbaseext.phs.org/PEL/DisplayDocument?ContentID=OB_000000003194..............19

S. Rep. No. 109-14.........................................................................................7, 8, 11, 17

Western Sky Member Contract, available at
 https://www.westernskycommunitycare.com/content/dam/centene/newmexico/
 Medicaid/PDFs/WSCC_20-
 135_Member%20Handbook_2022_HSDEDITS_UPDATE_june2022.pdf ................. 19, 22

## INTRODUCTION

Plaintiffs instituted this putative class action to compel Defendants,[1] all of whom deliver Medicaid benefits primarily through federal funds, to pay for the cost of cannabis, even though cannabis is illegal under federal law. Despite Plaintiffs' amending their complaint in an effort to seek remand in, this Court retains jurisdiction over this case for at least three reasons.

*First*, **Plaintiffs do not and cannot dispute that this Court has original jurisdiction under the Class Action Fairness Act ("CAFA"),** 28 U.S.C. § 1332(d). Plaintiffs instead argue that the Court should abstain from exercising CAFA jurisdiction due to the local controversy exception, 28 U.S.C. § 1332(d)(4)(A), but they fail to meet their burden of proving that the exception applies here. Plaintiffs fail to present any evidence proving that more than two-thirds of the proposed class are New Mexico citizens, as they must under Tenth Circuit law. Plaintiffs also fail to prove that they are seeking "significant relief" from a local defendant, or that a local defendant's alleged conduct forms a "significant basis" for the claims asserted by the proposed class. 28 U.S.C. § 1332(d)(4)(A)(i)(II)(aa), (bb).

*Second*, **Plaintiffs' claims necessarily raise substantial issues of federal law under 28 U.S.C. § 1331**. Plaintiffs claim that Defendants must cover the cost of cannabis. In order to determine that, the Court must address and reconcile applicable federal laws, including (1) the Controlled Substance Act ("CSA"), which dictates that cannabis is illegal and has no accepted medical purpose, and (2) the Medicaid statute, which imposes restrictions on the coverage of drugs that are incompatible with covering cannabis. Therefore, Plaintiffs' pleadings necessarily raise substantial disputed issues of federal law, giving the Court jurisdiction under 28 U.S.C. § 1331.

---

[1] "Defendants" are Blue Cross and Blue Shield of New Mexico, a division of Health Care Service Corporation, a Mutual Legal Reserve Company ("BCBSNM"), Presbyterian Health Plan, Inc. ("PHP"), and Western Sky Community Care, Inc. ("Western Sky").

***Third***, Plaintiffs do not dispute that this Court should exercise supplemental jurisdiction over all of Plaintiffs' state law claims under 28 U.S.C. § 1367. All state law claims form part of the same case or controversy as those that give rise to federal jurisdiction. And notwithstanding the Court's jurisdiction under CAFA and substantial federal question, the Court should exercise supplemental jurisdiction over all of Plaintiffs' claims because the case was properly removed, and Plaintiffs cannot amend away jurisdiction.

## BACKGROUND

I.    **DEFENDANTS ARE MEDICAID MANAGED CARE ORGANIZATIONS PARTICIPATING IN NEW MEXICO'S CENTENNIAL CARE 2.0 MEDICAID PROGRAM, AND BCBSNM, A DIVERSE DEFENDANT, IS THE LARGEST HEALTH PLAN IN NEW MEXICO.**

"Medicaid [is] a jointly funded federal-state program designed to finance medical care for indigent Americans." *Hern v. Beye*, 57 F.3d 906, 909 (10th Cir. 1995); *see* ECF No. 1-1, ¶ 113-14; ECF No. 22, ¶ 91-92. States like New Mexico that participate in and receive federal funding for Medicaid must comply with applicable federal laws and federal regulations issued by the Centers for Medicare & Medicaid Services ("CMS"). *See id.* Notably, "[t]he federal government pays approximately 74 percent of traditional Medicaid costs in New Mexico."[2]

New Mexico's Human Services Department ("HSD") administers the state's Medicaid program, Centennial Care 2.0, by contracting with each of the three Defendants to deliver health benefits and other services to eligible New Mexicans. *See* ECF No. 1-1, ¶¶ 114-118, 120, 124; ECF No. 22, ¶¶ 92-97, 97, 103. Consistent with federal regulations, HSD's Medicaid Managed Care Services Agreements ("MMCSAs") with Defendants require, among other things, that Defendants "comply with all applicable Federal and State laws and regulations." ECF No. 1-1, ¶¶ 126, 171; ECF No. 22, ¶¶ 105, 133; *see* 42 C.F.R. § 438.3(f)(1).

---

[2] *Finance Facts – Medicaid*, NEW MEXICO LEGISLATIVE FINANCE COMMITTEE, available at https://www.nmlegis.gov/entity/lfc/Documents/Finance_Facts/finance%20facts%20medicaid.pdf.

In addition to offering Medicaid coverage for New Mexicans, BCBSNM, a diverse defendant that is a citizen of Illinois, is the largest health plan in New Mexico and by far the largest plan on the private market. *See* Declaration of Stephanie Hutchison, attached as **Exhibit A**, ¶¶ 10-13; Notice of Removal ("Notice," at ECF No. 1), ¶ 20. About 32.5% of New Mexicans with health care coverage of any kind have a BCBSNM health plan, the most of any health plan in New Mexico. *Id.*, ¶ 10. BCBSNM's share of the private market is even greater; 37% of New Mexicans with private market health plans have a BCBSNM health plan. *Id.*, ¶ 11.

## II.  CANNABIS IS ILLEGAL UNDER FEDERAL LAW.

The federal CSA deems cannabis[3] and other tetrahydrocannabinols as Schedule I drugs. 21 U.S.C. § 812(c), Schedule I, (c)(10), (17). According to the CSA, Schedule I drugs have (A) a high potential for abuse, (B) no currently accepted medical use in treatment in the United States, and (C) "a lack of accepted safety for use of the drug or other substance under medical supervision." 21 U.S.C. § 812(b). "By classifying marijuana as a Schedule I drug, as opposed to listing it on a lesser schedule, the manufacture, distribution, or possession of marijuana became a criminal offense . . ." *Gonzales v. Raich*, 545 U.S. 1, 14 (2005) (citations omitted).

## III.  THE ORIGINAL PLAINTIFFS FILED A CLASS ACTION COMPLAINT IN NEW MEXICO STATE COURT, DEMANDING COVERAGE FOR CANNABIS.

On June 10, 2022, Plaintiffs[4] and two additional named plaintiff-representatives, Tomas Lorenzo Valencia and Bryce Preston Bryant-Flynn (collectively, the "Original Plaintiffs"), filed a putative class action complaint for damages and declaratory judgment (the "Original Complaint" or "OC," at ECF No. 1-1) against Defendants and four additional health plans and health insurance

---

[3] The CSA prohibits "marijuana." Recently, lawmakers and industry groups "shifted toward using the word cannabis as opposed to marijuana or pot . . ." *Pot? Weed? Marijuana? What Should We Call It?* NPR (Sept. 19, 2019), available at https://www.npr.org/local/309/2019/09/19/762044859/pot-weed-marijuana-what-should-we-call-it.

[4] "Plaintiffs" are New Mexico Top Organics—Ultra Health, Inc. ("Ultra"), Jacob R. Candelaria, Matias Trujillo, as father and guardian of MT, a minor, Erica Rowland, and Ariel McDougal.

issuers (the "Original Defendants")[5] in state court, seeking damages and declaratory relief that would compel health plans and health insurance issuers in New Mexico to pay for the cost of cannabis distributed under the Lynn and Erin Compassionate Use Act, NMSA 1978 § 26-2B-1 *et seq.* ("LECUA"). *See, e.g.*, OC, ¶¶ 13, 160(e); *id.*, Prayer for Relief, p. 31.

The Original Plaintiffs included six individual representatives who are alleged cannabis users and "qualified patients" under LECUA. *See* OC, ¶¶ 15-20, 31-70. Three of the individuals receive health care coverage through their employer or their spouse's employer. *See* OC, ¶¶ 15-17, 38, 45, 52. The remaining three individuals obtain health care coverage with Defendants through New Mexico's state Medicaid program. *See id.*, ¶¶ 18-20, 54, 63, 69. The six individual Original Plaintiffs sought to represent the following class of persons:

> The Class shall comprise of all persons who: (1) are currently Qualified Patients as defined by [LECUA]; (2) have been diagnosed with a mental or behavioral health condition pursuant to [LECUA]; and (3) purchased medical cannabis to provide relief for their mental or behavioral health condition.

OC, ¶ 156.

To support their assertion that public and private health plans in New Mexico, including those governed by federal law and funded by the federal government, must cover the cost of cannabis distributed under LECUA, Plaintiffs relied on two New Mexico statutes. First, Plaintiffs allege that under LECUA, medical cannabis "shall be considered the equivalent of the use of any other medication." OC, ¶ 84 (citing NMSA 1978, § 32A-3A-15). Second, Plaintiffs relied on "Senate Bill 317," which they alleged defines "behavioral health services" to include "all medications" and prohibits insurers from imposing cost sharing on behavioral health services. *Id.*, ¶¶ 99-101 (citing NMSA 1978, §§ 59A-22-57, 59A-23-16, 59A-46-57, and 59A-47-51).

---

[5] The additional "Original Defendants" are True Health New Mexico, Inc. ("True Health"), Cigna Health and Life Insurance Company ("Cigna"), Molina Healthcare of New Mexico, Inc., and Presbyterian Insurance Company, Inc.

