IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

NEW MEXICO TOP ORGANICS—ULTRA
HEALTH, INC., and JACOB R.
CANDELARIA, TOMAS LORENZO
VALENCIA, BRYCE BRYANT-FLYNN,
MATIAS TRUJILLO, as father and guardian of
MT, a minor, ERICA ROWLAND, and ARIEL
McDOUGAL, on behalf of themselves and all
others similarly situated,

      Plaintiffs,

v.                                                                           1:22-cv-00546-MV-LF

BLUE CROSS AND BLUE SHIELD OF NEW
MEXICO, TRUE HEALTH NEW MEXICO,
INC., CIGNA HEALTH AND LIFE
INSURANCE COMPANY, MOLINA
HEALTHCARE OF NEW MEXICO, INC.,
PRESBYTERIAN HEALTH PLAN, INC.,
PRESBYTERIAN INSURANCE COMPANY,
INC., and WESTERN SKY COMMUNITY
CARE, INC.,

      Defendants.

## **PROPOSED FINDINGS AND RECOMMENDED DISPOSITION**

THIS MATTER comes before the Court on Plaintiffs New Mexico Top Organics—Ultra

Health, Inc., Jacob R. Candelaria, Matias Trujillo, Erica Rowland, and Ariel McDougal's Motion

to Remand, filed August 21, 2022, and their Second Motion to Remand or Alternatively Motion

for Leave to Conduct Discovery to Determine Subject Matter Jurisdiction, filed on November

11, 2022.   Docs. 24, 40.   It also comes before the Court on Defendants Blue Cross and Blue

Shield of New Mexico ("BCBSNM"), Presbyterian Health Plan, Inc. and Western Sky

Community Care, Inc.'s Motion to Disregard New Evidence and Arguments in Plaintiffs' Reply

in Support of Remand, or in the Alternative, for Leave to File a Surreply, filed on October 26,

2022.   Doc. 39.   The Honorable Martha Vázquez, Senior United States District Judge, referred

all three motions to me "to conduct hearings, if warranted, including evidentiary hearings, and to

perform any legal analysis required to recommend to the District Court an ultimate disposition."

Docs. 54, 55.   The Court held a hearing on the motions on October 25, 2023.   Doc. 59.   Having

read the motions and considered the relevant law, and having heard the argument of counsel, I

recommend that the Court DENY all three motions.

## I.   <u>Background Facts and Procedural Posture</u>

On June 10, 2022, Plaintiffs and two additional named plaintiff-representatives, Tomas

Lorenzo Valencia and Bryce Preston Bryant-Flynn (collectively, the "Original Plaintiffs"), filed

a class action complaint for damages and declaratory judgment (the "Original Complaint")

against Defendants and four additional health plans and health insurance issuers (the "Original

Defendants")[1] in state court, seeking damages and declaratory relief that would compel health

plans and health insurance issuers in New Mexico to pay for the cost of cannabis distributed

under the Lynn and Erin Compassionate Use Act, N.M. STAT. ANN. 1978 § 26-2B-1 et seq.

("LECUA").   *See* Doc. 1-1 (Original Complaint).   On July 22, 2022, five of the Original

Defendants timely removed the case to this Court, asserting three separate bases for the Court's

original jurisdiction.   Doc. 1.

First, the Original Defendants asserted that the Employee Retirement Income Security

Act ("ERISA"), 29 U.S.C. § 1132(a)(1)(B), completely preempted the claims of at least two

Original Plaintiffs, Valencia and Bryant-Flynn, who obtain health care coverage through their

---

[1] The additional "Original Defendants" are True Health New Mexico, Inc. ("True Health"),
Cigna Health and Life Insurance Company ("Cigna"), Molina Healthcare of New Mexico, Inc.,
and Presbyterian Insurance Company, Inc.

2

private employers, giving rise to federal question jurisdiction.   *See* Doc. 1 at 4–8.   Second, the

Original Defendants asserted that this Court has original jurisdiction under the Class Action

Fairness Act ("CAFA"), 28 U.S.C. § 1332(d), because (1) the proposed class has more than 100

members, (2) "the parties are minimally diverse," and (3) the amount in controversy exceeds

$5,000,000.   *See* Doc. 1 at 8–12.   Third, the Original Defendants asserted that the Court has

jurisdiction under 28 U.S.C. § 1331 because the Original Complaint necessarily raised

substantial federal questions, including whether health plans operating under a joint state and

federal government program relying primarily on federal funding can be compelled to violate

federal law.   *See* Doc. 1 at 12–18.   The Original Defendants further asserted that the Court has

supplemental jurisdiction over any claims not subject to the Court's original jurisdiction because

"they form part of the same case or controversy."   *Id.* at 19–20.

On August 19, 2022, before any of the Original Defendants answered the Original

Complaint, Plaintiffs filed their First Amended Complaint ("FAC").   Doc. 22.   Two days later,

Plaintiffs filed their first Motion to Remand, arguing that the FAC does not state any claim under

ERISA and therefore is not subject to complete preemption, that CAFA does not apply because

the FAC raises an entirely local controversy, and that because the FAC does not state a federal

cause of action, there is no federal-question jurisdiction.   Doc. 24.   Defendants responded that

the Court has original jurisdiction under CAFA, and that Plaintiffs had failed to meet their

burden of proving that the Court should abstain from exercising that jurisdiction under the local

controversy exception.   Doc. 31 at 15–25.[2]   They also argue that both the Original Complaint

---

[2] When citing to Doc. 31, the Court cites to the CM/ECF document number and page in the
CM/ECF heading rather than to the document's page numbers at the bottom of each page.

and the FAC raise substantial issues of federal law.   *Id.* at 25–35.   Lastly, they argue that the Court should exercise supplemental jurisdiction over all claims in the FAC in part because the Court had original jurisdiction over the Original Complaint due to complete ERISA preemption, and Plaintiffs should not be permitted to amend away federal jurisdiction once a case is properly removed.   *Id.* at 36–38.   In reply, Plaintiffs argue that (1) defining the class as qualified patients under LECUA establishes that at least two thirds of the class are New Mexico citizens; (2) all Defendants are significant Defendants, and BCBSNM—the one remaining non-citizen defendant—is really a New Mexico defendant; (3) the purported federal questions are only affirmative defenses and no element of Plaintiffs' claims rely on a violation or interpretation of federal law; and (4) there is no reason for the Court to exercise supplemental jurisdiction because no ERISA claim remains.   *See* Doc. 37 at 1.   Plaintiffs also request an opportunity to conduct limited discovery if the Court is not satisfied that they have satisfied the first or second prong of the local controversy exception to CAFA.   *See id.* at 6–7, 11.

In response to Plaintiffs' reply, Defendants filed their Motion to Disregard New Evidence and Arguments in Plaintiffs' Reply in Support of Remand, or in the Alternative, for Leave to File a Surreply.   Doc. 39.   Plaintiffs opposed Defendants' motion, and Defendants filed a reply in support of their motion.   Docs. 41, 44.