The Original Complaint brought seven causes of action. OC, ¶¶ 163-205. Count Two (breach of contract) alleged that "all applicable federal and state laws and regulations are incorporated into [the relevant] contracts,"[6] and Defendants supposedly "are in breach" of those contracts because "Plaintiffs have paid without reimbursement, one hundred percent (100%) of the costs of their medical cannabis" in violation of state law. *Id.*, ¶¶ 171-172. For this and other causes of action, the Original Plaintiffs sought an "[a]ward [of] damages for the actual cost paid by Plaintiffs and the Class for medical cannabis from January 1, 2022 to the time of the award." *Id.*, Prayer for Relief, at p. 31. In Count Seven, the Original Plaintiffs asked the court to declare, among other things, that cannabis "is Medically Necessary" and that "[t]he entire cost of medical cannabis shall be covered by all health policies sold in New Mexico." *Id.*, ¶ 204(c), (e).

## IV.   DEFENDANTS TIMELY REMOVED THIS ACTION TO THIS COURT.

On July 22, 2022, five of the Original Defendants timely removed this action, asserting three separate bases for the Court's original jurisdiction. First, the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1132(a)(1)(B), completely preempts the claims of at least two Original Plaintiffs, Valencia and Bryant-Flynn, who obtain health care coverage through their private employers, giving rise to federal question jurisdiction. *See* Notice, ¶¶ 7-15; *see also* OC, ¶¶ 16, 17, 45, 52. Second, the Court has original jurisdiction under CAFA because (1) the proposed class has more than 100 members, (2) "the parties are minimally diverse," and (3) the amount in controversy exceeds $5,000,000. *See* Notice, ¶¶ 16-29 (citations omitted). Third, the Court has jurisdiction under 28 U.S.C. § 1331 because this case necessarily raises substantial federal questions, including whether health plans operating under a joint state and federal government

---

[6] The relevant contracts (collectively, "Contracts") are (1) the Original Defendants' health plan contracts with the individual Original Plaintiffs ("Member Contracts"), and (2) for those Original Plaintiffs with Medicaid coverage, the MMCSAs between Defendants and HSD, to which they claim to be third party beneficiaries. OC, ¶¶ 169-170.

program relying primarily on federal funding can be compelled to violate federal law. *See id.*, ¶¶ 30-41. Finally, to the extent necessary, the Court has supplemental jurisdiction over any claims that are found not subject to the Court's original jurisdiction because "they form part of the same case or controversy." *See id.*, ¶¶ 42-46 (quoting 28 U.S.C. § 1367(a)).

## V. PLAINTIFFS FILE THEIR FIRST AMENDED CLASS ACTION COMPLAINT, DROPPING TWO PLAINTIFFS AND FOUR DEFENDANTS, AND THEN MOVE TO REMAND.

On August 19, 2022, Plaintiffs filed a first amended class action complaint for damages and declaratory judgment (the "FAC," at ECF No. 22). In an apparent attempt to avoid the Court's jurisdiction, Plaintiffs made the following amendments:

- The FAC dropped two of the Original Plaintiffs, Valencia and Bryant-Flynn, whose claims were preempted by ERISA, and four of the Original Defendants, including those who administered health plans for Valencia and Bryant-Flynn. *Compare* FAC *with* OC; *see* Motion to Remand ("Motion," at ECF No. 24), pp. 1-2, n.1.

- Relatedly, Plaintiffs sought to amend and narrow their class definition to carve out persons covered by ERISA plans. *See* FAC, ¶ 120 ("The . . . class shall consist of all persons who . . . are not a participant or beneficiary of an employee benefit plan."); *compare with* OC, ¶ 156.

- Plaintiffs also sought to amend and limit the proposed class members to only "New Mexico citizens." FAC, ¶ 120; *compare with* OC, ¶ 156.

On August 21, Plaintiffs filed the Motion, claiming that "[t]he Court lacks subject matter jurisdiction over Plaintiffs' [FAC]." Motion, p. 1. Plaintiffs first argue that they dropped Valencia, Bryant-Flynn, and "the corresponding group insurance plan insurers" from the FAC and "explicitly carve[d] out any causes of action against ERISA plans by defining out of the putative class any 'participant or beneficiary' of an ERISA plan." *Id.*, pp. 1-2, n.1, pp. 4-6. Second, without disputing that Defendants meet the requirements for CAFA, Plaintiffs claim that through the FAC, they meet their burden of proving that the local controversy exception in CAFA applies, requiring remand. *See id.*, pp. 2, 6-10. Finally, Plaintiffs assert that there is no substantial federal question raised by

the FAC. *See id.*, pp. 2, 10-18. Plaintiffs do not address Defendants' assertion that the Court has supplemental jurisdiction over any remaining claims that are not subject to the Court's original jurisdiction. *See generally id.*

## STANDARD FOR REMOVAL

Removal jurisdiction is governed by 28 U.S.C. § 1441 *et seq*. An action filed in state court can be removed if it originally could have been filed in federal court. *See Caterpillar, Inc. v. Williams*, 482 U.S. 386, 392 (1987). In determining whether removal is proper, the Court must consider the complaint as it stands at the time of removal. *See Pfeiffer v. Hartford Fire Ins. Co.*, 929 F.2d 1484, 1488-89 (10th Cir. 1991) (citation omitted). Thus, "if jurisdiction exists at the time an action is commenced such jurisdiction may not be divested by subsequent events." *Freeport-McMoRan, Inc. v. KN Energy, Inc.*, 498 U.S. 426, 428 (1991).

## ARGUMENT

I.  **THIS COURT HAS ORIGINAL JURISDICTION UNDER CAFA, AND PLAINTIFFS FAIL TO MEET THEIR BURDEN OF PROVING THAT THE COURT SHOULD ABSTAIN FROM EXERCISING ITS JURISDICTION DUE TO THE LOCAL CONTROVERSY EXCEPTION.**

### A.  Defendants Have Established the Court's Original Jurisdiction under CAFA.

"In enacting CAFA, Congress intended to 'expand substantially federal court jurisdiction over class actions.'" *Woods v. Std. Ins. Co.*, 771 F.3d 1257, 1262 (10th Cir. 2014) (citing *S. Rep. No. 109-14*, at 43 (2005)). Federal courts have original jurisdiction over putative class actions if (1) the proposed class has more than 100 members, (2) "the parties are minimally diverse," and (3) the amount in controversy exceeds $5,000,000. *Id.* (citing 28 U.S.C. §§ 1332(d)(2), (d)(5)(B)). The removing party bears the burden of establishing these elements. *Id.*

As established in the Notice, all three CAFA elements are met here. *See* Notice, ¶¶ 16-22. First, Plaintiffs allege that the class will consist of at least 10,000 members, so the proposed class

exceeds 100 members. *See* 28 U.S.C. § 1332(d)(5)(B); Notice, ¶ 17 (citing OC, ¶ 157); FAC, ¶ 111. Second, the parties are minimally diverse; Plaintiffs are all citizens of New Mexico, while Defendant BCBSNM is a citizen of Illinois. *See* 28 U.S.C. § 1332(d)(2)(A); OC, ¶¶ 18-20; *see also* Motion, p. 8; FAC, ¶¶ 117, 120. Third, as is apparent from the face of Plaintiffs' pleadings, the amount in controversy exceeds $5,000,000. Notice, ¶ 22 (citing OC, ¶ 13); FAC, ¶ 13.

Plaintiffs do not dispute that Defendants meet their burden of proving all three CAFA elements. *See generally* Motion. Thus, the Court has original jurisdiction over this matter under CAFA. *See* 28 U.S.C. § 1332(d)(2), (d)(5)(B); *Woods*, 771 F.3d at 1262; Notice, ¶¶ 16-22.

## B.  <u>Plaintiffs Bear the Burden of Proving That the Narrow Local Controversy Exception Applies.</u>

Once Defendants meet the three threshold elements for CAFA jurisdiction, as is the case here, Plaintiffs bear the burden of proving that one of the exceptions to CAFA jurisdiction exists. *Dutcher v. Matheson*, 840 F.3d 1183, 1190 (10th Cir. 2016); *see Nichols v. Chesapeake Operating, LLC*, 718 F. App'x 736, 739-40 (10th Cir. 2018) (party opposing remand "must show the applicability of a CAFA exception by a preponderance of the evidence"). Here, Plaintiffs rely solely on the local controversy exception in 28 U.S.C. § 1332(d)(4)(A) to argue that this Court should not exercise jurisdiction under CAFA. *See* Motion, pp. 2, 6-10.

The local controversy exception does not divest the Court of jurisdiction; it "operates as an abstention doctrine" under which the federal court abstains from hearing the case. *See Dutcher*, 840 F.3d at 1190 (citation and internal quotations omitted). "Congress intended the local controversy exception to be 'narrow,' with all doubts resolved 'in favor of exercising jurisdiction over the case.'" *Woods*, 771 F.3d at 1265-66 (quoting S. Rep. No. 109-14 at 39, 42). For the exception to apply, Plaintiffs bear the burden of proving that:

(I)     greater than two-thirds of the members of all proposed plaintiff classes in the aggregate are citizens of [New Mexico];

(II)    at least 1 defendant is a defendant—

      (aa)   from whom significant relief is sought by members of the plaintiff class;

      (bb)   whose alleged conduct forms a significant basis for the claims asserted by the proposed plaintiff class; and

      (cc)   who is a citizen of [New Mexico]; and

(III)   principal injuries resulting from the alleged conduct or any related conduct of each defendant were incurred in [New Mexico] . . .