On November 8, 2022, Plaintiffs filed a Second Motion to Remand or Alternatively Motion for Leave to Conduct Discovery to Determine Subject Matter Jurisdiction.   Doc. 40.   In their motion, Plaintiffs argue that BCBSNM is a New Mexico citizen—or at least they should be able to conduct limited discovery on that question—and therefore there is not minimal diversity between the Plaintiffs and the remaining Defendants under CAFA.   *Id.*   Thus, they argue, the Court lacks subject matter jurisdiction.   *See id.*   In response, Defendants argue that BCBSNM is

just a division of Health Care Service Corporation ("HCSC"), a citizen of Illinois, and that

Plaintiffs intended to sue HCSC.   Doc. 43 at 12–16.[3]   Because HCSC is the proper defendant,

minimal diversity exists between the parties.   *See id.*   They also argue that because the Original

Complaint named Cigna—a "foreign corporation"—as a defendant, minimal diversity existed at

the time of removal based on Cigna alone.   *Id.* at 16–18.   Defendants also argue that equitable

estoppel is inapplicable, Plaintiffs are not entitled to limited discovery on BCBSNM's

citizenship, and Plaintiffs' second motion to remand is improper.   *Id.* at 18–22.

   For the following reasons, I recommend that the Court DENY both Motions to Remand.

Should the Court do so, the Court also should DENY Defendants' motion as unnecessary.

**II.   Discussion**

   **A.  Complete Preemption**

      **1.   Some of Plaintiffs' Claims in the Original Complaint are Completely
         Preempted by ERISA; Therefore, Removal was Proper.**

   Under the federal removal statute, "any civil action brought in a State court of which the

district courts of the United States have original jurisdiction, may be removed by the defendant"

to federal court.   28 U.S.C. § 1441(a).   The removing party bears the burden of establishing by

a preponderance of the evidence the facts that show the existence of federal jurisdiction.   *See*

*Salzer v. SSM Health Care of Oklahoma Inc.*, 762 F.3d 1130, 1134 (10th Cir. 2014) ("The party

invoking federal jurisdiction has the burden to establish that it is proper . . . ."); *Dutcher v.*

*Matheson (Dutcher I)*, 733 F.3d 980, 985 (10th Cir. 2013) ("As the parties removing this case to

---

[3]  When citing to Doc. 43, the Court cites to the CM/ECF document number and page in the
CM/ECF heading rather than to the document's page numbers at the bottom of each page.

federal court, the defendants bear the burden of establishing jurisdiction by a preponderance of

the evidence."); *McPhail v. Deere & Co.*, 529 F.3d 947, 954 (10th Cir. 2008) ("The

'preponderance of the evidence' standard applies to jurisdictional facts, not jurisdiction itself.").

When a plaintiff files a motion to remand to state court after removal, the removing defendant

continues to bear the burden of proving that removal was proper.  *Resendiz v. Progressive

Direct Ins. Co.*, — F. Supp. 3d —, 2023 WL 3275616, at *2 (D.N.M. May 5, 2023); *see also

Garcia v. Martinez*, 414 F. Supp. 3d 1348, 1352 (D.N.M. 2019) (On motion to remand for

untimely removal, "the removing party bears the burden of proving removal was proper.").[4]

District courts have original jurisdiction over cases that present a "[f]ederal question,"

that is, cases "arising under the Constitution, laws, or treaties of the United States."   28 U.S.C.

§ 1331.   Generally, determining whether a particular case arises under federal law depends on

the "well-pleaded complaint rule," under which a suit arises under federal law only if a plaintiff's

own statement of his or her cause of action shows that it is based on federal law.   *Salzer*, 762

F.3d at 1134.   The doctrine of complete preemption, however, is an exception to the well-

pleaded complaint rule:   "when a federal statue completely preempts the state-law cause of

action, a claim which comes within the scope of that cause of action, even if pleaded in terms of

state law, is in reality based on federal law."  *Beneficial Nat. Bank v. Anderson*, 539 U.S. 1, 8

(2003).   Although only a few federal statutes have "complete preemptive force; ERISA is one."

———————————————————#

[4] The only exception to this rule relevant to this case is under CAFA.   Once Defendants
establish that CAFA applies, the burden shifts to Plaintiffs to prove by a preponderance of the
evidence that the local controversy exception applies.   *See Dutcher v. Matheson (Dutcher II)*,
840 F.3d 1183, 1190 (10th Cir. 2016); *see also Dutcher I*, 733 F.3d at 989 ("Applying [CAFA]
and its exceptions involves shifting burdens of proof.").

*Salzer*, 762 at 1134 (quoting *Hansen v. Harper Excavating, Inc.*, 641 F.3d at 1216, 1221 (10th Cir. 2011)).

If any of Plaintiffs' claims in their Original Complaint were completely preempted by ERISA, removal was proper.   *See id.*; *see also id.* at 1138 (although the court concluded that most of plaintiff's claims were not preempted, "federal jurisdiction over any one claim is sufficient to support removal").   Any cause of action within the scope of the civil enforcement provision of ERISA § 502, 29 U.S.C. § 1132(a)(1)(B), is removable to federal court. *Metropolitan Life Ins. Co. v. Taylor*, 481 U.S. 58, 66 (1987).   Section 502(a)(1)(B) provides:

> A civil action may be brought—(1) by a participant or beneficiary—. . . (B) to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan.

29 U.S.C. § 1132(a)(1)(B).   A claim falls within the scope of the ERISA civil enforcement provision and is completely preempted if (1) "an individual, at some point in time, could have brought his claim under ERISA § 502(a)(1)(B)," and (2) "there is no other independent legal duty that is implicated by a defendant's actions."   *Aetna Health Inc. v. Davila*, 542 U.S. 200, 210 (2004) (the *Davila* test).   To determine whether any of Plaintiffs' claims here falls within the scope ERISA's civil enforcement provision, the Court must examine the Original Complaint, the statutes on which the claims are based, and any plan documents.   *See id.* at 211.