28 U.S.C. § 1332(d)(4)(A); *see Dutcher*, 840 F.3d at 1190-91.

In this case, the Court should not abstain from exercising its jurisdiction under CAFA because Plaintiffs fail to prove the first two elements.

### C.  <u>Plaintiffs Fail to Meet Their Burden of Proving That More Than Two-Thirds of the Proposed Class Are New Mexico Citizens.</u>

Plaintiffs fail to prove that greater than two-thirds of all proposed class members are New Mexico citizens. Unless a plaintiff has narrowly defined the class to comprise only "citizens" of the locale ***at the time of removal*** – which Plaintiffs did not do here – the Tenth Circuit requires Plaintiffs to present affirmative evidence proving this element:

> A pure inference regarding the citizenship of prospective class members may be sufficient if the class is defined as limited to citizens of the state in question. However, Plaintiffs' class here was not restricted to citizens; instead, it included "citizens and/or residents and/or property owners." . . . This definition encompasses groups who may not necessarily be Oklahoma citizens . . .

> Because Plaintiffs did not include in their amended petition [on which Defendants removed the case] an unambiguous limitation confining the class definition to Oklahoma citizens, they were obliged to do more: they, perforce, had to marshal and present some persuasive and substantive evidence (extrinsic to the amended petition) to establish the Oklahoma citizenship of the class members . . . Indeed, courts have required evidentiary proof even for propositions that appear likely on their face.

*Reece v. AES Corp.*, 638 F. App'x 755, 769-70 (10th Cir. 2016) (citations and internal quotations omitted); *see Nichols*, 718 F. App'x at 739-42 (holding, "We . . . reject the applicability of a rebuttable presumption of citizenship in the context of a CAFA exception invoked based on the mere allegation of residence," and affirming that despite "the significant effort [plaintiff] employed" in attempting to prove two-thirds of a class of "Oklahoma residents" were Oklahoma citizens, evidence was insufficient). Other circuit courts that have addressed the matter agree.[7]

Plaintiffs' Original Complaint did not define the class in terms of citizenship. Plaintiffs merely sought to certify a class of "all persons who: (1) are currently Qualified Patients as defined by [LECUA] . . ." OC, ¶ 156. While Plaintiffs allege that a "Qualified Patient" must be "a resident of New Mexico," *see* Motion, p. 8 (citing NMSA 1978, § 26-2B-3(N)), restricting the class by residency is not enough to establish citizenship for purposes of the local controversy exception. *Reece*, 638 F. App'x at 769-70; *Nichols*, 718 F. App'x at 739-42; *supra*, n.7. Instead, Plaintiffs "had to marshal and present some persuasive and substantive evidence (extrinsic to the [Original Complaint]) to establish the [New Mexico] citizenship of the class members." *Reece*, 638 F. App'x at 770; *accord Nichols*, 718 F. App'x at 741-42 ("By defining the class in terms of residence, [plaintiff] saddled himself with an evidentiary burden, one which he sought to meet through admittedly imperfect evidence."). Because they have not done so, they fail to meet their burden of proving that two-thirds of the class are New Mexico citizens.

Importantly, the revised class definition in Plaintiffs' FAC does not relieve Plaintiffs of their burden of proof through affirmative evidence. *See* Motion, p. 8. The Tenth Circuit has refused

---

[7] *See, e.g.*, *Hargett v. RevClaims, LLC*, 854 F.3d 962, 965-67 (8th Cir. 2017) (rejecting that proposed class of "[a]ll persons who were Arkansas Medicaid-eligible beneficiaries" met the local controversy exception absent affirmative proof); *In re Sprint Nextel Corp.*, 593 F.3d 669, 673-76 (7th Cir. 2010) (rejecting that proposed class of "all Kansas residents" met local controversy exception, and noting that any inferences based on the class definition without actual evidence were based on "guesswork"); *Preston v. Tenet Healthsystem Mem'l Med. Ctr.*, 485 F.3d 793, 798-802 (5th Cir. 2007) (evidence presented to support local controversy exception only established residency of proposed class, not citizenship); *Evans v. Walter Indus.*, 449 F.3d 1159, 1165-66 (11th Cir. 2006).

to consider post-removal pleading amendments that belatedly seek to narrow a class definition for purposes of satisfying the burden of proving that at least two-thirds of the proposed class are citizens. *Reece*, 638 F. App'x at 775 (rejecting that plaintiffs could have amended their pleading to restrict the class definition to "citizens" of the locale to satisfy local controversy exception, and holding, "Although this class definition might have been effective if employed when the case was first filed, post-removal amendments are ineffective to divest a federal court of jurisdiction."). Again, other circuit courts that have addressed the matter agree.[8]

"If Plaintiffs had wanted to avoid federal jurisdiction under CAFA, [they] should have taken care in their original complaint to restrict the scope of the allegations defining potential class members." *Casias v. Distrib. Mgmt. Corp.*, No. 1:11-cv-00874, 2012 U.S. Dist. LEXIS 142693, at *11 (D.N.M. Sept. 26, 2012). By failing to do so in the Original Complaint, Plaintiffs "saddled [themselves] with an evidentiary burden" that they failed to meet. *Nichols*, 718 F. App'x at 741-42; *supra*, n.7. No post-removal pleading amendment can alleviate this burden. *Reece*, 638 F. App'x at 775; *supra*, n.8. Plaintiffs have not proven – nor even attempted to prove – that more than two-thirds of the class are citizens of New Mexico, so the Motion should be denied.

**D.** **Plaintiffs Fail to Meet Their Burden of Proving That The Class Is Seeking "Significant Relief" from a Local Defendant Whose Alleged Conduct Forms a Significant Basis for the Claims Asserted by the Proposed Class.**

Plaintiffs also fail to show that there is a local defendant (1) "from whom significant relief is sought by members of the plaintiff class," and (2) "whose alleged conduct forms a significant

---

[8] *E.g.*, *Hargett*, 854 F.3d at 966-67 (reversing order remanding case after plaintiffs amended complaint to restrict class to "citizens" of the locale, and holding, "[T]he concept of redefining a class to trigger the local-controversy exception seems to violate § 1332(d)(7), which says that for purposes of the local-controversy exception, class citizenship must be determined as of the date of the pleading giving federal jurisdiction."); *In re Burlington N. Santa Fe Ry. Co.*, 606 F.3d 379, 381 (7th Cir. 2010) ("CAFA jurisdiction attaches when a case is filed as a class action . . . [and] a post-removal amendment also does not destroy CAFA jurisdiction . . .") (emphasis in original); *Braud v. Transp. Serv. Co.*, 445 F.3d 801, 808 (5th Cir. 2006) ("'While plaintiffs undoubtedly possess some power to seek to avoid federal jurisdiction by defining a proposed class in particular ways, they lose that power once a defendant has properly removed a class action to federal court.'") (quoting *S. Rep. No.* 109-14 (1st Sess. 2005)).

basis for the claims asserted by the proposed plaintiff class." 28 U.S.C. § 1332(d)(4)(A)(i)(II)(aa), (bb). The Court should interpret these requirements "strictly," "with all doubts 'resolved in favor of exercising jurisdiction over the case.'" *Woods*, 771 F.3d at 1265 (citation omitted). Plaintiffs must show each element to remand the case, *see id.* at 1269, but here, they do not establish either.

### i. Plaintiffs Fail to Prove That the Class Is Seeking "Significant Relief" from a Local Defendant.

To show that the class is seeking "significant relief" from any local defendant. Plaintiffs must demonstrate that "'[t]he [local] defendant [is] a target from whom significant relief is sought by the class (as opposed to just a subset of the class membership) . . .'" *Woods*, 771 F.3d at 1266 (citation omitted); *see* 28 U.S.C. § 1332(d)(1)(A) ("[T]he term 'class' means all of the class members in a class action").[9] In making that assessment, this Court has considered whether the relief sought against a local defendant "'is a significant portion of the entire relief sought by the class.'" *Stanforth v. Farmers Ins. Co. of Ariz.*, No. 09-1146, 2010 U.S. Dist. LEXIS 146966, at *11 (D.N.M. Apr. 22, 2010) (quoting *Evans v. Walter Indus.*, 449 F.3d 1159, 1167 (11th Cir. 2006)). That analysis "'includes not only an assessment of how many members of the class were harmed by the [local] defendant's actions, but also a comparison of the relief sought between all defendants . . .'" *Id.* (quoting *Robinson v. Cheetah Transp.*, No. 06-0005, 2006 U.S. Dist. LEXIS 10129, at *12 (W.D. La. Feb. 27, 2006) (relied on by *Evans*)). When "the most significant relief sought by Plaintiffs is against [the diverse defendant], not against the named non-diverse defendants," the local controversy exception does not apply. *Id.* at *12; *e.g.*, *Valdez v. Metro. Prop. & Cas. Ins. Co.*, 867 F. Supp. 2d 1143, 1185-87 (D.N.M. 2012) (plaintiffs failed to establish the

---

[9] Consistent with Congress's intention that the local controversy exception be "narrow," *see Woods*, 771 F.3d at 1265-66, the Tenth Circuit has only endorsed applying the exception where "every potential plaintiff is entitled to recover from" the local defendant. *Lax v. APP of N.M. ED, PLLC*, 2022 U.S. App. LEXIS 19279, at *25 (10th Cir. July 13, 2022); *accord Coffey v. Freeport McMoran Copper & Gold*, 581 F.3d 1240, 1244-45 (10th Cir. 2009).

local controversy exception because, among other reasons, "there appears to be comparatively less relief sought against" the local defendant).