In this case, Plaintiffs allege in the Original Complaint that Cigna and True Health failed to pay benefits for medical cannabis that they claim were due under Plaintiff Bryant-Flynn's and Plaintiff Valencia's ERISA-regulated plans.[5]   Specifically, Plaintiffs allege that Bryant-Flynn

───────────────#

[5] ERISA regulates "any employee benefit plan if it is established or maintained[ ] (1) by an employer engaged in commerce or in any industry or activity affecting commerce; or (2) by any

"is employed and participates in his employer's group health program with Cigna" and has had coverage under that plan since June 2021.   Doc. 1-1 ¶¶ 17, 52.   Similarly, Plaintiffs allege that Valencia has received health benefits "through his employer," Southwest Wellness, pursuant to a "Large Group PPO plan" with True Health and has had coverage under that plan since at least January 1, 2022.   *Id.* ¶¶ 16, 45.   In Count Two of the Original Complaint, Plaintiffs allege that "Valencia and Bryant-Flynn and other members of the class entered into valid written contracts with [True Health and Cigna] for health insurance, including the offering of behavioral health services," *id.* ¶ 169, that their health insurance policies incorporate "all applicable state and federal laws," *id.* ¶ 171, and that True Health and Cigna breached those health insurance policies because Valencia and Bryant-Flynn have "paid one hundred percent (100%) of the cost of their medical cannabis in violation of the Behavioral Health Services Equity Acts," *id.* ¶ 172.   As a remedy, they sought "damages for the actual cost paid by Plaintiffs . . . for medical cannabis from January 1, 2022 to the time of the award."   Doc. 1-1 at 36.[6]   In short, Plaintiffs Bryant-Flynn and Valencia sought "to recover benefits due to [them] under the terms of [their] plan[s],

---#

employee organization or organizations representing employees engaged in commerce or in any industry or activity affecting commerce; or (3) by both."   29 U.S.C. § 1003(a).   An "employee welfare benefit plan" is "any plan, fund, or program . . . established or maintained by an employer . . . to the extent that such plan, fund, or program was established or is maintained for the purpose of providing for its participants or their beneficiaries, through the purchase of insurance or otherwise, (A) medical, surgical, or hospital care or benefits, or benefits in the event of sickness, accident, disability, death or unemployment . . . ."   29 U.S.C. § 1002(1).   The descriptions of both Plaintiff Valencia and Plaintiff Bryant-Flynn's health insurance plans in the Original Complaint appear to meet the definition of an employee benefit plan regulated by ERISA.

[6] When citing to Doc. 1-1, the Court cites to the CM/ECF document number and page in the CM/ECF heading rather than to the document's page numbers at the bottom of each page.

[and] to enforce [their] rights under the terms of the plan[s]," 29 U.S.C. § 1132(a)(1)(B), and

they could have brought their claims under ERISA.[7]   Count Two therefore meets the first prong

of the *Davila* test.

To adjudicate these Plaintiffs' (and other similar situated class members') breach of

contract claim, the Court must interpret the coverage provisions and exclusions within Bryant-

Flynn's and Valencia's health plans to determine what benefits the plans afford for medical

cannabis, what cost sharing the plans impose on medical cannabis, and whether Cigna and True

Health have failed to provide the benefits afforded by the plans.   Because Cigna's alleged

liability to Bryant-Flynn and True Health's alleged liability to Valencia would not exist but for

their administration of those ERISA-regulated plans, and interpretation of the plans' terms is

essential to determining whether they are entitled to benefits for their medical cannabis, ERISA

completely preempts their claims.   *Speer v. Prudential Ins. Co. of Am.*, 645 F. App'x 821, 824

(10th Cir. 2016) (ERISA completely preempted state-law claims by beneficiary who alleged

plan's insurer misdirected his share of life insurance benefit to his brother); *Salzer*, 762 F.3d at

---------------------#

[7] Count Two of the Original Complaint is the count that is most obviously completely preempted
by ERISA.   Because federal jurisdiction over only one claim is sufficient to support removal,
*Salzer*, 762 F.3d at 1138, the Court does not address whether any of the six other claims in the
Original Complaint are completely preempted.   To the extent that the remaining claims of
Plaintiffs Valencia and Bryant-Flynn and similarly situated class members are not completely
preempted, or to the extent that the claims of other Plaintiffs are not subject to ERISA, the Court
has supplemental jurisdiction over all other claims.   *See Gilmore v. Weatherford*, 694 F.3d 1160,
1176 (10th Cir. 2012) ("[I]f any one claim within Plaintiffs' complaint supports federal question
jurisdiction, a federal court may assert jurisdiction over all the claims, including any alleged
state-law claims, arising from the same core of operative facts." (quotation omitted)); *see also* 28
U.S.C. § 1367(a) ("[I]n any civil action of which the district courts have original jurisdiction, the
district courts shall have supplemental jurisdiction over all other claims that are so related to
claims in the action within such original jurisdiction that they form part of the same case or
controversy under Article III of the United States Constitution.").

1138 (ERISA completely preempted beneficiary's claim that medical provider tortiously interfered with his health insurance contract by filing lien for amounts that were covered by plan); *see also Davila*, 542 U.S. at 210 (state-law statutory claim for damages stemming from health insurer's allegedly negligent determination of benefits under health plan was completely preempted).   Neither Cigna nor True Health owe any duty to Plaintiffs Bryant-Flynn and Valencia that is independent of their ERISA-regulated health insurance plans.   Thus, Count Two meets the second prong of the *Davila* test, and the claims in Count Two of the Original Complaint brought by Plaintiffs Bryant-Flynn and Valencia, and others similarly situated, are completely preempted by ERISA.   Defendants' removal of the Original Complaint was proper.

  **2.   The Court Cannot Consider the FAC to Determine Whether to Remand the Case.   Because Removal was Proper, the Court has Supplemental Jurisdiction Over all Remaining Claims.**

  In their first Motion to Remand, Plaintiffs do not address whether the Original Complaint was properly removed based on ERISA preemption.   *See generally* Doc. 24.   Instead, they argue that because the FAC "explicitly carves out any causes of action against ERISA plans by defining out of the putative class any 'participant or beneficiary' of an ERISA plan," and because no "class representatives [in the FAC] have ERISA plans," "the Court does not have federal question jurisdiction based on ERISA complete preemption."   *Id.* at 1–2; *see also id.* at 5–6 ("Plaintiffs and the proposed class in the First Amended Complaint have no standing to bring an action under ERISA § 502(a)(1)(B) and thus ERISA does not completely preempt any causes of action.").   Plaintiffs' assertions about the FAC—and their explicit "carve out" of Plaintiffs and class representatives with ERISA plans—are essentially an admission that the Original

Complaint *did* contain claims that were completely preempted by ERISA.[8]   The problem,

however, is that the Court can only consider the complaint at the time of removal in deciding

whether removal was proper and whether the case should be remanded.   *See Salzer*, 762 F.3d at

1133 ("the propriety of removal is judged on the complaint as it stands at the time of the

removal") (quoting *Pfeiffer v. Hartford Fire Ins. Co.*, 929 F.2d 1484, 1488 (10th Cir. 1991)

(observing that it was error to assume "that a party may force remand of an action after its

removal from state court by amending the complaint to destroy the federal court's jurisdiction

over the action")); *Reece v. AES Corp.*, 638 F. App'x 755, 775 (10th Cir. 2016) ("post-removal

amendments are ineffective to divest a federal court of jurisdiction"); *In re Burlington Northern*