Plaintiffs have not and cannot meet this standard. In both the OC and FAC, Plaintiffs seek an "[a]ward [of] damages for the actual cost paid by Plaintiffs and the class for medical cannabis from January 1, 2022, to the time of the award." OC, Prayer for Relief, at p. 31, ¶ (g); FAC, Prayer for Relief, at p. 28, ¶ (f). Plaintiffs also ask for declarations that are designed to compel Defendants to fully cover the cost of medical cannabis without cost-sharing. *See* OC, Prayer for Relief, at p. 31, ¶ (f); FAC, Prayer for Relief, at p. 28, ¶¶ (b) – (e). There is no one Defendant from whom every member of the class will have received health care coverage and will be seeking such damages and declaratory relief. Rather, as is the case with the individual Plaintiffs, each class member will be seeking relief from a different health plan. *See, e.g.*, OC, ¶¶ 15, 20, 38, 69; *accord* FAC, ¶¶ 15, 18, 32, 48 (Plaintiffs Candelaria and McDougal are enrolled in BCBSNM plans and seeking relief against BCBSNM, not PHP or Western Sky). Importantly, BCBSNM is a citizen of Illinois and is ***not*** a local defendant. Notice, ¶ 20 (citations omitted).

Plaintiffs argue that they "seek 'significant relief' from a significant local Defendant: [PHP]." Motion, p. 10. Thus, Plaintiffs must prove that the relief they are seeking from PHP "'is a significant portion of the entire relief sought by the class.'" *Stanforth*, 2010 U.S. Dist. LEXIS 146966, at *11 (citation omitted). To meet this burden, Plaintiffs must show that (1) the number of "members of the class [ ] harmed by" PHP is significant relative to the number of members that were harmed by the other Defendants, and (2) the damages sought from PHP are significant relative to the damages sought from the other Defendants. *See id.*; *Cox v. Allstate Ins. Co.*, No. CIV-07-1449, 2008 U.S. Dist. LEXIS 41272, at *11-13 (W.D. Okla. May 21, 2008) (comparing the damages sought between different defendants). Plaintiffs do not establish either point.

- 13 -

The Original Complaint contains no allegations showing that a significant portion of the class is seeking relief from PHP. In an effort to remand the case, the FAC adds new allegations that in 2021, 43% of New Mexico's total population was a Medicaid participant, and PHP had the most Medicaid participants relative to BCBSNM (who had the second most) and Western Sky (who had the third most). *See* FAC, ¶¶ 98-99. Yet Plaintiffs' allegations do not address how many members **of the class** – which is confined to those who "are currently Qualified Patients as defined by LECUA" and who "purchased medical cannabis to provide relief for their mental or behavioral health conditions" – are seeking relief from PHP or any other Defendant; they simply refer to the **total Medicaid enrollment in New Mexico** as of 2021. *Compare* Motion, p. 10; FAC, ¶¶ 98-99 *with* OC, ¶ 156; FAC, ¶ 120. Plaintiffs' allegations do not in any way prove that the relief they are seeking from PHP "'is a significant portion of the entire relief sought **by the class**.'" *Stanforth*, 2010 U.S. Dist. LEXIS 146966, at *11 (emphasis added).

Moreover, Plaintiffs entirely ignore a significant portion of the class: those with private market health plans. OC, pp. 1-2; FAC, p. 1 ("[E]ffective January 1, 2022, the cost of medical cannabis must be fully covered by insurance—for both Medicaid participants and **those who obtained insurance in the private market**.") (emphasis added); *see Woods*, 771 F.3d at 1266 ("'The [local] defendant must be a target from whom significant relief **is sought by the class (as opposed to just a subset of the class membership)**' . . .") (citation omitted) (emphasis added and removed); *see also* 28 U.S.C. § 1332(d)(1)(A) ("[T]he term 'class' means all of the class members in a class action"). Notably, in 2022, the time frame in which Plaintiffs are seeking relief, BCBSNM – a diverse defendant – had by far had the largest number of members with private market health plans relative to the other health insurers and health plans in New Mexico. **Ex. A**, ¶ 11. The company with the second most private market health plan members has less than 15%

of such members in New Mexico compared to BCBSNM's 37% and is not even a defendant in this case. *See id.* BCBSNM also has the largest number of total members and the most combined private and Medicaid market members in New Mexico. *See id.*, ¶¶ 10, 13. Plaintiffs' sole focus on a Medicaid market that is only applicable to a subset of the class cannot prove that "'the class (as opposed to just a subset of the class membership)'" is seeking significant relief from PHP. *Woods*, 771 F.3d at 1266; *see Barreras v. Travelers Home & Marine Ins. Co.*, No. 12-CV-0354, 2012 U.S. Dist. LEXIS 200819, at *17-18 (D.N.M. Oct. 17, 2012) (denying remand "when untold members of the putative class will have no relationship with and no claims against" the local defendant).

Further, Plaintiffs' Motion entirely ignores the damages sought from Defendants. Of the four remaining individual Plaintiffs, two are BCBSNM members. *See* FAC, ¶¶ 15-18, 25-49. BCBSNM is the only Defendant with a Plaintiff member, Jacob Candelaria, who obtained his health plan on the private market. *See id.* Plaintiffs specifically allege that Candelaria spends an astounding $500-$1,000 on average for medical cannabis every month, while the FAC is silent as to how much the other Plaintiffs spend on medical cannabis. *See* OC, ¶ 38, FAC, ¶ 32. These allegations demonstrate that "the most significant relief sought by Plaintiffs is against [the diverse defendant], not against the named non-diverse defendants," precluding remand. *Stanforth*, 2010 U.S. Dist. LEXIS at *12; *see Valdez*, 867 F. Supp. 2d at 1185-87 (denying remand because, among other reasons, "there appears to be comparatively less relief sought against" the local defendant).

Because Plaintiffs fail to prove that the class is seeking "significant relief" from PHP or any other local defendant, the Motion should be denied.

### ii. Plaintiffs Fail to Prove That There Is a Local Defendant Whose Alleged Conduct Forms a Significant Basis for the Class's Claims.

Plaintiffs further fail to demonstrate that any local defendant's conduct forms a significant basis for the class's claims. *See* Motion, p. 9. To evaluate the "significant basis" element, courts

compare the "conduct [of the local defendant] with that of the other named defendants." *Woods*, 771 F.3d at 1266 (citation omitted). Plaintiffs must establish that the local defendant's conduct affects "all or a significant portion of the putative class." *Barreras*, 2012 U.S. Dist. LEXIS 200819, at *15-16 (denying remand where "the complaint does not establish that [the local defendant's] conduct affected all or a significant portion of the putative class"). "Where the complaint contains no information about the local defendant's conduct relative to the other defendants' conduct, the plaintiff fails to meet this requirement." *Fulgenzi v. Smith*, No. 1:12-cv-1261, 2014 U.S. Dist. LEXIS 187075, at *14 (D.N.M. Nov. 13, 2014) (citation omitted); *see also Kitchin v. Bridgeton Landfill, LLC*, 3 F.4th 1089, 1094-95 (8th Cir. 2021) (allegations indicating "'Defendants all engaged in the same conduct'" fail to satisfy the significant basis element).

Plaintiffs' Original Complaint and FAC do not contain any allegations that discuss the conduct of any individual Defendant. Contrary to the unsupported assertions in Plaintiffs' Motion, there is no allegation that any individual Plaintiff or other class member sought coverage for, or any Defendant refused to cover, a single claim for medical cannabis. *Compare* Motion, p. 9 (incorrectly arguing that Defendants "are responsible for their refusal to provide insurance coverage for medical cannabis as a behavioral health service") *with, e.g.*, OC, ¶ 6 ("But qualified medical cannabis users for behavioral health conditions pay – and have paid since January 1, 2022 – the entirety of the cost of their medical cannabis."); *accord* FAC, ¶ 6. Because "the complaint contains no information about the local defendant's conduct relative to the other defendants' conduct, the plaintiff[s] fails to meet this requirement." *Fulgenzi*, 2014 U.S. Dist. LEXIS 187075, at *14 (citation omitted); *see also Kitchin*, 3 F.4th at 1094-95; *compare with Lax*, 2022 U.S. App. LEXIS 19279, at *25 (finding the "significant basis" element was met because, among other

reasons, "[t]he complaint thoroughly describes [the local defendant's] role in the alleged scheme, which includes alleged misrepresentations and material omissions made by [the local defendant]").

Plaintiffs also fail to show that that any local defendant's conduct affects "all or a significant portion of the putative class." *See Barreras*, 2012 U.S. Dist. LEXIS 200819, at *15-16. Plaintiffs do not in any way quantify how many members *of the class* have claims and are seeking relief against each Defendant. *See supra*, pp. 13-15. At most, Plaintiffs generally discuss the total Medicaid population in New Mexico in 2021, which is a much broader and distinct population from the class of LECUA "qualified patients" and fails to consider class members who have private market health plans. *See id.* Because Plaintiffs also fail to prove that there are "as least a significant number or percentage of putative class members with a claim against" a local defendant, they fail to prove that a local defendant's conduct forms a significant basis of the class's claims. *Barreras*, 2012 U.S. Dist. LEXIS 200819, at *16 (citing *Evans*, 449 F.3d at 1167, among other things).[10]

## II.   THE COURT HAS FEDERAL QUESTION JURISDICTION UNDER 28 U.S.C. § 1331, AS PLAINTIFFS' CLAIMS NECESSARILY RAISE SUBSTANTIAL ISSUES OF FEDERAL LAW.