*Santa Fe Ry Co.*, 606 F.3d 379, 380–81 (7th Cir. 2010) ("The well-established general rule is

that jurisdiction is determined at the time of removal, and nothing filed after removal affects

jurisdiction."); *cf. Rockwell Int'l Corp. v. United States*, 549 U.S. 457, 474 n.6 (2007) ("[W]hen

a defendant removes a case to federal court based on the presence of a federal claim, an

amendment eliminating the original basis for federal jurisdiction generally does not defeat

jurisdiction.").   Because at least one claim in the Original Complaint was completely preempted

---------------------------#

[8] Plaintiffs state in a footnote that they "do not concede that the health insurance plans for former Plaintiffs Tomas Lorenzo Valencia and Bryce Preston Bryant-Flynn are governed by ERISA, and upon information and belief assert they are not.   But the Court need not decide this issue since the class definition does not include participants or beneficiaries of ERISA plans."   Doc. 24 at 4 n.2.   Plaintiffs provide no law or evidence to support this statement.   *See id.*   The Court finds that the allegations in the Original Complaint, along with a copy of former Plaintiff Bryant-Flynn's health insurance plan attached to the notice of removal, establish by a preponderance of the evidence that former Plaintiffs Valencia and Bryant-Flynn had health insurance plans governed by ERISA.   *See supra* at 7–8 & note 5.

by ERISA, the Court had federal question jurisdiction over at least that claim, and it now has supplemental jurisdiction over all remaining claims.

Plaintiffs make no argument as to why this general principle—that the propriety of removal is based *only* on the complaint at the time of removal—should not apply here.[9]   Indeed, the explicit carve-out of any ERISA-based claims in the FAC, along with the filing of the first Motion to Remand just two days after Plaintiffs filed the FAC, raise exactly the "forum-manipulation concerns" that are behind the general rule that a plaintiff in a properly removed case cannot amend away federal jurisdiction.  *See Rockwell Int'l Corp.*, 549 U.S. at 474 n.6 (noting that although it sometimes is possible for a plaintiff who originally sues in federal court to amend away jurisdiction, removal cases present concerns about forum manipulation that caution against permitting a plaintiff's post-removal amendment to affect jurisdiction).   Thus, although the Court *may* decline to exercise supplemental jurisdiction under specified circumstances, *see* 28 U.S.C. § 1368(c), I recommend that the Court exercise supplemental jurisdiction over all remaining claims in this case.

Under 28 U.S.C. § 1368(c), the Court has discretion to decline to exercise supplemental jurisdiction over remaining state law claims if (1) the state law claims "raise[ ] a novel or complex issue of State law"; (2) the state law claims "substantially predominate[ ]" over the

_____#

[9] Plaintiffs argue in a footnote that the Court may "properly consider amendments to a complaint that merely clarify the proposed class," relying on *Benko v. Quality Loan Service Corp.*, 789 F.3d 1111, 1117 (9th Cir. 2015).   Doc. 37 at 2 n.1.   This argument, however, relates only to whether the local controversy exception applies under CAFA, and does not pertain more broadly to the question of whether the Court may consider the FAC in deciding whether removal was proper in the first place.   Furthermore, in *Benko*, the Court found that relying on the FAC was permissible in part because "the Plaintiffs here did not amend the FAC to eliminate a federal question so as to avoid federal jurisdiction."   *Benko*, 789 F.3d at 1117.   That is not the case here.

federal claims; (3) the Court "has dismissed all claims over which it has original jurisdiction"; or

(4) "in exceptional circumstances, there are other compelling reasons for declining jurisdiction."

28 U.S.C. § 1368(c); *see also International College of Surgeons*, 522 U.S. 156, 173 (1997)

(Section 1367 "reflects the understanding that, when deciding whether to exercise supplemental

jurisdiction, a federal court should consider and weigh in each case, and at every stage of the

litigation, the values of judicial economy, convenience, fairness, and comity.") (internal

quotation marks omitted).   The four circumstances that would warrant declination of

supplemental jurisdiction are not present here.

     First, as is obvious from the briefing and the face of both the Original Complaint and the

FAC, resolution of this case will depend not only on New Mexico state law, but also on federal

law, and whether the state can require insurance companies to cover medical cannabis for

Medicaid participants and others who obtain private health insurance.   Although this may to

some extent raise novel or complex issues of state law, it also raises novel and complex issues of

federal law, whether characterized as substantial federal questions or affirmative defenses.[10]

Second, the state law claims necessarily implicate federal Medicaid law and are inextricably tied

to the fact that cannabis is still a controlled substance under the Controlled Substances Act and

has not been approved federally for medical use.[11]   The state claims do not predominate over

---#

[10] Because I recommend that the Court exercise supplemental jurisdiction over any remaining state claims, and alternatively that the Court find that Plaintiffs have failed to meet their burden of proving that the local controversy exception under CAFA applies, the Court need not decide whether Plaintiffs' claims also raise substantial federal questions.

[11] *See Gonzales v. Raich*, 545 U.S. 1, 14 (2005) ("In enacting the CSA, Congress classified marijuana as a Schedule I drug."); 21 U.S.C. § 812(c); *High Desert Relief, Inc. v. United States*, 917 F.3d 1170, 1175 (10th Cir. 2019) ("marijuana is still classified as a federal 'controlled substance' under schedule I of the CSA").

these issues.   Third, the Court did not dismiss the ERISA claims; Plaintiffs chose to carve those claims out of the FAC in an attempt to avoid federal jurisdiction, which is not permitted. Finally, the Court is not aware of any exceptional circumstances that would warrant declining jurisdiction.   To the contrary, although Plaintiffs' claims may be stated in terms of state law, they are inextricably tied to federal Medicaid law and the Controlled Substances Act.   Thus, because of the important federal interests at stake, I recommend that the Court exercise supplemental jurisdiction over all remaining claims, even if they otherwise might be subject to the local controversy exception under CAFA.   Nonetheless, as an alternative ground for retaining jurisdiction, I recommend that the Court find that Plaintiffs have failed to meet their burden of proving that they meet the local controversy exception under CAFA.

### B.  CAFA

#### 1.  Defendants Have Met Their Burden to Prove the Court's Original Jurisdiction under CAFA.

"In enacting CAFA, Congress intended to 'expand substantially federal court jurisdiction over class actions.' "   *Woods v. Std. Ins. Co*., 771 F.3d 1257, 1262 (10th Cir. 2014) (citing S. Rep. No. 109-14, at 43 (2005)).   Federal courts have original jurisdiction over putative class actions if (1) the proposed class has more than 100 members, (2) "the parties are minimally diverse," and (3) the amount in controversy exceeds $5,000,000.   *Id*. (citing 28 U.S.C. §§ 1332(d)(2), (d)(5)(B)).

The removing party bears the burden of establishing these elements.   *Id*.   Here, the Notice of Removal establishes that all three CAFA elements are met.   *See* Doc. 1 at 8–11.