This Court also has original jurisdiction of this action under 28 U.S.C. § 1331 because Plaintiffs' claims necessarily raise substantial and disputed issues of federal law. Despite couching their claims under state law, the gravamen of Plaintiffs' OC and FAC is to compel Defendants to pay for medical cannabis as a covered benefit, even though cannabis is illegal under federal law. Importantly, all three Defendants contract with HSD to deliver Medicaid benefits in New Mexico, using primarily federal funds to cover health care services pursuant to federal law. *See supra*, p. 2.

---

[10] Plaintiffs argue that they meet the significant basis element because this case is different from *Woods*, where the Tenth Circuit found that the local controversy exception did not apply because the local defendant was merely a customer service agent for the non-diverse insurance company defendant. *See* Motion, p. 9 (citing 771 F.3d at 1267). That Plaintiffs' case is different from one that also failed to meet the local controversy exception in no way proves that Plaintiffs' case actually *meets* the local controversy exception. It is also inconsistent with the Tenth Circuit's holding that "Congress intended the local controversy exception to be 'narrow,' with all doubts resolved 'in favor of exercising jurisdiction over the case.'" *Woods*, 771 F.3d at 1265-66 (quoting S. Rep. No. 109-14 at 39, 42).

A case may "arise under" federal law if "the plaintiff's right to relief necessarily depends on resolution of a substantial question of federal law." *Gilmore v. Weatherford*, 694 F.3d 1160, 1170 (10th Cir. 2012). "Thus, even though a plaintiff asserts only claims under state law, federal-question jurisdiction may be appropriate if the state-law claims implicate significant federal issues." *Nicodemus v. Union Pac. Corp.*, 440 F.3d 1227, 1232 (10th Cir. 2006). This substantial federal question doctrine captures the "commonsense notion that a federal court ought to be able to hear claims recognized under state law that nonetheless turn on substantial questions of federal law, and thus justify resort to the experience, solicitude, and hope of uniformity that a federal forum offers on federal issues." *Grable & Sons Metal Prods. v. Darue Eng'g & Mfg.*, 545 U.S. 308, 312 (2005). For a state claim to give rise to federal question jurisdiction, the federal issue must be "(1) necessarily raised, (2) actually disputed, (3) substantial, and (4) capable of resolution in federal court without disrupting the federal-state balance approved by Congress." *Safe Streets Alliance v. Hickenlooper*, 859 F.3d 865 (10th Cir. 2017). Here, these elements are readily met.[11]

### A. **Plaintiffs' Complaint Necessarily Raises Federal Issues.**

Plaintiffs' claims all turn on their allegation that Defendants acted wrongfully by not paying for cannabis as a covered benefit under the Contracts.[12] As a necessary element to succeed on their claims, "Plaintiffs will be required to prove that [ ] Defendants were contractually obligated to" fully cover and pay for the cost of cannabis under the Contracts. *Armijo v. Wal-Mart Stores, Inc.*, 142 N.M. 557, 568 (Ct. App. 2007).

---

[11] Plaintiffs contest only elements 1, 3, and 4; they do not contest element 2, that federal issues are "actually disputed."

[12] *See* FAC, Count 1, at ¶ 126 (alleging Defendants violated state statute by not covering cannabis in the Contracts); Count 2, at ¶ 134 (alleging Defendants breached the Contracts by not covering cannabis); Count 3, at ¶ 139 (alleging Defendants breached covenant of good faith and fair dealing in the Contracts by not covering costs of cannabis); Count 4, at ¶ 144 (alleging unfair trade practice in failing to pay for cannabis as a covered service); Count 5 at ¶ 151 (alleging violation of insurance code by failure to pay for cannabis as a covered service); Count 6, at ¶¶ 157-158 (alleging unjust enrichment based upon Defendants' failure to pay for cannabis under the Contracts); Count 7, at ¶ 166 (seeking declaratory judgment that medical cannabis is covered by the Contracts).

Plaintiffs do not and cannot argue that the terms of the Contracts expressly require that Defendants cover the cost of cannabis. To the contrary, consistent with federal law, the Contracts expressly only cover medications that are (1) approved by the U.S. Food and Drug Administration ("FDA"), and (2) listed on the plan's approved Drug List; cannabis is neither.[13] Instead, Plaintiffs argue that "all applicable federal and state laws and regulations are incorporated into such [C]ontracts," and the Court should read into the Contracts a requirement to cover medical cannabis because, they claim, state law requires it. *See* OC, ¶¶ 100-103, 164-165; FAC, ¶¶ 78-81, 133-34. More pointedly, Plaintiffs ask the Court to "harmonize these state laws and regulations, among themselves, to find and conclude that health insurance plans in New Mexico that cover behavioral health services must cover medical cannabis as a behavioral health service, thus creating liability for the lack of coverage," without considering federal law. Motion, p. 12. But the Court cannot "harmonize" the laws incorporated into the Contracts without addressing federal law that is also incorporated into the Contracts – and, in particular, the federal CSA that makes cannabis an illegal controlled substance with no accepted medical use, and the federal statutes and regulations governing the terms and conditions upon which drugs can be covered by Medicaid plans.

Regardless of how Plaintiffs couch their claims, the OC and FAC raise a federal question because "[Plaintiffs'] right to relief necessarily depends on resolution of a substantial question of federal law." *Ferrera v. Bd. of the Gadsden Indep. Sch. Dist.*, No. 2:11-00053, 2011 U.S. Dist. LEXIS 169663, at *8 (D.N.M. Oct. 18, 2011), *remand denied*, 2012 U.S. Dist. LEXIS 203512 (D.N.M. Jan. 27, 2012) (citation and quotation omitted). In *Ferrara*, the plaintiff brought a "single

---

[13]   42   U.S.C.   §   1396r-8(k)(2)(A);   *see*   Western   Sky   Member   Contract,   available   at   https://www.westernskycommunitycare.com/content/dam/centene/newmexico/Medicaid/PDFs/WSCC_20-135_Member%20Handbook_2022_HSDEDITS_UPDATE_june2022.pdf, at pp. 40, 43; BCBSNM Member Contract, available at https://www.bcbsnm.com/community-centennial/pdf/cc-member-handbook-nm.pdf, at pp. 50-52; PHP Member Contract, available at https://onbaseext.phs.org/PEL/DisplayDocument?ContentID=OB_000000003194, at pp. 78-83, 186-87.

cause of action" for "breach of contract" against her employer alleging breach of her employment contract for failing to accommodate her disability. *Id.* at *5-6, *9-10. The Court held that it had federal question jurisdiction for removal, because the "standard by which to measure Defendants' conduct" under the contract was that "set forth by" the federal Americans with Disabilities Act and Family Medical Leave Act. *Id.* at *14-15. Similarly, here, the "standard by which to measure" the Contracts' coverage requirements includes that set forth by the federal laws incorporated into the Contracts.

In *PharmaCann Penn, LLC v. BV Dev. Superstition RR, LLC*, the plaintiff sought a declaration that it could open a medical cannabis dispensary on defendant's property, where the deed prohibited using the property for any "unlawful" purpose. 297 F. Supp. 3d 537 (E.D. Pa. 2018). After removal, the court denied the plaintiff's motion to remand, holding:

> The federal question of the dispensary's lawfulness is necessarily raised because a court must consider and ultimately apply federal law in order for PharmaCann to get the relief it seeks. . . . [T]he resolution of the federal question – namely, whether a medical marijuana dispensary is 'unlawful' under the Controlled Substances Act – is necessary to decide whether the dispensary is an 'unlawful' use under the deed.

*Id.* at 541. *See also Bowers v. J & M Disc. Towing, LLC.*, 472 F. Supp. 2d 1248, 1268 (D.N.M. 2006) (denying remand where the plaintiff asserted state law claims for conversion of automobile, because "the central issue in the case" was whether an IRS lien permitted the seizure, which "requires construction of a federal tax provision").

To determine whether Defendants were contractually obligated to fully cover and pay for cannabis under the Contracts due to their incorporation of state ***and*** federal law, the Court must harmonize the state laws that Plaintiffs (incorrectly) argue require coverage with the federal laws that criminalize or otherwise preclude coverage for cannabis. *P.S.C. v. Diamond D Constr. Co.*, 131 N.M. 100, 108 (2001) ("[W]e view the contract as a harmonious whole, give meaning to every

provision . . . We will not interpret a contract such that our interpretation of a particular clause or provision will annul other parts of the document . . .") (citations omitted). Federal law is as much a part of the Contracts as state law. *See* OC, ¶¶ 100-103, 164-165; FAC, ¶¶ 78-81, 133-34. The federal issues are not an "ordinary federal preemption defense," as Plaintiffs suggest. Motion, p. 13. Rather, to establish liability, Plaintiffs must show that Defendants are obligated to cover cannabis due to Contracts that expressly incorporate federal law. Thus, to succeed on their claims, Plaintiffs and this Court must resolve at least the following substantial federal issues:

*First, **Plaintiffs' claims require the Court to resolve whether cannabis is a covered service under the Contracts, even though it is illegal under the federal CSA.** See* 21 U.S.C. §§ 812, 829. Notably, in a similar case, this Court rejected the plaintiff's claim that her private health care insurer must cover the cost of medical cannabis based upon LECUA, because the "CSA designates marijuana as contraband for *any* purpose." *Hemphill v. Liberty Mut. Ins. Co*., No. CV 10-861, 2013 U.S. Dist. LEXIS 200109, at *5 (D.N.M. Mar. 28, 2013) (quoting *Gonzales v. Raich*, 545 U.S. 1, 27 (2005)). The Court held:

> This federal court, even sitting in diversity, cannot force Defendant to recompense Plaintiff for medical expenses that are contrary to federal law and federal policy, even if the contract generally provides for the payment of future medical expenses. Such payment violates federal law, as clearly expressed by Congress, and New Mexico state law prevents the enforcement of an illegal contract. New Mexico citizens must follow the laws of both the state and federal governments.