First, Plaintiffs allege in their Original Complaint[12] that the class will consist of at least 10,000 members, so the proposed class exceeds 100 members. *See* 28 U.S.C. § 1332(d)(5)(B); Doc. 1-1 ¶ 157 ("While the exact number of the Class members is not known to Plaintiffs at this time, Plaintiffs believe that there will be more than 10,000 members of the Class."). Second, the parties are minimally diverse.[13] All the named Plaintiffs are citizens of New Mexico. *See* Doc. 1-1 ¶¶ 14–20. The Original Complaint alleges that former "Defendant Cigna Health and Life Insurance Company is a foreign corporation with its principal place of business located at

———————————————#

[12] As discussed above, the Court only may consider the complaint at the time of removal to determine whether removal was proper or whether a case should be remanded. *See Salzer*, 762 F.3d at 1133 ("the propriety of removal is judged on the complaint as it stands at the time of the removal") (quoting *Pfeiffer*, 929 F.2d at 1488 (observing that it was error to assume "that a party may force remand of an action after its removal from state court by amending the complaint to destroy the federal court's jurisdiction over the action")); *Reece*, 638 F. App'x at 775 ("post-removal amendments are ineffective to divest a federal court of jurisdiction"); *In re Burlington Northern Santa Fe Ry Co.*, 606 F.3d at 380–81 ("The well-established general rule is that jurisdiction is determined at the time of removal, and nothing filed after removal affects jurisdiction."); *see also Hargett v. RevClaims*, 854 F.3d 962, 967 (8th Cir. 2017) ("[T]he concept of redefining a class to trigger the local-controversy exception seems to violate § 1332(d)(7), which says that for purposes of the local-controversy exception, class citizenship must be determined as of the date of the pleading giving federal jurisdiction."); S. Rep. 109-14 at 43 ("The law is clear that, once a federal court properly has jurisdiction over a case removed to federal court, subsequent events generally cannot 'oust' the federal court of jurisdiction. While plaintiffs undoubtedly possess some power to seek to avoid federal jurisdiction by defining a proposed class in particular ways, they lose that power once a defendant has properly removed a class action to federal court.") (internal footnote omitted); *cf. Rockwell Int'l Corp.*, 549 U.S. at 474 n.6 ("[W]hen a defendant removes a case to federal court based on the presence of a federal claim, an amendment eliminating the original basis for federal jurisdiction generally does not defeat jurisdiction."). Although the parties discuss the FAC at length, the Court only will consider the Original Complaint—the operative complaint when Defendants removed this case— to determine whether it has jurisdiction under CAFA, and whether the local controversy exception applies.

[13] "[M]inimal diversity among the parties" means "that at least one defendant and one class member are not co-citizens." *Payne v. Tri-State Careflight, LLC*, 322 F.R.D. 647, 677 (D.N.M. 2017) (citing 28 U.S.C. § 1332(d)(2)).

1601 Chestnut Street, Philadelphia, PA 19192." *Id.* ¶ 23.   In addition, Defendant BCBSNM

submitted an affidavit showing that BCBSNM is an unincorporated division of Health Care

Service Corporation ("HCSC"), which is a citizen of Illinois.   Doc. 1-3.   Third, as is apparent

from the face of the Original Complaint, the amount in controversy exceeds $5,000,000.

Specifically, Plaintiffs not only seek all the amounts they and at least 10,000 others paid for their

medically necessary cannabis, they also seek "disgorgement of the millions of dollars in excess

profits and revenues retained by each [of the seven] Defendant[s] . . . ."   Doc. 1-1 ¶ 13.   This

makes clear that the amount in controversy exceeds $5,000,000.   Indeed, Plaintiffs do not

contest that the first and third elements for CAFA jurisdiction are met.   Doc. 24 at 2, 6–10.

Although they do argue that BCBSNM is in fact a New Mexico citizen, or that they at least

should be able to conduct discovery on that issue, *see* Doc. 37 at 12–14, the Court finds that

Defendants have proven this fact by a preponderance of the evidence, and that further discovery

would not show otherwise.   Moreover, there is no dispute that former Defendant Cigna is a

foreign corporation; therefore, minimal diversity existed at the time of removal.

### 2. Plaintiffs Bear the Burden of Proving That the Narrow Local Controversy Exception Applies.

Because Defendants have met the three threshold elements for CAFA jurisdiction,

Plaintiffs bear the burden of proving that one of the exceptions to CAFA jurisdiction exists.

*Dutcher II*, 840 F.3d at 1190   Here, Plaintiffs rely solely on the local controversy exception in

28 U.S.C. § 1332(d)(4)(A) to argue that this Court should not exercise jurisdiction under CAFA.

*See* Doc. 24 at 2, 6–10.   The local controversy exception does not divest the Court of

jurisdiction; it "operates as an abstention doctrine" under which the federal court abstains from

hearing the case.   *See Dutcher II*, 840 F.3d at 1190 (citation and internal quotations omitted).

16

"Congress intended the local controversy exception to be 'narrow,' with all doubts resolved 'in favor of exercising jurisdiction over the case.'" *Woods*, 771 F.3d at 1265–66 (quoting S. Rep. No. 109-14 at 39, 42).   For the exception to apply, Plaintiffs bear the burden of proving that:

(I)   greater than two-thirds of the members of all proposed plaintiff classes in the aggregate are citizens of [New Mexico];

(II)   at least 1 defendant is a defendant—

(aa)   from whom significant relief is sought by members of the plaintiff class;

(bb)   whose alleged conduct forms a significant basis for the claims asserted by the proposed plaintiff class; and

(cc)   who is a citizen of [New Mexico]; and

(III)   principal injuries resulting from the alleged conduct or any related conduct of each defendant were incurred in [New Mexico] . . .

28 U.S.C. § 1332(d)(4)(A)(i).   In this case, Plaintiffs have failed to prove the first two elements of the local controversy exception.   I therefore recommend that the Court decline to remand the case to the state court under the local controversy exception to CAFA.

### 3.   Plaintiffs Have Failed to Meet Their Burden of Proving that More than Two-Thirds of the Proposed Class are New Mexico Citizens.

The Tenth Circuit permits an inference regarding the citizenship of prospective class members only if the definition of the class is limited to citizens at the time of removal.   *See Reece*, 638 F. App'x at 769; *see also Nichols v. Chesapeake Operating, LLC*, 718 F. App'x 736, 739–42 (10th Cir. 2018) (Court "reject[ed] the applicability of a rebuttable presumption of citizenship in the context of a CAFA exception invoked based on the mere allegation of residence," and affirmed that despite "the significant effort [plaintiff] employed" in attempting to prove two-thirds of a class of "Oklahoma residents" were Oklahoma citizens, the evidence was insufficient,).   Several other circuit courts that have addressed this issue agree.   *See, e.g.*,

*Hargett v. RevClaims, LLC*, 854 F.3d 962, 965–67 (8th Cir. 2017) (rejecting that proposed class of "[a]ll persons who were Arkansas Medicaid-eligible beneficiaries" met the local controversy exception absent affirmative proof); *In re Sprint Nextel Corp.*, 593 F.3d 669, 673–76 (7th Cir. 2010) (rejecting that proposed class of "all Kansas residents" met local controversy exception, and noting that any inferences based on the class definition without actual evidence were based on "guesswork"); *Preston v. Tenet Healthsystem Mem'l Med. Ctr.*, 485 F.3d 793, 798–802 (5th Cir. 2007) (evidence presented to support local controversy exception only established residency of proposed class, not citizenship); *Evans v. Walter Indus.*, 449 F.3d 1159, 1165–66 (11th Cir. 2006) (evidence was insufficient to show that at least two-thirds of plaintiffs were Alabama citizens).