*Id.* at *6. Plaintiffs cannot prove that by incorporating state and federal laws, the Contracts require coverage of cannabis without necessarily reconciling that the federal CSA outlaws it.

*Second, **Plaintiffs ask the Court to declare that cannabis is "Medically Necessary," which contravenes the federal government's determination that cannabis is not medically appropriate for any purpose.** Plaintiffs must acknowledge that the Contracts only cover Medically

Necessary items and services,[14] so that to compel Defendants to cover the cost of cannabis under the Contracts, they must prove that "medical cannabis as a behavioral/mental health service is Medically Necessary." *See* OC, Prayer for Relief at p. 31, ¶ (d) (seeking such a declaration); *accord* FAC, Prayer for Relief, at p. 28, ¶ (d). But "by characterizing marijuana as a Schedule I drug [in the federal CSA], Congress expressly found that the drug has no acceptable medical uses." *Raich*, 545 U.S. at 27; *U.S. v. Oakland Cannabis Buyers' Co-op.*, 532 U.S. 483, 491 (2001) (holding that the CSA "reflects a determination that marijuana has no medical benefits worthy of an exception"); *see also Albuquerque Pub. Sch. v. Sledge*, No. CV 18-1029, 2019 U.S. Dist. LEXIS 133504, at *34 (D.N.M. Aug. 8, 2019) (this Court could not interpret a statute to find administration of cannabis is "a medically necessary related service, [as] such interpretation would conflict with Congress' legislative determination in the CSA that cannabis has no accepted medical use at all."). Thus, to prove that cannabis is Medically Necessary under the Contracts, which incorporate both state and federal law, Plaintiffs (and the Court) must reconcile that federal law dictates that cannabis "has no acceptable medical uses." *See id.*

Further, the Medicaid statute provides for sanctions for any person or entity who knowingly presents claims "that a person knows or should know are not medically necessary." 42 U.S.C. § 1320a-7a(a)(1)(E). The Court thus must consider whether it can order Defendants to accept claims for a substance the federal government has found is not "medically necessary."

***Third*, the Court must address that the Medicaid statute contains specific requirements for coverage of medications and prescription drugs, including that they must be FDA approved.** Plaintiffs' claims rest on their assertion that the New Mexico statute and courts have labeled

---

[14] *See* Western Sky Member Contract, at p. 58; BCBS Member Contract, at pp. 26-27; Presbyterian Member Contract, at pp. 4-5, 77, 81-82; *supra* n.13; *e.g.*, BCBSNM MMCSA, available at https://www.hsd.state.nm.us/wp-content/uploads/CC-2_0-BLUE-CROSS-BLUE-SHIELD-NM-SIGNED-CONTRACT.pdf,, at p. 9 ("Abuse" includes practices that cause "reimbursement for services that are not Medically Necessary . . .").

cannabis "the 'functional equivalent' of a prescription" and "the equivalent of the use of any other medication." OC, ¶¶ 80-84; FAC, ¶¶ 60-63 (citations omitted). If, as Plaintiffs argue, medical cannabis is a "medication" and the "equivalent of a prescription," then it must be subject to the requirements for coverage of prescription medication under the Contracts and federal law.

In particular, the Medicaid statute provides that to be a "covered outpatient drug," the drug must be "approved for safety and effectiveness as a prescription drug under . . . the Federal Food, Drug, and Cosmetic Act" ("FDCA"). 42 U.S.C. § 1396r-8(k)(2)(A). Consistent with this requirement, Defendants' Contracts specifically provide that they cover only FDA approved drugs. *See supra,* p. 19, n.13. Additionally, for an outpatient drug to be covered by Medicaid, the drug's manufacturer must enter into a rebate agreement with the federal or state government. *See* 42 U.S.C. § 1396r–8(a). Medical cannabis does not have a single "manufacturer," and the government has not entered any rebate agreements with respect to the cost of cannabis. This Court cannot consider Plaintiffs' argument that a <u>state</u> law requires the Court to require coverage of a drug that is not FDA approved and lacks any rebate agreements under the Contracts without acknowledging that <u>federal</u> law precludes Medicaid plans from covering these drugs.

The Medicaid statute also contains specific requirements for drugs that are "controlled substances" under the CSA, providing that the State must establish a "qualified prescription drug monitoring program." 42 U.S.C. § 1396w-3a(a)(1), (b).[15] In addition, the statute requires each state to "provide for a drug use review program . . . for covered outpatient drugs in order to assure that prescriptions (i) are appropriate, (ii) are medically necessary . . ." 42 U.S.C. § 1396r-8(g)(1)(A). Accordingly, the Court must consider whether cannabis can be covered by Medicaid, and on what conditions, before it can hold that the Contracts cover the cost of cannabis.

---

[15] The statute does not contemplate any coverage for schedule I substances like cannabis. 42 U.S.C. § 1396w-3a(h)(1) (defining "controlled substance" as "a drug that is included in schedule II" or "schedule III or IV" at the state's option).

Each of these federal issues must be resolved for Plaintiffs to establish any right to relief. Federal laws do not merely "lurk background," Motion, p. 12; they are part of the precise provision in the Contracts on which Plaintiffs' core claim for coverage relies. Thus, this case "arises under federal law" because "the plaintiff's right to relief necessarily depends on resolution of a substantial question of federal law." *Nicodemus*, 440 F.3d at 1232.

**B.   The Federal Issues Are Substantial.**

A "'substantial federal issue' is one that 'indicat[es] a serious federal interest in claiming the advantages thought to be inherent in a federal forum." *Gilmore*, 694 F.3d at 1174 (quoting *Grable*, 544 U.S. at 313). "Courts have also looked to whether the federal law issue is central to the case in conducting the substantiality analysis." *Id.* at 1175. In addition, the substantial federal issues should generally involve "nearly pure issue[s] of law" that would govern "numerous" cases, as opposed to issues that are "fact-bound and situation-specific." *Id.* at 1174 (citing *Empire Healthchoice Assurance, Inc. v. McVeigh*, 547 U.S. 677, 700-01 (2006)).[16] "A case should be dismissed for want of a substantial federal question only when the federal issue is (1) wholly insubstantial or obviously frivolous, (2) foreclosed by prior cases which have settled the issue one way or another, or (3) so patently without merit as to require no meaningful consideration." *Nicodemus*, 440 F.3d at 1236 (citation omitted).

The federal government clearly has a "serious federal interest" in both the regulation of controlled substances and the Medicaid program. Regarding the former, federal law outlaws cannabis and requires practitioners prescribing lawful controlled substances to be registered with

---

[16] Plaintiffs' discussion of *Empire* does not compel any different result. ECF No. 24 at 14. In *Empire,* the Supreme Court distinguished *Grable*, holding that the federal issues in *Grable* involved a "nearly 'pure issue of law'" that was "both dispositive of the case and would be controlling in numerous other cases," whereas the reimbursement claim in *Empire* "is fact-bound and situation-specific." 547 U.S. at 700. Here, as in *Grable* and *Gilmore*, the federal issues are legal questions that – under Plaintiffs' theory – would apply to insureds throughout New Mexico.

the Drug Enforcement Administration. 21 C.F.R. § 1301.11. Regarding the latter, states must comply with strict federal requirements for administering Medicaid programs under federal statutes that give the Secretary of CMS extensive authority over Medicaid plans.[17] 42 U.S.C. § 1396 *et seq*. For a prescription drug to be covered by Medicaid, the manufacturer must enter into a rebate agreement with the Secretary, unless the Secretary authorizes a state to enter an agreement directly. 42 U.S.C. § 1396r–8(a). Plaintiffs' suggestion that the federal government lacks a substantial interest in the implementation of the Medicaid program or the regulation of controlled substances like cannabis is simply not credible in light of this regulatory backdrop.

Plaintiffs also completely ignore that the federal government provides substantial federal funds to New Mexico to administer its Medicaid program. "The federal government pays approximately 74 percent of traditional Medicaid costs in New Mexico." *See supra*, p. 2, n.2.[18] It is impossible to square Plaintiffs' assertion that their lawsuit "exclusively" implicates New Mexico interests when resolving the case in Plaintiffs' favor may require the federal government to subsidize nearly 75% of the costs for the distribution and possession of a Schedule I controlled substance under the Medicaid program. *See Nicodemus*, 440 F.3d at 1236 (finding substantial federal interest when the federal government had a direct financial interest in the lands at issue).

Just as substantial is Plaintiffs' requested remedy, which seeks to compel coverage and payment from federally-funded contractors for an illegal controlled substance. As this Court has recognized, "The CSA does not contemplate that state legislatures' determinations about the use of a controlled substance can be used to bypass the CSA's rescheduling process." *Krumm v.*

---

[17] While Plaintiffs suggest that "federal agency action" must be involved for an issue to be substantial, Motion, p. 14, none of the cases cited require that a federal agency action be directly at issue.