The Original Complaint defined the class as "all persons who: (1) are currently Qualified Patients as defined by L[E]CUA; (2) have been diagnosed with a mental or behavioral health condition pursuant to L[E]CUA, and (3) purchased medical cannabis to provide relief for their mental or behavioral health condition."   Doc. 1-1 ¶ 156.   A Qualified Patient is defined by statute as "a resident of New Mexico who has been diagnosed by a practitioner as having a debilitating medical condition and has received written certification and a registry identification card pursuant to the Lynn and Erin Compassionate Use Act on the basis of having been diagnosed, in person or via telemedicine, by a practitioner as having a debilitating medical condition."   N.M. STAT. ANN. § 26-2B-3(N).   Plaintiffs further assert in their reply that to become a Qualified Patient, applicants must submit a copy of their New Mexico driver's license or identification card with their application, which establishes that all Qualified Patients also have a New Mexico-issued identification card.   Doc. 37 at 4–5.   Plaintiffs argue that this residency requirement—in addition to their "clarification" in the FAC that all Plaintiffs must also

be citizens, *see* Doc. 24 at 8; Doc. 37 at 2–6 & n.1; Doc. 22 at ¶¶ 115, 117, 120 (defining the class as "all persons who: (1) are currently Qualified Patients as defined by LECUA and New Mexico citizens")—shows by a preponderance of the evidence that more than two-thirds of the proposed class are citizens of New Mexico.   Doc. 37 at 4–5.

Because the Original Complaint defined the class according to residency status instead of citizenship, Plaintiffs "saddled [themselves] with an evidentiary burden" that they have not met. *See Nichols*, 718 F. App'x at 741–42.   Plaintiffs "had to marshal and present some persuasive and substantive evidence (extrinsic to the [Original Complain]) to establish the [New Mexico] citizenship of the class members."   *Reece*, 638 F. App'x at 769.   This is true even for "propositions that appear likely on their face."   *Id.* at 769–70 (quoting *Mondragon v. Capital One Auto Finance*, 736 F.3d 880, 884 (9th Cir. 2013)).

"[A] person is a citizen of a state if the person is domiciled in that state."   *Middleton v. Stephenson*, 749 F.3d 1197, 1200 (10th Cir. 2014).   "[A] person acquires domicile in a state when the person resides there and intends to remain there indefinitely," a status that courts must glean from the "totality of the circumstances."   *Id.* at 1200–01.   The Tenth Circuit has held that courts must determine citizenship using "an all-things-considered approach," in which "any number of factors might shed light on the subject in any given case."   *Id.* at 1201.   Relevant factors include:

> the party's current residence; voter registration and voting practices; situs of personal and real property; location of brokerage and bank accounts; membership in unions, fraternal organizations, churches, clubs, and other associations; place of employment or business; driver's license and automobile registration; payment of taxes; as well as several other aspects of human life and activity.

*Id.* (internal quotation marks omitted).   Although a person's "place of residence is prima facie the domicile," *State Farm Mut. Auto. Ins. Co. v. Dyer*, 19 F.3d 514, 520 (10th Cir. 1994), something more than residence in a state is required to show the intent to remain in the state, *see Whitelock v. Leatherman*, 460 F.2d 507, 514 (10th Cir. 1972) ("[A]llegations of mere 'residence' may not be equated with 'citizenship.' ").   Here, Plaintiffs have offered no evidence that the proposed class members intend to remain in New Mexico indefinitely; they only have offered evidence that to be a Qualified Patient, a person must have had both a New Mexico address and a New Mexico-issued identification card when they applied to participate in New Mexico's Medical Cannabis Program.   Unlike the plaintiffs in *Lax v. APP of New Mexico ED, PLLC*, 2022 WL 2711230, at *2 (10th Cir. 2022) (unpublished), Plaintiffs did not conduct a statistical sampling of the proposed class members, nor did they offer an expert report and opinion on the likelihood that more than two-thirds of the class are New Mexico citizens.   Indeed, the FAC itself acknowledges that there are a small number (688 of 134,101) of LECUA Qualified Patients who are not New Mexico residents, Doc. 22 ¶ 110, despite the requirement that all Qualified Patients provide a New Mexico address and New Mexico-issued identification card.   Although this of course does not show that more than a third of the proposed class members are not New Mexico citizens, it makes clear that limiting proposed class members to LECUA Qualified Patients is not equivalent to limiting the proposed class members to New Mexico citizens.   Thus, without evidentiary support, the Court cannot conclude that more than two-thirds of the proposed class members are New Mexico citizens.

Plaintiffs argue that if the Court believes that the Plaintiffs have failed to carry their burden to prove that two-thirds of the proposed class members are New Mexico citizens, the Court should permit them to conduct limited discovery on this issue.   Doc. 37 at 6–7.   The

proposed discovery, however, would just confirm the statutory requirements for becoming a

LECUA Qualified Patient.   *See id.*[14]   This "evidence" still would be insufficient.   Having a

New Mexico address and a New Mexico-issued identification card says nothing about an

individual's intent to stay in New Mexico indefinitely.   Indeed, many out-of-state students

attending college or graduate school in New Mexico may satisfy those requirements, as would

many individuals who own vacation homes in New Mexico, but such individuals would not

necessarily meet the legal requirements for being New Mexico citizens.   Because Plaintiffs have

not sustained their burden of proving by a preponderance of the evidence that more than two-

thirds of the proposed class members are New Mexico citizens, the local controversy exception

under CAFA does not apply.

### 4.   Plaintiffs Cannot Satisfy Either the "Significant Relief" Requirement or the "Significant Basis" Requirement of the Local Controversy Exception.