[18] More specifically, New Mexico's 2021 investment in its Behavioral Health Services Division – ostensibly through which Plaintiffs seek to enforce Defendants' obligation to cover medical cannabis – "is supported by $48.4 million from the general fund and $29.86 million in federal funds." *See HSD State Budget Request is $1.413 Billion for Fiscal Year 2023*, HSD, available at https://www.hsd.state.nm.us/2021/09/02/30833/.

*Holder, No.* 13CV0562, 2014 U.S. Dist. LEXIS 178064, at *10 (D.N.M. Mar. 19, 2014), *aff'd*, 594 F. App'x 497 (10th Cir. 2014). *See also Wright's Case*, 486 Mass. 98, 156 N.E.3d 161, 166 (2020) (holding that a state may "authorize those who want to use medical marijuana . . . to do so and assume the potential risk of Federal prosecution," but it is "quite another" thing for the state "to require unwilling third parties to pay for such use and risk such prosecution.").

As is evident by Plaintiffs' request that the Court resolve the commonly disputed issues for over 10,000 individuals on a class wide basis, *see* OC, ¶¶ 157-162; FAC, ¶ 111-118, Plaintiffs believe that this case involves "pure issues of law" that would govern "numerous cases" and not issues that are "fact-bound and situation-specific." *Gilmore*, 694 F.3d at 1174. Whether Plaintiffs can compel Defendants to cover a drug that is illegal under federal law by virtue of a contractual provision that incorporates state and federal law is "a legal question that does not appear to depend on the specific facts of a case" and "would apply to a fair number of disputes." *Id.* For all of these reasons, the federal issues necessarily raised by Plaintiffs' OC and FAC are substantial.[19]

### C. Federal Jurisdiction Furthers the Federal-State Balance Approved by Congress.

This case meets the fourth *Grable* element, as federal jurisdiction is "consistent with congressional judgment about the sound division of labor between state and federal courts governing the application of § 1331." *Grable*, 545 U.S. at 313-14. Litigating this dispute in this Court would neither invite a host of federal lawsuits nor disrupt federal dockets. *See id.* at 314.

Plaintiffs' argument that the exercise of federal jurisdiction would disrupt the federal-state balance relies largely on a rider in the Congressional appropriations bills. Motion, pp. 17-18. Tenth

---

[19] Plaintiffs cite to Judge Thomas's nonbinding statements in a denial of certiorari in *Standing Akimbo, LLC v. U.S.*, 141 S.Ct. 2236 (2021), to argue that *Raich* no longer reflects "federal priorities." Motion, p. 15. But "the CSA continues to apply in full force even in states that have decriminalized marijuana . . . [The CSA] remains federal law today . . . and *Raich* remains binding precedent on the Court. *Sensoria, LLC v. Kaweske*, 581 F. Supp. 3d 1243, 1258 (D. Colo. 2022) (discussing Judge Thomas's concurring statement in *Standing* Akimbo and holding that "[a] court may not use its equitable power to facilitate conduct that implicates the CSA even if that same conduct is lawful under state law.").

Circuit courts have squarely rejected similar arguments premised on non-binding indicia of federal cannabis policy changes. *See, e.g. Sensoria,* 581 F. Supp. 3d at 1258 (recognizing "[n]one of the federal decisions cited herein has treated the CSA as dead letter law."); *supra,* n.19. Moreover, whether the state or federal government "may exempt medical marijuana users from the reach of the state criminal law does not mean that the state can affirmatively require [defendants] to accommodate what federal law specifically prohibits." *Sledge*, 2019 U.S. Dist. LEXIS 133504, at *32 (citation and quotations omitted). Plaintiffs cannot exclusively rely on their (misguided) interpretation of state law and entirely ignore federal law and policy on cannabis to the contrary. *Id.*; *see, e.g.*, *New Mexico Top Organics-Ultra Health, Inc. v. Kennedy*, No. 1:17-CV-00599-JAP-LF, 2019 U.S. Dist. LEXIS 7736, at *33-37 (D.N.M. Jan. 16, 2019) (rejecting Ultra's argument that state actors "are required to adhere to state policy regarding medical cannabis rather than following [what Ultra called] the 'equivocal federal policy'" outlawing cannabis).

This Court, and the federal government more broadly, thus has a particularly vested interest in ensuring that Plaintiffs' claims are entertained in a federal forum; any favorable state court result would surely lead to lawsuits under similar state medical cannabis regimes to compel coverage under those state regulations, further complicating Defendants' conflicting obligations under state law and undermining the uniformity of treatment of insureds under the Medicaid Contracts.

III. **THIS COURT SHOULD EXERCISE SUPPLEMENTAL JURISDICTION OVER ALL STATE LAW CLAIMS UNDER 28 U.S.C. § 1367.**[20]

To the extent this Court finds that some of Plaintiffs' claims are or were subject to federal jurisdiction but that others are not, the Court should exercise supplemental jurisdiction over all of Plaintiffs' state law claims because "they form part of the same case or controversy." 28 U.S.C. §

---

[20] This argument applies only to the two bases of federal subject matter jurisdiction: substantial federal question and ERISA. If the Court determines that it has jurisdiction under CAFA, then that jurisdiction would necessarily pertain to the entire lawsuit, and the Court need not reach the issue of supplemental jurisdiction.

1367(a); *see* Notice, ¶¶ 42-46. "[I]f, considered without regard to their federal or state character, a plaintiff's claims are such that he would ordinarily be expected to try them all in one judicial proceeding, then, assuming substantiality of the federal issues, there is power in federal courts to hear the whole." *United Mine Workers v. Gibbs*, 383 U.S. 715, 725 (1966); *see City of Chicago v. Int'l Coll. of Surgeons*, 522 U.S. 156, 164–65 (1997) ("[F]ederal courts' original jurisdiction over federal questions carries with it jurisdiction over state law claims that 'derive from a common nucleus of operative fact' . . .") (quoting *Gibbs*, 383 U.S. at 725).

As noted, all of Plaintiffs' claims necessarily raise a federal question, as they each require the Court to determine whether Defendants must fully cover the cost of cannabis due to the Contracts' incorporation of state and federal law. *See supra*, pp. 18-26. However, if the Court finds federal question jurisdiction over some (but not all) of Plaintiffs' claims due to a substantial federal question, then the Court should exercise jurisdiction over all of the claims, as the facts and legal issues of each of the claims are inextricably related such as to form part of the "same case or controversy" under § 1367(a). *See generally* OC; FAC. Plaintiffs do not dispute that this Court has, and should exercise, supplemental jurisdiction over any state law claims that do not raise substantial federal questions under 28 U.S.C. § 1331. *See generally* Motion.

Second, and independent of this substantial federal question jurisdiction, the Court also has original jurisdiction under ERISA based on the Original Complaint due to complete ERISA preemption. *See* Notice, ¶¶ 7-15 (citing supporting cases). The Court should reject Plaintiffs' attempt to avoid federal jurisdiction by amending away their ERISA claims and exercise supplemental jurisdiction over the remaining claims. While § 1367 gives the Court discretion to decline supplemental jurisdiction in certain circumstances, the significant federal issues in this case warrant the Court's exercise of jurisdiction over this entire action.

"'Once subject matter jurisdiction exists, a district court has constitutional authority to hear related state claims even if the federal claim is later dismissed by the district court' . . . This principle holds true in cases removed to federal court as well." *New Mexico v. Gen. Elec. Co.*, 335 F. Supp. 2d 1157, 1175 (D.N.M. 2003) (quoting *United Intern. Holdings, Inc. v. Wharf (Holdings) Ltd.,* 210 F.3d 1207, 1222 (10th Cir. 2000)). Thus, even "when the federal claims or federal defendants are dropped from the case, the district court still had the *power* under 28 U.S.C. § 1367 to exercise supplemental jurisdiction over the other claims." *Id.* at 1175-76 (citation and quotation omitted). "[W]hen deciding whether to exercise supplemental jurisdiction, a federal court should consider and weigh in each case, and at every stage of the litigation, the values of judicial economy, convenience, fairness, and comity." *Id.* at 1176 (citation omitted); *see U.S. v. Bd. of Cnty. Comm'rs of the Cnty. of Dona Ana, N.M.*, 730 F. Supp. 2d 1327, 1335 (D.N.M. 2010) ("A district court . . . may exercise its supplemental jurisdiction when doing so would further the interest of judicial economy, convenience, and fairness . . .").

In *General Electric Co.*, this Court exercised its discretion to retain supplemental jurisdiction when all of plaintiffs' claims cast under federal law had been dismissed, because the remaining claims – though couched only in state law – pertained to an environmental remediation under the federal Comprehensive Environmental Response, Compensation and Liability Act ("CERCLA"). The Court reasoned, "even though only state law claims remain pending, these claims do not present only questions of state law because of the fact that the remaining claims inescapably must be defined in terms of the CERCLA remedy and the scope and extent of the ongoing CERCLA remediation." 335 F. Supp. 2d at 1177. Thus, this Court held that supplemental jurisdiction was appropriate even though the CERCLA claims had been dismissed, because "plaintiffs' state law claims are inextricably tied to CERCLA." *Id.* at 1178.