First, Plaintiffs have not satisfied the "significant relief" requirement of the local

controversy exception, nor can they.   The "significant relief" component requires Plaintiffs to

prove that at least one local defendant is a defendant "from whom significant relief is sought by

members of the plaintiff class."   28 U.S.C. § 1332(d)(4)(A)(i)(II)(aa).   The definition of "class"

under CAFA is "all of the class members in a class action."   28 U.S.C. § 1332(d)(1)(A).   The

"significant relief" requirement is satisfied where the complaint "claims that *every potential*

*plaintiff* is entitled to recover from [the local defendant,] and the proposed class seeks to recover

damages from all defendants jointly and severally."   *Coffey v. Freeport McMoran Copper &*

––––––––––––––––––––––––#

[14] Plaintiffs propose "a single deposition of the New Mexico department of Health and Human Services on questions that would confirm the statutory requirements."   Doc. 37 at 6.   As discussed above, the statutory requirement under LECUA is not sufficient to establish an intent to remain in New Mexico indefinitely.

*Gold*, 581 F.3d 1240, 1244 (10th Cir. 2009) (emphasis added); *see also Woods*, 771 F.3d at 1266 ("The [local] defendant must be a target from whom significant relief is sought by the class (as opposed to just a subset of the class membership) . . . .") (quoting S. Rep. No. 109-14 at 38). Thus, to determine whether the plaintiff class seeks "significant relief" from a local defendant, the Court must determine whether the entire class has claims against a local defendant.

Here, the Original Complaint makes clear that some class members seek relief from the local Defendants, but some members, including Class Representatives Candelaria and McDougal, and Original Class Representative Bryant-Flynn, only have claims against non-local Defendants BCBSNM and Cigna.   *See* Doc. 1-1 ¶¶ 38, 52, 69 (identifying these Plaintiffs' health insurance providers); *see also id.* at 31 (seeking a declaration "that the entire cost of medical cannabis shall be covered by health policies sold in New Mexico," and also seeking "damages for the actual cost paid by Plaintiffs and the Class for medical cannabis from January 1, 2022 to the time of the award").   In other words, if Plaintiffs are successful, each class member only will be entitled to recover damages from that person's health plan.   The entire class is not seeking relief from any one defendant; rather, a subset of the class is seeking relief from local Defendants, while a different subset of the class is seeking relief from non-local Defendants, depending on which insurance company provides each class member's health insurance.   Plaintiffs therefore cannot meet the "significant relief" component of the local controversy exception.

Plaintiffs argue in their motion that because the plaintiff class as a whole seeks declaratory relief against all Defendants equally, they meet the significant relief prong of the local controversy exception.   Doc. 24 at 10.   Although it is technically true that the complaint seeks declaratory relief against all Defendants as a group, the reality is that any declaratory

relief, if awarded, would declare that each defendant insurance company, "and all other insurance carriers that offer health policies in New Mexico," must cover the entire cost of medical cannabis, without cost-sharing, to its insureds—not to every class member.   Doc. 1-1 ¶ 204.   Thus, the Court is doubtful that seeking this declaratory relief is sufficient to meet the "significant relief" component.

In their reply, Plaintiffs argue that the local controversy exception does not require that "every member of the proposed plaintiff class . . . assert a claim against the local defendant . . . ." Doc. 37 at 8 (quoting *Kaufman v. Allstate N.J. Ins. Co.*, 561 F.3d 144, 155 (3rd Cir. 2009)).[15] Although this may be true in the Third Circuit, the Tenth Circuit has suggested otherwise.   The two most relevant published cases in the Tenth Circuit are *Coffey* and *Woods*.   In *Coffey*, the Tenth Circuit agreed with the district court's determination that because the "petition claims that *every potential plaintiff* is entitled to recover from [the local defendant] and the proposed class seeks to collect damages from all defendants jointly and severally," the significant relief component was satisfied.   581 F.3d at 1244, 1245 (emphasis added).   This, of course, does not necessarily mean that every potential plaintiff *must* seek damages from the local defendant to satisfy the "significant relief" component, but it makes clear that when this is the case, the "significant relief" component is satisfied.

---#

[15] In *Kaufman*, the Third Circuit only was considering the "significant basis" component of the local controversy exception, not the "significant relief" component.   *See* 561 F.3d at 149 ("In this appeal, we consider . . . whether the significant basis provision, § 1332(d)(4)(A)(i)(II)(bb), requires that every class member must assert a claim against the local defendant . . . .").   Thus, it is not clear that *Kaufman* is relevant to the "significant relief" component of the local controversy exception.

In *Woods*, the Tenth Circuit held that the scope and character of the "significant relief" and "significant basis" components of CAFA are not clear from the plain language of the statute. 771 F.3d at 1265.   The court therefore looked at CAFA's legislative history to determine the meaning of these two components.   In doing so, it "interpret[ed] the significant local defendant requirement strictly so that plaintiffs and their attorneys may not defeat CAFA jurisdiction by routinely naming at least one state citizen as a defendant, irrespective of whether that defendant is actually a primary focus of the litigation." *Id.*   In reviewing the relevant legislative history of CAFA, the court noted the following:

> The Senate Judiciary Committee report on CAFA explains that for the local controversy exception to apply there must be "at least one real [local] defendant . . . whose alleged conduct is central to the class's claims and from whom the class seeks significant relief."   It further explains, "the Committee intends that the local defendant must be a primary focus of the plaintiffs' claims—not just a peripheral defendant."   "The defendant must be a target from whom significant relief is sought by the class *(as opposed to just a subset of the class membership)*, as well as being a defendant whose alleged conduct forms a significant basis for the claims asserted by the class."

*Id.* at 1266 (internal citations omitted) (quoting S. Rep. No. 109-14 at 28, 38) (emphasis added).

Thus, although the Tenth Circuit did not directly hold that the entire class must seek significant relief from the local defendant to satisfy the local controversy exception, the legislative history on which it relied to determine the scope of the "significant relief" component appears to impose this requirement.   And although I agree with Plaintiffs that the local Defendants in this case are more significant that the local defendant in *Woods*, *see* Doc. 24 at 9, that is not the relevant question.   The relevant question is whether the entire class (not just a subset of the class) seeks significant relief from the local Defendants.   Because each class member's relief is entirely dependent on whether his or her health insurance is provided by a local defendant or a diverse defendant, only a subset of the entire class seeks significant relief

24

from the local Defendants.   For example, because both Jacob Candelaria and Ariel McDougal have health insurance through BCBSNM (a diverse defendant), they only seek damages from BCBSNM, and they seek a declaration that BCBSNM will in the future cover their medical cannabis costs.   They have no claim against a local defendant.   Plaintiffs therefore have not satisfied the "significant relief" component of the local controversy exception.