So it is here. Even if the Court determines that Plaintiffs' claims do not raise substantial federal issues that give rise to original jurisdiction under 28 U.S.C. § 1331, Plaintiffs' claims, though stated in terms of state law, are "inextricably tied" to the federal CSA and Medicaid statute. *General Electric Co.*, 335 F. Supp. 2d at 1177; *see supra*, pp. 18-26; *see also generally* Motion. Moreover, "the values of judicial economy, convenience, fairness, and comity" support maintaining jurisdiction over this case." *General Electric Co.*, 335 F. Supp. 2d at 1177. Plaintiffs do not dispute that this Court had jurisdiction at the time of removal, *see* Motion, p. 1, and their post-removal pleading amendment appears solely designed to remand this case back to state court. *See supra*, p. 6; *see generally* Motion. "[A]llowing plaintiffs to amend away [federal] jurisdiction after removal would present a significant risk of forum manipulation that counsel against allowing a plaintiff's post-removal amendments to affect jurisdiction." *In re Burlington N. Santa Fe Ry. Co.*, 606 F.3d at 381 (discussing CAFA).

Because all claims form "part of the same case or controversy" as those giving rise to federal jurisdiction, this Court should exercise its supplemental jurisdiction to "further the interest of judicial economy, convenience, and fairness[.]"*Bd. of Cnty. Comm'rs*, 730 F. Supp. 2d at 1335.

## <u>CONCLUSION</u>

For the foregoing reasons, the Court should deny the Motion and award such other relief as the Court deems appropriate.

Dated:  September 16, 2022                    Respectfully submitted,

|  | |
|---|---|
|  | */s/ Benjamin E. Thomas* ＿<br>Benjamin E. Thomas<br>Alexander G. Elborn<br>SUTIN, THAYER & BROWNE, P.C.<br>P.O. Box 1945<br>Albuquerque, New Mexico 87103-1945<br>Phone: (505) 883-2500<br>bet@sutinfirm.com<br>age@sutinfirm.com<br><br>Martin J. Bishop (*pro hac vice*)<br>Jason T. Mayer (*pro hac vice*)<br>REED SMITH LLP<br>10 South Wacker Drive<br>40th Floor<br>Chicago, Illinois 60606-7507<br>Phone: (312) 207-1000<br>mbishop@reedsmith.com<br>jmayer@reedsmith.com<br><br>*Attorneys for Blue Cross and Blue Shield of New Mexico, an unincorporated division of Health Care Service Corporation, a Mutual Legal Reserve Company* |
|  | */s/ Alfred A. Park*<br>PARK & ASSOCIATES, LLC<br>3840 Masthead St. NE<br>Albuquerque, NM 87109<br>Telephone:  (505) 246-2805<br>apark@parklawnm.com<br>Christopher Smith (*pro hac vice*)<br>Melissa Z. Baris (*pro hac vice*)<br>HUSCH BLACKWELL LLP<br>190 Carondelet Plaza, Suite 600<br>St. Louis, MO 63105<br>Telephone:  (314) 480-1500<br>Chris.Smith@huschblackwell.com<br>Melissa.Baris@huschblackwell.com<br><br>*Attorneys for Defendant Western Sky Community Care, Inc.* |

|  | RODEY, DICKASON, SLOAN, AKIN & ROBB, P.A. |
| --- | --- |
|  | By:   */s/ Andrew G. Schultz*              . |
|  | Andrew G. Schultz |
|  | Linda M. Vanzi |
|  | Melanie B. Stambaugh |
|  | P.O. Box 1888 |
|  | Albuquerque, NM 87103 |
|  | Telephone:   (505) 765-5900 |
|  | Facsimile:   (505) 768-7395 |
|  | E-mail:    aschultz@rodey.com |
|  | lvanzi@rodey.com |
|  | mstambaugh@rodey.com |
|  | *Attorneys for Defendants Presbyterian Health Plan, Inc.* |

I HEREBY CERTIFY that on September 16, 2022, the foregoing pleading was electronically filed through the CM/ECF System, which caused all counsel of record to be served by electronic means.

SUTIN, THAYER & BROWNE
A Professional Corporation

By */s/ Benjamin E. Thomas*
       Benjamin E. Thomas

# EXHIBIT  A

**OPPOSITION TO MOTION TO REMAND**

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW MEXICO**

NEW MEXICO TOP ORGANICS—ULTRA )
HEALTH, INC., and JACOB R. )
CANDELARIA, MATIAS TRUJILLO, as )
father and guardian of MT, a minor, ERICA )
ROWLAND, and ARIEL McDOUGAL, on )
behalf of themselves and all others similarly )
situated, )
                                             )
            Plaintiffs,                      )      Civil Action No.: 1:22-cv-00546-KG-LF
                                             )
      v.                                     )      (Removed from the Second Judicial District
                                             )      Court, State of New Mexico, County of
BLUE CROSS AND BLUE SHIELD OF NEW )          Bernalillo, Case No. D-202-CV-202203237)
MEXICO, PRESBYTERIAN HEALTH PLAN, )
INC., and WESTERN SKY COMMUNITY )
CARE, INC.,                                  )
                                             )
            Defendants.                      )

<u>**DECLARATION OF STEPHANIE HUTCHISON**</u>

I, Stephanie Hutchison, being first duly sworn under oath, state under penalty of perjury

that the following facts are true and correct to the best of my personal knowledge and belief, and

if called upon to do so, I would testify competently thereto:

1.      I am over 21 years of age and competent to give this declaration. I make this

declaration based on my personal knowledge of the matters set forth herein.

2.      I am a Senior Manager of Market Research at Health Care Service Corporation

("HCSC"). I have held this position since 2015, and I have worked at HCSC since 2004.

3.      My job duties and responsibilities include, among other things, leading the Market

Intelligence practice, which encompasses oversight of the Market Share program deliverables and

Market Sizing programs, as well as ad hoc requests.

4.      HCSC issues and administers Blue Cross and Blue Shield health plans in Illinois, Montana, New Mexico, Oklahoma, and Texas. Individuals who purchase, subscribe to, or are otherwise enrolled in Blue Cross and Blue Shield of New Mexico ("BCBSNM") health plans are known as BCBSNM "members."

5.      BCBSNM health plans are available on several different markets. For example, on the commercial market, New Mexico residents can obtain a BCBSNM health plan through their employer or by purchasing a BCBSNM health insurance plan. By way of another example, New Mexico residents who are eligible for Medicaid may choose to enroll in a BCBSNM Community Centennial Care plan.

6.      As part of my role as Senior Manager of Market Research at HCSC, I have knowledge and access to business records that pertain to the number of BCBSNM members in various types of markets, as well as the number of members of other health plans offered and issued in New Mexico.

7.      As part of my job duties and responsibilities, and in the ordinary course of business, I regularly rely on HCSC  Enterprise Enrollment reports, which identify membership data for various markets for the HCSC Statistical Control County Enrollment Report, to determine BCBSNM's membership data. This data is regularly compiled and recorded at or near the time it is received in the normal course of HCSC's business and provides correct, up-to-date information regarding BCBSNM's membership data in various markets. The data is viewed as the best source for membership reporting within the company. The total BCBSNM book of business is used for these enrollment numbers, excluding Medicare Part D and ancillary business.

8.      As part of my job duties and responsibilities, and in the ordinary course of business, I regularly rely on Mark Farrah Associates ("MFA"), an electronic publisher of up-to-date business

information and analytics that compiles and aggregates health care industry data and market metrics, to determine membership data for other health plans operating in New Mexico. MFA provides a comprehensive, up-to-date source of health plan enrollment data for various markets, including, but not limited to, commercial, Medicare, Medicaid, and total membership enrollment. MFA is an authoritative source used by many other health plans to understand competitor membership data and is generally known in the industry as the best resource for collecting membership data for health plans, among other data. Notably, HCSC Market Research conducts an annual survey to gather competitor data for commercial membership through its Consumers Health Insurance Survey, and HCSC's data is consistent with the commercial data from MFA for other health plans.

9.      The following information is within my personal knowledge, based on my personal review and examination of the aforementioned business records and market reporting data.

10.      When taking into account all markets, BCBSNM has the largest total membership relative to the other health insurers and health plans operating in New Mexico. According to the most recent available data as of the date of this declaration from the first quarter of 2022, approximately 32.5% of all New Mexicans with health care coverage of any kind have a BCBSNM health plan.

11.      BCBSNM also has the largest number of members with commercial market health plans relative to the other health insurers and health plans operating in New Mexico. According to the most recent available data as of the date of this declaration from the first quarter of 2022, nearly 37% of New Mexicans with health care coverage through the commercial market have a BCBSNM health plan. The company with the second most members on the commercial market is

UnitedHealthcare; less than 15% of New Mexicans with health care coverage through the commercial market have a UnitedHealthcare plan.

12.     BCBSNM has the second largest number of members on the Medicaid market relative to the other Medicaid health plans offered in New Mexico. According to the most recent available data as of the date of this declaration from the first quarter of 2022, approximately 34% of Medicaid-eligible New Mexicans are enrolled in a BCBSNM Community Centennial Care plan.

13.     When looking solely at the Medicaid and commercial markets, BCBSNM has the largest number of members. According to the most recent available data as of the date of this declaration from the first quarter of 2022, more than 35% of all New Mexicans who have a health plan on either the commercial or Medicaid markets have a BCBSNM health plan.

## **VERIFICATION**

In accordance with 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct.

Executed on this _8th_ day of _September_, 2022, in the United States.

_Stephanie Hutchison_
Stephanie Hutchison