Second, even if Plaintiffs could satisfy the "significant relief" component of the local controversy exception, they have not satisfied the "significant basis" component of the local controversy exception.   The "significant basis" element requires Plaintiffs to prove that at least one local defendant is a defendant "whose alleged conduct forms a significant basis for the claims asserted by the proposed plaintiff class."   28 U.S.C. § 1332(d)(4)(A)(i)(II)(bb).   The significant basis requirement "relates the alleged conduct of the local defendant, on one hand, to all the claims asserted in the action, on the other."   *Kaufman*, 561 F.3d at 156.   "The provision does not require that the local defendant's alleged conduct form a basis of each claim asserted; it requires the alleged conduct to form a significant basis of all the claims asserted."   *Id*.   Where the complaint contains no information about the local defendant's conduct relative to the other defendants' conduct, plaintiffs fail to meet the requirement.   *See Kitchin v. Bridgeton Landfill, LLC*, 3 F.4th 1089, 1098 (8th Cir. 2021) ("Plaintiffs' allegations that Defendants all engaged in the same conduct giving rise to Plaintiffs' claims do not satisfy the significant-basis requirement."); *Opelousas Gen. Hosp. Auth. v. FairPay Solutions, Inc*., 655 F.3d 358, 361–62 (5th Cir. 2011) (because plaintiff's "complaint contains no information about the conduct of [the local defendant] relative to the conduct of the other defendants . . . as it relates to the claims of the putative class . . . or even [the] lead plaintiff," plaintiff failed to satisfy the "significant basis" component of the local controversy exception).

In this case, the Original Complaint says very little about the Defendants' conduct that gives rise to their alleged liability other than to assert that all Defendants failed to recognize that under New Mexico law, medical cannabis is a medically necessary behavioral/mental health service, and that the entire cost of medical cannabis should be covered by health insurance policies sold in New Mexico.   Doc. 1-1 ¶ 160; *see also* Doc. 37 at 10 ("[I]n this case it is undisputed that each of the Defendants has actually acted the same, in that each has not covered medical cannabis in violation of state law.").   There is no assertion that Defendants worked together to deny coverage for medical cannabis; indeed, there is no assertion that any Plaintiff sought coverage for medical cannabis under the terms of his or her policy and was denied.   *See generally* Doc. 1-1.   Nothing in the complaint suggests that the conduct of any local defendant is related to the conduct of any other defendant, or that a local defendant's conduct affected the claim against any diverse defendant.   The fact that all the Defendants acted the same—they all failed to recognize medical cannabis as a medically necessary behavioral/mental health service— is not sufficient to satisfy the "significant basis" component of the local controversy exception.

In addressing both the "significant relief" component and the "significant basis" component, the parties focus to some degree on what portion of the class is seeking relief from the local Defendants compared to the diverse Defendants, and whether the local Defendants' conduct is a significant basis for a significant portion of the Plaintiffs' claims.   *See, e.g.*, Doc. 24 at 10; Doc. 31 at 20–25; Doc. 37 at 9–11.   In doing so, however, both parties rely on the FAC. *See id.*   The Original Complaint, however, says nothing about the portion of the class who is seeking relief from the local Defendants compared to the portion seeking relief from the diverse Defendants.   Thus, the Original Complaint does not provide a basis for the Court to make these comparisons.

26

Because Plaintiffs have failed to prove by a preponderance of the evidence that the local controversy exception to CAFA applies, I recommend that the Court deny Plaintiffs' Motion to Remand (Doc. 24).   Because I recommend that the Court deny the Motion to Remand, a surreply to Plaintiffs' Reply in Support of Remand is unnecessary.   I therefore also recommend that the Court deny Defendants' Motion for Leave to File a Surreply (Doc. 39).

### C.  Plaintiffs' Second Motion to Remand

Plaintiffs argue in their Second Motion to Remand that the Court should remand because the Court lacks subject matter jurisdiction over this case.   Doc. 40 at 1.   This argument relies entirely on Plaintiffs' argument that because CAFA requires minimal diversity, and because "there is a significant question as to the identity and citizenship of the proper [BCBSNM] defendant in this matter," the Court lacks subject matter jurisdiction, or at least Plaintiffs should be able to conduct discovery on whether BCBSNM is a citizen of New Mexico.   *Id.* at 1–2. The Court should reject this argument for at least two reasons.

First, and as discussed at length above, in a removed case, the propriety of removal and the Court's jurisdiction is determined based on the complaint as it stood at removal.   When this case was removed, there is no dispute that Cigna—"a foreign corporation with its principal place of business located [in] Philadelphia," Doc. 1-1 ¶ 23—provided the minimal diversity required for removal under CAFA.   Whether BCBSNM also is a foreign corporation is not necessary to the determination that the Court has jurisdiction under CAFA based on minimal diversity.

Although Plaintiffs argue that the Court may disregard Cigna in determining whether minimal diversity existed at the time of removal, Doc. 40 at 5, the Court should reject this argument as well.   As discussed above, Plaintiffs dropped Cigna from this case in an effort to avoid federal question jurisdiction under ERISA, which is not permitted.   The Court therefore

27

may consider Cigna in determining whether minimal diversity existed at the time of removal. Defendants meet the minimal diversity requirement under CAFA.

Second, Defendants have met their burden of proving by a preponderance of the evidence that when the Original Complaint was filed, BCBSNM was (and still is) an unincorporated division of Health Care Service Corporation ("HCSC"), which is a citizen of Illinois, not New Mexico. *See* Doc. 1-3; Doc. 1-4; Doc. 43 at 29–31. They have shown by a preponderance of the evidence that BCBSNM is not a separate legal entity, and that HCSC administers Blue Cross Blue Shield health plans in New Mexico, including the two plans in which two Representative Plaintiffs, Plaintiffs Jacob Candelaria and Ariel McDougal, are enrolled. Doc. 1-3 at 2; Doc. 43 at 30. Minimal diversity therefore exists between BCBSNM and Plaintiffs. No further discovery is necessary. The Court should deny Plaintiffs' Second Motion to Remand (Doc. 40).

III. **Conclusion**

For the foregoing reasons, I recommend that the Court DENY both Plaintiffs' Motion to Remand (Doc. 24) and Plaintiffs' Second Motion to Remand or Alternatively Motion for Leave to Conduct Discovery to Determine Subject Matter Jurisdiction (Doc. 40). I also recommend that the Court DENY Defendants' Motion to Disregard New Evidence and Arguments in Plaintiffs' Reply in Support of Remand, or in the Alternative, for Leave to File a Surreply (Doc. 39) as unnecessary.

**THE PARTIES ARE FURTHER NOTIFIED THAT WITHIN 14 DAYS OF SERVICE of a copy of these Proposed Findings and Recommended Disposition they may file written objections with the Clerk of the District Court pursuant to 28 U.S.C. § 636(b)(1).   Written objections must be both timely and specific.   *United States v. One Parcel of Real Prop., With Buildings, Appurtenances, Improvements, & Contents, Known as: 2121 E. 30th St., Tulsa, Oklahoma*, 73 F.3d 1057, 1060 (10th Cir. 1996).   A party must file any objections with the Clerk of the District Court within the fourteen-day period if that party wants to have appellate review of the proposed findings and recommended disposition.   Failure to file timely and specific objections will result in waiver of *de novo* review by a district or appellate court.   In other words, if no objections are filed, no appellate review will be allowed.**

Laura Fashing
United States Magistrate Judge