## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW MEXICO

NEW MEXICO TOP ORGANICS—ULTRA  )
HEALTH, INC., and JACOB R.  )
CANDELARIA, MATIAS TRUJILLO, as  )
father and guardian of MT, a minor, ERICA  )
ROWLAND, and ARIEL McDOUGAL, on  )
behalf of themselves and all others similarly  )
situated,  )
                                )
         Plaintiffs,  )    Civil Action No.: 1:22-cv-00546-MV-LF
                                )
    v.  )
                                )
BLUE CROSS AND BLUE SHIELD OF NEW  )
MEXICO, PRESBYTERIAN HEALTH PLAN,  )
INC., and WESTERN SKY COMMUNITY  )
CARE, INC.,  )
                                )
         Defendants.  )

## DEFENDANTS' COMBINED MOTION TO DISMISS
## PLAINTIFFS' FIRST AMENDED COMPLAINT

**TABLE OF CONTENTS**

**Page**

INTRODUCTION ................................................................................................. 1

BACKGROUND .................................................................................................. 2

I. THE PARTIES.............................................................................................. 2

II. CANNABIS IS ILLEGAL UNDER FEDERAL LAW.................................. 3

III. DEFENDANTS CONTRACT WITH NEW MEXICO'S HUMAN
SERVICES DEPARTMENT TO DELIVER FEDERALLY FUNDED
MEDICAID BENEFITS................................................................................ 3

IV. DEFENDANTS COVER BENEFITS ACCORDING TO THEIR MEMBER
HANDBOOKS AND BENEFIT BOOKLETS. ............................................ 4

    A. Defendants' Medicaid Plans Only Cover Medically Necessary FDA-
Approved Drugs or Medications.................................................... 4

    B. BCBSNM Administered Self-Funded Plans Generally Only Cover
Medically Necessary FDA-Approved Drugs or Medications................ 6

V. SB317 PROHIBITS CERTAIN NEW MEXICO HEALTH INSURANCE
PLANS FROM IMPOSING COST-SHARING FOR COVERED
BEHAVIORAL HEALTH SERVICES.......................................................... 7

VI. PLAINTIFFS FILE THIS ACTION SEEKING COVERAGE FOR
CANNABIS UNDER SB317. ....................................................................... 8

LEGAL STANDARD........................................................................................... 9

ARGUMENT ....................................................................................................... 9

I. NEW MEXICO LAW DOES NOT REQUIRE DEFENDANTS TO COVER
PLAINTIFFS' MEDICAL CANNABIS (ALL COUNTS)............................. 9

    A. SB317 Does Not Apply to Plaintiffs' Medicaid and Self-Funded
Plans.................................................................................................. 9

    B. SB317 Does Not Compel Coverage of Medical Cannabis. ................... 10

    C. No Other New Mexico Authority Compels Defendants to Cover
Cannabis............................................................................................ 12

II. ANY STATE LAW MANDATING CANNABIS COVERAGE IS
PREEMPTED (ALL COUNTS)..................................................................... 13

    A. Defendants Cannot Possibly Comply with Both Federal Law and
Plaintiffs' Interpretation of State Law. .............................................. 14

        1. Federal Law Dictates That the Impossibility Doctrine
Applies. ...................................................................................... 14

        2. State Appellate Court Cases Do Not Preclude the
Impossibility Doctrine. .............................................................. 16

    B.     Compelling Cannabis Coverage Is an Obstacle to Congress's Objectives. ...................................................................................... 17

           1.     Compelling Coverage of Cannabis Is an Obstacle to the CSA................. 18

           2.     Compelling Coverage of Cannabis Is an Obstacle to the Medicaid Act........................................................................................ 19

III.    SB317 IS NOT PRIVATELY ENFORCEABLE (COUNT ONE). ................................. 21

IV.    PLAINTIFFS FAIL TO STATE A CLAIM FOR BREACH OF CONTRACT (COUNT TWO). ...................................................................... 22

V.    DEFENDANTS DID NOT BREACH ANY IMPLIED COVENANT (COUNT THREE). .................................................................................... 24

VI.    PLAINTIFFS FAIL TO STATE AN UNFAIR PRACTICES ACT VIOLATION (COUNT FOUR). .................................................................... 24

VII.    PLAINTIFFS' INSURANCE CODE TRADE PRACTICES ACT CLAIM FAILS (COUNT FIVE). ............................................................................. 25

VIII.    PLAINTIFFS CANNOT RECOVER FOR UNJUST ENRICHMENT (COUNT SIX)............................................................................................ 26

IX.    PLAINTIFFS HAVE NO RIGHT TO DECLARATORY RELIEF (COUNT SEVEN). ...................................................................................... 27

CONCLUSION............................................................................................. 27

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Albuquerque Pub. Sch. v. Sledge*,
  No. CV 18-1029 KK/LF, 2019 U.S. Dist. LEXIS 133504 (D.N.M. Aug. 8,
  2019) .................................................................................................................15, 16, 19

*Amisub, Inc. v. Colo. Dep't of Soc. Servs.*,
  879 F.2d 789 (10th Cir. 1989) .............................................................................20

*Apodaca v. Young Am. Ins. Co.*,
  No. CIV 18-0399 JB/JHR, 2023 U.S. Dist. LEXIS 204861 (D.N.M. Nov. 15,
  2023). ...............................................................................................................24, 25

*Arizona v. U.S.*,
  567 U.S. 387 (2012) ..............................................................................................20

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009) ................................................................................................9

*Bell Atl. Corp. v. Twombly*,
  550 U.S. 544 (2007) ................................................................................................9

*Burroughs v. Bd. of County Comm'rs*,
  1975-NMSC-051 .....................................................................................................11

*Colo. Dept. of Pub. Health & Env't v. U.S.*,
  693 F.3d 1214 (10th Cir. 2012) .......................................................................19, 21

*Cordova v. World Fin. Corp.*,
  2009-NMSC-021 .....................................................................................................25

*Crosby v. Nat'l Foreign Trade Council*,
  530 U.S. 363 (2000) ....................................................................................14, 17, 18

*Donelson v. U.S.*,
  730 F. App'x 597 (10th Cir. 2018) .......................................................................10

*Eisert v. Archdiocese of Santa Fe*,
  2009-NMCA-042 .....................................................................................................21

*El Castillo Ret. Residences v. Martinez*,
  2017-NMSC-026 .....................................................................................................12

*Elliott Indus. v. BP Am. Prod. Co.*,
  407 F.3d 1091 (10th Cir. 2005) .............................................................................26

*Fish v. Kobach,*
  840 F.3d 710 (10th Cir. 2016) ............................................................................12

*Garcia v. Tractor Supply Co.,*
  154 F. Supp. 3d 1225 (D.N.M. 2016) ............................................................16, 17

*GFF Corp. v. Assoc. Wholesale Grocers,*
  130 F.3d 1381 (10th Cir. 1997) ...........................................................................9

*Gonzales* v. *Oregon,*
  546 U.S. 243 (2006)............................................................................................18

*Gonzales v. Raich,*
  545 U.S. 1 (2005)....................................................................................... *passim*

*Grebe v. State Farm Ins.,*
  No. 01-833 WWD/KBM, 2002 U.S. Dist. LEXIS 30447 (D.N.M. Apr. 3,
  2002) ...................................................................................................................24

*Hemphill v. Liberty Mut. Ins. Co.,*
  No. CV 10-861, 2013 U.S. Dist. LEXIS 200109 (D.N.M. Mar. 28, 2013) ..........15

*Hern v. Beye,*
  57 F.3d 906 (10th Cir. 1995) ............................................................................3, 4

*In re Curaleaf Holdings, Inc. Sec. Litig.,*
  519 F. Supp. 3d 99 (E.D.N.Y. 2021) ...............................................................3, 15

*Krumm v. Holder,*
  No. 13CV0562, 2014 U.S. Dist. LEXIS 178064 (D.N.M. Mar. 19, 2014),
  *aff'd*, 594 F. App'x 497 (10th Cir. 2014)............................................................18

*Landavazo v. Sanchez,*
  1990-NMSC-114...................................................................................................11

*Lewis v. Am. Gen. Media,*
  2015-NMCA-090...................................................................................................17

*M.G. v. Scrase,*
  637 F. Supp. 3d 1238 (D.N.M. 2022) .................................................................22

*Melnick v. State Farm Mut. Auto. Ins. Co.,*
  1988-NMSC-012...................................................................................................24

*Mut. Pharm. Co. v. Bartlett,*
  570 U.S. 472 (2013)............................................................................................14

*New Mexico v. GE*,
    335 F. Supp. 2d 1185 (D.N.M. 2004) ................................................................11

*Ontiveros Insulation Co. v. Sanchez*,
    2000-NMCA-51 ..................................................................................................26

*Patterson v. Globe American Cas. Co.*,
    1984-NMCA-076 ................................................................................................21

*Peck v. Progressive N. Ins. Co.*,
    665 F. Supp. 3d 1248 (D.N.M. 2023) ...........................................................9, 26

*Rawers v. U.S.*,
    488 F. Supp. 3d 1059 (D.N.M. 2020) ................................................................17

*Robey v. Parnell*,
    2017-NMCA-038 ................................................................................................25

*Rodarte v. Presbyterian Ins. Co.*,
    2016-NMCA-051 ................................................................................................23

*Rosemond v. United States*,
    572 U.S. 65 (2014).............................................................................................14

*Sacred Garden, Inc. v. New Mexico Taxation & Revenue Dep't*,
    2021-NMCA-038 ................................................................................................13

*Salazar v. PennyMac Mortg. Inv. Trust Holdings I, LLC*,
    No. 19-517 KF/LF, 2019 U.S. Dist. LEXIS 158312 (D.N.M. Sept. 17, 2019) .......................27

*Sensoria, LLC v. Kaweske*,
    581 F. Supp. 3d 1243 (D. Colo. 2022)...........................................................3, 17

*Sessions v. New Mexico*,
    No. 20-cv-606 MV/KRS, 2022 U.S. Dist. LEXIS 195806 (D.N.M. Oct. 26,
    2022) ..................................................................................................................24

*Slack v. Robinson*,
    2003-NMCA-083 ................................................................................................26

*Spier v. Coloplast Corp.*,
    121 F. Supp. 3d 809 (E.D. Tenn. 2015)..............................................................9

*Tweed v. CitiMortgage, Inc.*,
    No. CIV 17-0336, 2017 U.S. Dist. LEXIS 62070 (D.N.M. Apr. 24, 2017) ..........................22

*U.S. v. Anzures*,
    No. CR 10-3461 JCH, 2018 U.S. Dist. LEXIS 94305 (D.N.M. June 5, 2018) .......................17

*U.S. v. Baldwin,*
   541 F. Supp. 2d 1184 (D.N.M. 2008) ................................................................................12

*U.S. v. Oakland Cannabis Buyers' Co-op.,*
   532 U.S. 483 (2001) .............................................................................................................15

*U.S. v. Ron Pair Enters.,*
   489 U.S. 235 (1989) .............................................................................................................11

*United States v. Supreme Court,*
   839 F.3d 888 (10th Cir. 2016) ............................................................................................13

*Vialpando v. Ben's Auto. Servs.,*
   2014-NMCA-084 ..........................................................................................................13, 16

*Ward v. Convergys Inc.,*
   No. 1:10-cv-21 WJ/WDS, 2010 U.S. Dist. LEXIS 152288 (D.N.M. Apr. 30,
   2010) ................................................................................................................................21, 22

*Warth v. Seldin,*
   422 U.S. 490 (1975) .............................................................................................................10

*Woodard v. Fid. Nat'l Title Ins. Co.,*
   No. CIV 06-1170 RB/WDS 2007 U.S. Dist. LEXIS 97455 (D.N.M. Dec. 4,
   2007 ........................................................................................................................................21

*Woods v. Std. Ins. Co.,*
   771 F.3d 1257 (10th Cir. 2014) ..........................................................................................11

*Wos v. E.M.A.,*
   568 U.S. 627 (2013) .............................................................................................................14

**Statutes**

18 U.S.C. § 2(a) .........................................................................................................................14

21 U.S.C. § 801(1) .....................................................................................................................18

21 U.S.C. § 812(b) .......................................................................................................................3

21 U.S.C. § 812(c) .......................................................................................................................3

21 U.S.C. § 841(a)(1) .................................................................................................................14

21 U.S.C. § 903 ..........................................................................................................................14

42 U.S.C. § 1320a-7a(a)(1)(E) ..................................................................................................15

42 U.S.C. § 1396r–8(a) .............................................................................................................20

42 U.S.C. § 1396r-8(g)(1)(A) ................................................................................4, 15, 20

42 U.S.C. § 1396r-8(k)(2)(A) ..........................................................................5, 13, 15, 20

42 U.S.C. § 1396w-3a(a) ....................................................................................................20

42 U.S.C. § 1396w-3a(h)(1) ..............................................................................................20

NMSA 1978, § 26-2B-1 *et seq.* ......................................................................................3, 12

NMSA 1978, § 32A-1-22 ...................................................................................................12

NMSA 1978, § 52-1-49(A) .................................................................................................13

NMSA 1978, § 57-12-2(E) .................................................................................................25

NMSA 1978, § 59A-2-1 ..................................................................................................7, 10

NMSA 1978, § 59A-2-11 ....................................................................................................22

NMSA 1978, § 59A-18-12 ..................................................................................................21

NMSA 1978, § 59A-18-14 ..................................................................................................21

NMSA 1978, § 59A-22-34.3 ...............................................................................................11

NMSA 1978, § 59A-22-57 .....................................................................................................1

NMSA 1978, § 59A-22-57 ...............................................................................................7, 11

NMSA 1978, §§ 59A-22-57, 59A-23-16, 59A-46-57, 59A-47-51...................................10, 11, 21

NMSA 1978, § 59A-57-10 ...............................................................................................4, 10

**Rules**

Fed. R. Civ. P. 8(a)(2)...........................................................................................................9

**Other Authorities**

42 C.F.R. § 438.3(f)(1) ..........................................................................................................4

BCBSNM Drug List Formulary, available at
   https://www.bcbsnm.com/community-centennial/pdf/cc-drug-list-nm.pdf; ............................5

BCBSNM Medicaid Prescription Drug Claim Form, available at https://
   www.bcbsnm.com/community-centennial/pdf/cc-rx-claim-form-nm.pdf................................6

BCBSNM Member Handbook, available at https://www.bcbsnm.com/community-centennial/pdf/cc-member-handbook-nm.pdf, p. 27.............................................................4, 5

BCBSNM Prescription Drug Lists, available at https://www.bcbsnm.com/rx-drugs/drug-lists/drug-lists ...........................................................................................7

*Finance Facts – Medicaid*, NEW MEXICO LEGISLATIVE FINANCE COMMITTEE, available at https://www.nmlegis.gov/entity/lfc/Documents/Finance_Facts/finance%20facts%20medicaid.pdf.................................................................................................................4

New Mexico Benchmark Plan https://www.cms.gov/files/zip/new-mexico-bmp-documents.zip .......................................................................................................................7

*New Mexico Dispensaries*, ULTRA HEALTH, available at https://ultrahealth.com/new-mexico-dispensaries/...................................................................2

*No Behavioral Health Cost Sharing*, OSI, available at https://www.osi.state.nm.us/pages/bureaus/ consumer/resources/no-behavioral-health-cost-sharin...........................................................................................22

PHP Centennial Care Prescription Drug Reimbursement Claim Form, available at https://onbaseext.phs.org/PEL/DisplayDocument?ContentID=OB_000000024793 ...................................................6

PHP Drug Formulary, available at https://onbaseext.phs.org/PEL/DisplayDocument?ContentID=PEL_00175507 .......................6

PHP Member Handbook, available at https://onbaseext.phs.org/PEL/DisplayDocument?ContentID=OB_000000024084, p. 5 ..........................................5

U.S. Const. art. IV...................................................................................................................11

Western Sky Member Handbook, available at https://www.westernskycommunitycare.com/content/dam/centene/newmexico/Medicaid/PDFs/WSCC_Member%20Handbook_2023_F.pdf .............................................5

Western Sky Preferred Drug List, available at https://pharmacy.envolvehealth.com/content/dam/centene/envolve-pharmacysolutions/pdfs/PDL/ FORMULARY-WesternSkyCommunityCare.pdf ...............................................................................5

## INTRODUCTION

Plaintiffs'[1] putative class action contends that New Mexico state law – specifically, Senate Bill 317 – requires Defendants[2] and other New Mexico Medicaid and commercial health plans to cover and pay for their medical cannabis. Plaintiffs are wrong. Senate Bill 317, which does not even apply to Plaintiffs' plans, merely prohibits applicable health plans from imposing cost sharing (*e.g.*, copayments, coinsurance) on "those behavioral health services" covered by the plan. *E.g.*, NMSA 1978, § 59A-22-57. Neither Senate Bill 317, nor any other state authority, contains a benefit mandate that compels Defendants to cover or pay for cannabis. This alone bars Plaintiffs' lawsuit, as <u>all</u> of Plaintiffs' causes of action depend on their incorrect interpretation of state law.

Independently, federal law would preempt any state law mandating coverage of medical cannabis. Defendants cannot possibly comply with both Plaintiffs' incorrect interpretation of state law and the federal Controlled Substance Act ("CSA"), which deems that cannabis is illegal and has no accepted medical uses, or the federal Medicaid Act, which limits Medicaid coverage to medically necessary FDA approved drugs (cannabis is neither). Compelling cannabis coverage also stands as an obstacle to Congress's objectives in passing the CSA and Medicaid Act.

Separate from these dispositive issues, each of Plaintiffs' causes of action fails because:

**Senate Bill 317 is not privately enforceable (Count One).** Nothing in Senate Bill 317 or the Insurance Code suggests that the legislature intended to grant Plaintiffs a private action.

**Plaintiffs cannot state a claim for breach of contract (Count Two).** Plaintiffs do not and cannot allege that they complied with, or that Defendants breached, their terms of coverage.

---

[1] "Plaintiffs" are New Mexico Top Organics—Ultra Health, Inc. ("Ultra Health"), Jacob R. Candelaria, Matias Trujillo, as father and guardian of MT, a minor, Erica Rowland, and Ariel McDougal.

[2] "Defendants" are Blue Cross and Blue Shield of New Mexico, a division of Health Care Service Corporation ("BCBSNM"), Presbyterian Health Plan, Inc. ("PHP"), and Western Sky Community Care, Inc. ("Western Sky").

**Defendants did not breach the implied covenant of good faith and fair dealing (Count Three)** because they did not breach, and acted consistent with, the express terms of coverage.

**Defendants are not liable under the Unfair Practices Act (Count Four) or Insurance Code Trade Practices Act (Count Five)** because Plaintiffs fail to plead facts plausibly showing that Defendants violated NMSA 1978, §§ 57-12-2(E) or 59A-16-24(A).

**Unjust enrichment (Count Six)** fails, as coverage terms dictate the parties' relationship.

**Declaratory judgment (Count Seven)** fails without a viable substantive cause of action.

For all these reasons, Plaintiffs' action should be dismissed with prejudice.

## <u>BACKGROUND</u>

### I.   THE PARTIES

Plaintiff Ultra Health is the state's largest cannabis operator. *See* New Mexico *Dispensaries*, ULTRA HEALTH, available at https://ultrahealth.com/new-mexico-dispensaries/.

As of August 2022, Plaintiffs McDougal, Rowland, and Trujillo were enrolled in Medicaid managed care plans administered by BCBSNM, Western Sky, and PHP. *See* First Amended Complaint ("FAC," at ECF No. 22), ¶¶ 16-18, 33, 42, 48, 107. Plaintiff Candelaria was covered by a health care plan sponsored by his husband's employer and administered by BCBSNM. *See id.*, ¶¶ 15, 32. These Plaintiffs allege that they were "qualified patients" under the Lynn and Erin Compassionate Use Act, NMSA 1978, § 26-2B-1 *et seq.* ("LECUA"). *Id.*, ¶¶ 15-18.[3]

Defendants BCBSNM, PHP, and Western Sky are Medicaid managed care organizations ("MCOs") that administer Medicaid benefits for eligible New Mexicans. *See* FAC, ¶¶ 91-97. BCBSNM also administers benefits for employer-sponsored health plans. *See id.*, ¶¶ 15, 32.

---

[3] It is not clear whether the individual plaintiffs are still "qualified patients" under LECUA and maintain the same health care coverage today. *See, e.g.*, FAC, ¶ 38 (noting that in August 2022, Plaintiff Rowland was "temporarily unemployed" but "actively working to start a new business in the cannabis industry").

## II.     CANNABIS IS ILLEGAL UNDER FEDERAL LAW.

The federal CSA designates marijuana and other tetrahydrocannabinols as Schedule I drugs. 21 U.S.C. § 812(c). According to the CSA, Schedule I drugs have (A) a high potential for abuse, (B) no currently accepted medical use in treatment, and (C) "a lack of accepted safety for use of the drug or other substance under medical supervision." 21 U.S.C. § 812(b). "By classifying marijuana as a Schedule I drug, as opposed to listing it on a lesser schedule, the manufacture, distribution, or possession of marijuana became a criminal offense . . ." *Gonzales v. Raich*, 545 U.S. 1, 14 (2005) (citations omitted). Consistent with the CSA, "[t]he United States Food and Drug Administration ['FDA'] has not approved marijuana as a safe and effective drug for any indication." *In re Curaleaf Holdings, Inc. Sec. Litig.*, 519 F. Supp. 3d 99, 103-06 (E.D.N.Y. 2021).

New Mexico's LECUA permits "qualified patients" to purchase cannabis in New Mexico for certain medical purposes. *See* FAC, ¶¶ 50-55; *see also* NMSA 1978, § 26-2B-1 *et seq.* Still, "the CSA continues to apply in full force even in states that have decriminalized marijuana." *Sensoria, LLC v. Kaweske*, 581 F. Supp. 3d 1243, 1258 (D. Colo. 2022). For those who choose to participate in the state's cannabis program directly or indirectly, New Mexico law admonishes:

> The activities described in these rules may be considered a violation of federal law. Persons cultivating, manufacturing, collecting samples of, testing, selling, purchasing, or otherwise receiving cannabis or cannabis products may be subject to federal sanctions for what may otherwise be considered authorized conduct in the State of New Mexico, and compliance with the rule does not exempt licensees, their employees or customers from possible federal prosecution.

16.8.1.9 NMAC.

## III.    DEFENDANTS CONTRACT WITH NEW MEXICO'S HUMAN SERVICES DEPARTMENT TO DELIVER FEDERALLY FUNDED MEDICAID BENEFITS.

"Medicaid [is] a jointly funded federal-state program designed to finance medical care for indigent Americans." *Hern v. Beye*, 57 F.3d 906, 909 (10th Cir. 1995); FAC, ¶¶ 91-97. States that receive federal funding for Medicaid must comply with applicable federal laws and federal

regulations issued by the Centers for Medicare & Medicaid Services. *Hern*, 57 F.3d at 909. "The federal government pays approximately 74 percent of traditional Medicaid costs in New Mexico."[4]

New Mexico's Human Services Department ("HSD") administers the state's Medicaid program, Centennial Care 2.0, by contracting with each of the Defendants to deliver health benefits and other services to eligible New Mexicans. *See* FAC, ¶¶ 94-97, 103. As the agency administering Centennial Care 2.0, HSD "shall have sole authority to determine, establish and enforce [M]edicaid eligibility criteria, the scope, definitions and limitations of [M]edicaid benefits and the minimum qualifications or standards for [M]edicaid service providers." NMSA 1978, § 59A-57-10. Consistent with federal regulations, HSD's Medicaid Managed Care Services Agreements ("MMCSAs") with Defendants require, among other things, that Defendants "comply with all applicable Federal and State laws and regulations." FAC, ¶¶ 105, 133; *see* 42 C.F.R. § 438.3(f)(1).

## IV. DEFENDANTS COVER BENEFITS ACCORDING TO THEIR MEMBER HANDBOOKS AND BENEFIT BOOKLETS.

### A. Defendants' Medicaid Plans Only Cover Medically Necessary FDA-Approved Drugs or Medications.

Defendants' Medicaid plans only cover benefits consistent with federal law, among other limitations, as set forth in their publicly available member handbooks. For example, under the federal Medicaid Act, 42 U.S.C. § 1396 *et seq.*, benefits must be medically necessary. *E.g.*, *id* § 1396r-8(g)(1)(A) (states must ensure that prescriptions "are medically necessary," among other things). Thus, Defendants only cover medically necessary items and services. BCBSNM Member Handbook, available at https://www.bcbsnm.com/community-centennial/pdf/cc-member-handbook-nm.pdf, p. 27 ("Centennial Care does not cover services that are not medically necessary . . . BCBSNM determines whether a service or supply is medically necessary and whether it is

---

[4]  *Finance Facts – Medicaid*, NEW MEXICO LEGISLATIVE FINANCE COMMITTEE, available at https://www.nmlegis.gov/entity/lfc/Documents/Finance_Facts/finance%20facts%20medicaid.pdf.

covered . . .."); PHP Member Handbook, available at https://onbaseext.phs.org/PEL/ DisplayDocument?ContentID=OB_000000024084, p. 5 ("For your benefit to be covered, it must be 'medically necessary' (needed)."); Western Sky Member Handbook, available at https:// www.westernskycommunitycare.com/content/dam/centene/newmexico/Medicaid/PDFs/WSCC_ Member%20Handbook_2023_F.pdf, p. 63 ("Covered services . . . must be medically necessary.").

Similarly, under the Medicaid Act, the Medicaid program only covers drugs and medications that have been "approved for safety and effectiveness as a prescription drug" by the FDA. 42 U.S.C. § 1396r-8(k)(2)(A). Thus, Defendants' coverage terms specify that "[d]rugs, medicines, drug combinations or devices not approved by the FDA" are not covered. BCBSNM Member Handbook, pp. 52-53; *see id.*, pp. 25-26 (devices, drugs, or medicines that "cannot be marketed lawfully without approval of the [FDA], and approval for marketing has not been given," are not eligible for coverage); PHP Member Handbook, pp. 185-86 (same); Western Sky Member Handbook, p. 43 (only "[p]rescription medications and over-the-counter (OTC) items approved by the [FDA]" are covered); *id.*, p. 41 ("Medical marijuana" is not a covered benefit).

As part of their coverage terms and description of benefits, Defendants also maintain publicly available "Drug Lists" that specify the FDA-approved drugs and medications eligible for coverage. "Centennial Care will usually cover only the drugs on the Drug List." BCBSNM Member Handbook, p. 50. Drugs and medications that are not on a Defendant's Drug Lists require Defendant's "prior authorization" to be considered for coverage. *Id.*; *see* PHP Member Handbook, pp. 43-44; Western Sky Member Handbook, pp. 80-81. Cannabis is not on any Defendant's Drug List. *See* BCBSNM Drug List Formulary, available at https://www.bcbsnm.com/community-centennial/pdf/cc-drug-list-nm.pdf; Western Sky Preferred Drug List, available at https://pharmacy.envolvehealth.com/content/dam/centene/envolve-pharmacysolutions/pdfs/PDL/

FORMULARY-WesternSkyCommunityCare.pdf; PHP Drug Formulary, available at https://onbaseext.phs.org/PEL/DisplayDocument?ContentID=PEL_00175507.

To obtain benefits, members or their providers must submit a claim to Defendant. *E.g.*, BCBSNM Medicaid Prescription Drug Claim Form, available at https://www.bcbsnm.com/community-centennial/pdf/cc-rx-claim-form-nm.pdf; PHP Centennial Care Prescription Drug Reimbursement Claim Form, available at https://onbaseext.phs.org/PEL/DisplayDocument?ContentID=OB_000000024793; Western Sky Member Handbook, pp. 77-78.

When members receive an "Adverse Benefit Determination" that denies or limits benefits sought via a prior authorization request or claim, they "have to appeal within 60 calendar days from the date of the Adverse Benefit Determination Letter." BCBSNM Member Handbook, p. 73; *see* PHP Member Handbook, p. 111; Western Sky Member Handbook, pp. 91-92.

## B.  BCBSNM Administered Self-Funded Plans Generally Only Cover Medically Necessary FDA-Approved Drugs or Medications.

BCBSNM also administers self-funded employer-sponsored health plans. *See* FAC, ¶¶ 15, 32; Benefit Booklet for Jacob Candelaria, attached as **Exhibit A**, at p. 3 ("BCBSNM . . . is pleased to serve as the Claims Administrator for The Regents of the University of New Mexico . . . self-funded Health Care Benefit Plan."). These health plans generally only cover medically necessary items and services. *E.g.*, **Ex. A**, p. 4 ("In order to receive benefits: services must be covered and Medically Necessary . . . services not Medically Necessary will be denied.").

Also like BCBSNM's Medicaid plans, these health plans typically specify that to be eligible for coverage, "[a]ll prescription Drugs, Medicines, and Devices must be approved by the FDA." *E.g.*, **Ex. A**, p. 17; *see also, e.g.*, *id.*, p. 5 (devices, drugs, or medicines that "cannot be marketed lawfully without approval of the [FDA], and approval for marketing has not been given,"

are not eligible for coverage). Notably, these terms are consistent with the New Mexico Benchmark Plan. *See* https://www.cms.gov/files/zip/new-mexico-bmp-documents.zip, at pp. 37, 41-42.[5]

Further like its Medicaid plans, these plans generally use publicly available Drug Lists that identify drugs covered by the plan "unless specifically excluded." *E.g.*, **Ex. A**, p. 18; BCBSNM Prescription Drug Lists, available at https://www.bcbsnm.com/rx-drugs/drug-lists/drug-lists. Cannabis is not on BCBSNM's Drug Lists. *See id.* To obtain benefits for drugs not listed on BCBSNM's Drug Lists, members must request an exception from BCBSNM. *E.g.*, **Ex. A**, p. 18.

In addition, BCBSNM administered self-funded plans require beneficiaries to file a claim to receive benefits for services covered by the plan. *See, e.g.*, **Ex. A**, pp. 6-9. If a claim or prior authorization is denied, members must appeal within 180 days. *See id.*, pp. 10-16.

## V.     SB317 PROHIBITS CERTAIN NEW MEXICO HEALTH INSURANCE PLANS FROM IMPOSING COST-SHARING FOR COVERED BEHAVIORAL HEALTH SERVICES.

In 2021, Senate Bill 317 was codified in the New Mexico Insurance Code as NMSA 1978, §§ 59A-22-57, 59A-23-16, 59A-46-57, 59A-47-51 ("SB317"). FAC, ¶¶ 74, 77. SB317 states:

> Until January 1, 2027, an individual or group health insurance policy, health care plan or certificate of health insurance that is delivered, issued or renewed in this state that offers coverage of behavioral health services shall not impose cost sharing on those behavioral health services.

*E.g.*, NMSA 1978, § 59A-22-57; *see also* FAC, ¶ 78.

The Office of Superintendent of Insurance ("OSI") supervises and regulates health insurance plans in New Mexico subject to the state's Insurance Code. *See* NMSA 1978, § 59A-2-1. When the Legislature passes a new statute in the Insurance Code, OSI may "publish general notice of requirements under the law" and/or "issue orders generally applicable to large numbers of insurers." 13.1.2.6 NMAC. Regarding SB317, OSI specified:

---

[5] Benchmark plans set forth the essential health benefits that non-grandfathered individual and small group health plans cover. Plaintiffs do not and cannot allege that any Plaintiff's plan must follow the New Mexico Benchmark Plan.

> ***These directives apply to cost-sharing policies.*** Carriers may continue to apply their plans' drug formulary policies, prior authorization and utilization management policies, and other drug coverage policies. For example, if a carrier's formulary covers the generic version of a brand drug, there is nothing in the bill or in this guidance that would require the carrier to pay for the brand name product.

Bulletin 2021-009, OSI, available at https://www.osi.state.nm.us/wp-content/uploads/2021/06/ Bulletin-2021-009.pdf (emphasis added).

> OSI also clarified that consistent with SB317's enactment as part of the Insurance Code:

> The no BH cost-sharing provisions of Senate Bill 317 apply to individual and small group health plans sold on the New Mexico Health Insurance Marketplace (the Exchange, or beWellnm), fully-insured individual, small group and large group plans sold off the Exchange, and state and public employee health plans . . . The BH cost-sharing prohibitions of SB317 do not apply to self-insured insurance plans . . .

NOTICE: CLARIFICATION OF ELIGIBILITY FOR BEHAVIORAL HEALTH COST-SHARING, OSI, available at https://www.osi.state.nm.us/wp-content/uploads/2022/01/ Clarification-of-Eligibility-for-No-BH-Cost-Sharing.pdf (footnotes omitted).

## VI.   PLAINTIFFS FILE THIS ACTION SEEKING COVERAGE FOR CANNABIS UNDER SB317.

On June 10, 2022, Plaintiffs and others filed a putative class action complaint against Defendants and others in state court, seeking damages and declaratory relief to compel Medicaid and health insurance plans in New Mexico to pay for cannabis distributed under the LECUA. *See* ECF No. 1-1, ¶¶ 13, 160(e); *id.*, Prayer for Relief, p. 31. Plaintiffs brought seven causes of action, all of which depend on their assertion that SB317 requires New Mexico health plans to cover the cost of medical cannabis. *See id.*, ¶¶ 164-66, 171-72, 176-77, 182-83, 189-90, 196-97, 204.

On August 19, 2022, Plaintiffs filed the FAC, seeking the same relief on the same grounds as the original complaint. *Compare* ECF No. 1-1 *with* FAC. Plaintiffs again bring seven causes of action, all of which depend on Plaintiffs' premise that SB317 requires Defendants to cover medical cannabis under Plaintiffs' health plans. FAC, ¶¶ 126-27, 131-34, 138-39, 144, 151, 158-59, 166.

## LEGAL STANDARD

To survive a Rule 12(b)(6) motion, a complaint "must contain sufficient factual matter . . . to 'state a claim that is plausible on its face,'" independent of legal conclusions. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 547 (2007)). A complaint that merely alleges a "'possible'" or "conceivable" claim for relief is insufficient. *Iqbal*, 556 U.S. at 679-80 (quoting *Twombly*, 550 U.S. at 570)). Instead, a plaintiff must allege sufficient factual matter that **shows** he or she is entitled to relief. *Id.* at 679 (citing Fed. R. Civ. P. 8(a)(2)).

When evaluating a Rule 12(b)(6) motion, district courts may consider "documents [that] are central to the plaintiff's claim," as well as government publications. *Peck v. Progressive N. Ins. Co.*, 665 F. Supp. 3d 1248, 1257 n.1 (D.N.M. 2023) (considering insurance policy in insurance dispute); *see Spier v. Coloplast Corp.*, 121 F. Supp. 3d 809, 811 n.2 (E.D. Tenn. 2015) (taking "judicial notice of various publicly-available [FDA] documents"). "[F]actual allegations that contradict . . . a properly considered document are not well-pleaded facts that the court must accept as true." *GFF Corp. v. Assoc. Wholesale Grocers*, 130 F.3d 1381, 1385 (10th Cir. 1997).

## ARGUMENT

**I.    NEW MEXICO LAW DOES NOT REQUIRE DEFENDANTS TO COVER PLAINTIFFS' MEDICAL CANNABIS (ALL COUNTS).**

All of Plaintiffs' causes of action rely on their fundamentally flawed premise that SB317 obligates Defendants to cover the cost of medical cannabis as benefits to Plaintiffs' Medicaid and self-funded plans. However, SB317 does not apply to Plaintiffs' plans, and neither SB317, nor any other state authority, mandates health plan coverage for medical cannabis.

### A.    SB317 Does Not Apply to Plaintiffs' Medicaid and Self-Funded Plans.

Passed as part of the Insurance Code, SB317 plainly applies to certain types of **health insurance** plans and does not apply to Plaintiffs' Medicaid and self-funded plans. *See* NMSA

1978, §§ 59A-22-57, 59A-23-16, 59A-46-57, 59A-47-51. Indeed, OSI, the agency that supervises and regulates health plans subject to the Insurance Code, *see* NMSA 1978, § 59A-2-1, specified that SB317 only applies to (1) "individual and small group health plans sold on the New Mexico Health **Insurance** Marketplace," (2) "***fully-insured*** individual, small group and large group plans sold off the Exchange," and (3) "state and public school employee health plans." NOTICE: CLARIFICATION OF ELIGIBILITY FOR BEHAVIORAL HEALTH COST-SHARING, OSI, *supra* (emphasis added). OSI further explained that SB317 does not apply to self-insured plans, such as the self-funded plan to which Plaintiff Candelaria is a beneficiary. *Id.*; *see* **Ex. A**, p. 3.

SB317 also does not apply to Plaintiffs' Medicaid plans. *See id.* The New Mexico Legislature specified that HSD, not OSI, "shall have sole authority to determine, establish and enforce [M]edicaid eligibility criteria[ and] the scope, definitions and limitations of [M]edicaid benefits . . ." NMSA 1978, § 59A-57-10; *supra*, p. 4.

Because SB317 does not apply to any named Plaintiff's self-funded or Medicaid plan, all of Plaintiffs' causes of action fail, and the FAC should be dismissed. *See* FAC, ¶¶ 126-27, 131-34, 138-39, 144, 151, 158-59, 166; *see also Donelson v. U.S.*, 730 F. App'x 597, 601 (10th Cir. 2018) (in class actions, named plaintiffs "must allege and show that they personally have been injured . . .") (quoting *Warth v. Seldin*, 422 U.S. 490, 502 (1975) (internal quotes omitted)).

**B.    SB317 Does Not Compel Coverage of Medical Cannabis.**

Independent from its inapplicability to Plaintiffs, SB317 does not mandate coverage of any benefits. When interpreting a statute, the Court's "analysis must begin and end with the language of the statute itself, 'for where . . . the statute's language is plain, the sole function of the courts is to enforce it according to its terms.'" *Woods v. Std. Ins. Co.*, 771 F.3d 1257, 1263 (10th Cir. 2014) (quoting *U.S. v. Ron Pair Enters.*, 489 U.S. 235, 241 (1989)); *see Landavazo v. Sanchez*, 1990-NMSC-114, ¶ 14 ("A statute must be interpreted according to its plain meaning.").

SB317 states that applicable health plans offering "coverage of behavioral health services shall not impose cost sharing on those behavioral health services." *See* NMSA 1978, §§ 59A-22-57, 59A-23-16, 59A-46-57, 59A-47-51. According to its plain language and meaning, SB317 clearly provides that applicable plans cannot impose cost sharing (*e.g.*, copayments, coinsurance, etc.) on ***covered*** behavioral health services. *Id.* Indeed, OSI confirmed that SB317's "directives apply to cost-sharing policies," and "[c]arriers may continue to apply their plans' drug formulary policies, prior authorization and utilization management policies, and other drug coverage policies." Bulletin 2021-009, *supra*. As noted, cannabis is not covered by any Defendant's plan, is not on any Defendant's Drug List, and was not authorized by any Defendant. *See supra*, pp. 4-7.

Plaintiffs' interpretation that SB317 compels Defendants to cover and pay for cannabis – a drug that is illegal under federal law – is not supported by its plain language and meaning. Nothing in SB317 mandates coverage of any behavioral health services. *Compare* NMSA 1978, § 59A-22-57 *with, e.g.*, NMSA 1978, § 59A-22-34.3 ("Each individual and group health insurance policy . . . in this state ***shall provide coverage for*** childhood immunizations, as well as coverage for medically necessary booster doses . . .") (emphasis added); *see New Mexico v. GE*, 335 F. Supp. 2d 1185, 1207-08 (D.N.M. 2004) (New Mexico courts "'will not read into a statute or ordinance language which is not there, particularly if it makes sense as written'") (quoting *Burroughs v. Bd. of County Comm'rs*, 1975-NMSC-051, ¶ 14). SB317 does not even mention cannabis or LECUA. *See* NMSA 1978, § 59A-22-57. And if applied, Plaintiffs' interpretation would be unconstitutional by conflicting with federal law. *See* U.S. Const. art. IV ("[T]he laws of the United States . . . shall be the supreme law of the land."); *Fish v. Kobach*, 840 F.3d 710, 742 (10th Cir. 2016) ("A statute must be construed, if fairly possibly, so as to avoid not only the conclusion that it is unconstitutional but also grave doubts upon that score."); *El Castillo Ret. Residences v. Martinez*,

2017-NMSC-026, ¶ 25 ("A statute must be interpreted in harmony with constitutionally imposed limitations."); *see also infra*. "Rather than reading into or adding things that are not in [SB317] to render it unconstitutional, the Court should read the statute in a way, if at all possible, that upholds the statute's constitutionality." *U.S. v. Baldwin*, 541 F. Supp. 2d 1184, 1217 (D.N.M. 2008).

Because SB317 does not require Defendants to cover medical cannabis, all of Plaintiffs' causes of action fail, and the FAC should be dismissed with prejudice.

### C.    No Other New Mexico Authority Compels Defendants to Cover Cannabis.

The other state authorities Plaintiffs cobble together in the FAC also do not compel health plans to cover medical cannabis. Nothing in LECUA requires Defendants to cover the cost of Plaintiffs' cannabis. FAC, ¶¶ 50-57; *see* NMSA 1978, § 26-2B-1 *et seq.*; 16.8.1.9 NMAC (warning that participants in the state's medical cannabis program "may be subject to federal sanctions for what may otherwise be considered authorized conduct in the State of New Mexico"). Nor does the Children's Code – which merely precludes the state from taking certain adverse actions (*e.g.*, denying custody or visitation, school enrollment, or medical care) against LECUA participants – compel Defendants to cover medical cannabis. FAC, ¶ 63; *see* NMSA 1978, § 32A-1-22.

Moreover, no New Mexico case has ever held that Medicaid or self-funded health plans must cover medical cannabis. Plaintiffs cite a New Mexico Court of Appeals decision holding that a worker's compensation insurer must cover medical cannabis that a worker's compensation judge ("WCJ") deemed reasonable and necessary for the worker, FAC, ¶ 59, but worker's compensation insurers by law must reimburse all "reasonable and necessary health care services" as determined by the WCJ rather than health care services specified in member handbooks and limited by federal law. *Compare Vialpando v. Ben's Auto. Servs.*, 2014-NMCA-084, ¶¶ 10, 13 (citing NMSA 1978, § 52-1-49(A)) *with* 42 U.S.C. § 1396r-8(k)(2)(A); *supra*, pp. 4-7. Plaintiffs also cite to a New Mexico Court of Appeals case holding that medical cannabis met the definition of a "prescription

medication" in a tax statute, NMSA 1978, § 7-9-73.2, but that has no bearing on whether Defendants must cover the cost of medical cannabis in their health plans. FAC, ¶¶ 60-62; *Sacred Garden, Inc. v. New Mexico Taxation & Revenue Dep't*, 2021-NMCA-038, ¶ 14 (even if "medical marijuana is not a 'prescription drug' in other statutory contexts," "the definitions within the gross receipts tax provisions are controlling for the present purposes and we need not look further").

Further, nothing in the New Mexico Benchmark Plan requires coverage for cannabis. *See* FAC, ¶¶ 82-90, 100-02. To the contrary, and consistent with Defendants' plans, the New Mexico Benchmark Plan excludes coverage for drugs and medications like cannabis that require FDA approval but have not received it. *See* New Mexico Benchmark Plan, *supra*, at pp. 37, 41-42.[6]

In sum, neither SB317, nor any other state authority, mandates that Defendants cover the cost of Plaintiffs' cannabis. This warrants dismissal of the FAC with prejudice.

## II.   ANY STATE LAW MANDATING CANNABIS COVERAGE IS PREEMPTED (ALL COUNTS).

Independently, Plaintiffs' flawed interpretation of New Mexico law underlying all its causes of action must fail because it would be preempted by federal law. "Put simply, federal law preempts contrary state law." *United States v. Supreme Court*, 839 F.3d 888, 918 (10th Cir. 2016) (citation and quotations omitted). Under the Supremacy Clause in Article IV of the Constitution, "[i]f there is any conflict between federal and state law, federal law shall prevail." *Raich*, 545 U.S. at 29; *see* 21 U.S.C. § 903 (CSA preempts state law if "there is a positive conflict between [CSA] and that State law so that the two cannot consistently stand together."); *Wos v. E.M.A.*, 568 U.S. 627, 636 (2013) (holding that the Medicaid Act preempted conflicting state law).

---

[6] Plaintiffs suggest that medical cannabis should qualify generally as "Mental/Behavioral Health Outpatient Services and Inpatient Services," *see* FAC, ¶¶ 88-90, 101, but cannabis is not an inpatient or outpatient "service." *E.g.*, New Mexico Benchmark Plan, pp. 26 ("Outpatient medical services are services provided in a hospital outpatient facility, practitioner/provider's office or other appropriately licensed facility."), 44 ("**Inpatient** means a Member who has been admitted by a health care Practitioner/Provider to a Hospital for the purposes of receiving Hospital Services.").

Conflict preemption arises when (1) "it is impossible for a private party to comply with both state and federal law," or (2) the state law "stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress." *Crosby v. Nat'l Foreign Trade Council*, 530 U.S. 363, 372-73 (2000) (citations and quotations omitted). Both apply here.

**A.**   **Defendants Cannot Possibly Comply with Both Federal Law and Plaintiffs' Interpretation of State Law.**

**1.**   **Federal Law Dictates That the Impossibility Doctrine Applies.**

Where "federal law forbids an action that state law requires, the state law is 'without effect.'" *Mut. Pharm. Co. v. Bartlett*, 570 U.S. 472, 486 (2013) (state statute was preempted "[b]ecause it is impossible for [defendants] to comply with both state and federal law"). Federal law forbids Plaintiffs' demand that Defendants cover and pay for cannabis under state law.

As noted, "[t]he CSA designates marijuana as contraband for *any* purpose," and "the manufacture, distribution, or possession of marijuana [is] a criminal offense . . ." *Raich*, 545 U.S. at 14, 27; *see* 21 U.S.C. § 841(a)(1). Federal law also imposes criminal liability on anyone who "aids, abets, counsels, commands, induces or procures" the commission of a federal crime. 18 U.S.C. § 2(a); *see Rosemond v. United States*, 572 U.S. 65, 70 (2014). If state law compelled Defendants to cover and pay for cannabis, they could face liability for aiding and abetting the possession (by members) and/or dispensation (by providers) of a controlled substance under the CSA. *See also* 16.8.1.9 NMAC (warning that participating in the state's medical cannabis program "may be considered a violation of federal law," and participants "may be subject to federal sanctions for what may otherwise be considered authorized conduct in the State of New Mexico").

In addition, the federal Medicaid Act and Defendants' coverage terms limit coverage of federally funded Medicaid benefits to items and services that are medically necessary and approved by the FDA where applicable. 42 U.S.C. §§ 1396r-8(g)(1)(A), 1396r-8(k)(2)(A); *see*

*supra*, pp. 4-6. Indeed, those who knowingly present Medicaid claims "that a person knows or should know are not medically necessary" are subject to substantial civil penalties. 42 U.S.C. § 1320a-7a(a)(1)(E). Yet cannabis is not FDA approved, *see In re Curaleaf Holdings, Inc. Sec. Litig.*, 519 F. Supp. 3d at 103-06, and federal law dictates that cannabis is not medically necessary. *Raich*, 545 U.S. at 27; *accord U.S. v. Oakland Cannabis Buyers' Co-op.*, 532 U.S. 483, 491 (2001) (the CSA "reflects a determination that marijuana has no medical benefits worthy of an exception"). Defendants cannot simultaneously comply with the federal law and their coverage terms – which preclude coverage for drugs and medications that are not medically necessary and/or lack FDA approval – and Plaintiffs' interpretation of state law.

For these and other reasons, this district court has repeatedly refused to compel third parties to pay for or accommodate state-authorized cannabis use. For example, in *Hemphill v. Liberty Mut. Ins. Co.*, the court rejected plaintiff's demand that her car insurer cover the cost of cannabis obtained under LECUA due to the "conflict between federal and state law." No. CV 10-861, 2013 U.S. Dist. LEXIS 200109, at *5-6 (D.N.M. Mar. 28, 2013). The court reasoned:

> This federal court, even sitting in diversity, cannot force Defendant to recompense Plaintiff for medical expenses that are contrary to federal law and federal policy, even if the contract generally provides for the payment of future medical expenses. Such payment violates federal law, as clearly expressed by Congress, and New Mexico state law prevents the enforcement of an illegal contract. New Mexico citizens must follow the laws of both the state and federal governments.

*Id.*

Similarly, in *Albuquerque Pub. Sch. v. Sledge*, the court refused to order a school to accommodate a student's use of cannabis under LECUA due to the "conflict between federal and state law." No. CV 18-1029 KK/LF, 2019 U.S. Dist. LEXIS 133504, at *25-35 (D.N.M. Aug. 8, 2019); *see id.* at *26 ("That the [LECUA] permits Mother to give Student cannabis does not change the fact that federal law prohibits it . . .") (quoting *Raich*, 545 U.S. at 29). The Court added that

interpreting the Individuals with Disabilities Education Act "to include the administration of cannabis to students as a medical necessary related service . . . would conflict with Congress' legislative determination in the CSA that cannabis has no accepted medical use at all." *Id.* at *34.

Further, in *Garcia v. Tractor Supply Co.*, the court held that federal law preempted the plaintiff's claim that his employer was required to accommodate his medical cannabis use under the New Mexico Human Rights Act. The Court reasoned that the plaintiff sought "to affirmatively require [the employer] to accommodate his marijuana use," but "[t]o affirmatively require [the employer] to accommodate [plaintiff's] illegal drug use would mandate [the employer] to permit the very conduct the CSA proscribes." 154 F. Supp. 3d 1225, 1230 (D.N.M. 2016); *accord Albuquerque Pub. Sch.*, 2019 U.S. Dist. LEXIS 133504, at *31-32 (rejecting that defendant must affirmatively accommodate medial cannabis use, holding that "the fact that the state may exempt medical marijuana users from the reach of the state criminal law does not mean that the state can affirmatively require [defendants] to accommodate what federal law specifically prohibits.").

Defendants cannot possibly comply with a state law that compels coverage of a drug that is illegal, not FDA approved, and medically unnecessary under federal law.

## 2. State Appellate Court Cases Do Not Preclude the Impossibility Doctrine.

The New Mexico Court of Appeals rejected that an order compelling a worker's compensation insurer to cover medical cannabis is preempted due to impossibility. *See Vialpando*, 2014-NMCA-084, ¶ 15 (rejecting preemption due to impossibility because "Employer does not cite to any federal statute it would be forced to violate, and we will not search for such a statute."); *Lewis v. Am. Gen. Media*, 2015-NMCA-090, ¶ 32 (rejecting preemption due to impossibility, and holding that the employer's argument that it could be subject to violation of federal law "raises only speculation in view of existing Department of Justice and federal policy."). However, those

cases misapply federal preemption law and should not be followed. *See Rawers v. U.S.*, 488 F. Supp. 3d 1059, 1118 (D.N.M. 2020) (federal court is "not bound by" decisions of state appellate courts); *U.S. v. Anzures*, No. CR 10-3461 JCH, 2018 U.S. Dist. LEXIS 94305, at *17-18 (D.N.M. June 5, 2018) (court cannot "decline to follow binding Tenth Circuit precedent based on a decision by a state's intermediate appellate court.").

The preemptive force of federal law turns on the ***statute*** enacted by Congress, not the government's enforcement priorities. *See Garcia*, 154 F. Supp. 3d at 1229 (refusing to apply *Vialpando's* holding because "reliance on an enforcement policy of the United States Attorney General is not law, and instead, is merely an ephemeral policy that may change under a different President or different Attorney General."); *Sensoria,* 581 F. Supp. 3d at 1258 (rejecting argument that "the federal government's softening approach to marijuana" affected its illegality, holding that though "[t]he Executive Branch may choose not to enforce the CSA where marijuana is lawful under state law," the "CSA . . . remains federal law today."). *Vialpando* and *Lewis* also incorrectly conclude that a state law is preempted only if following it would require the defendant to commit an actionable crime; this is not the standard. Rather, a state law is preempted if it is impossible to comply with both state and federal law, or if the state law stands as an obstacle to the purposes and objectives of Congress. *See Crosby*, 530 U.S. at 372-73. There is no requirement that a state law is only preempted upon a showing that the Defendants will be prosecuted for complying with state law, as *Vialpando* and *Lewis* improperly concluded. Accordingly, the Court should not follow the rulings in *Vialpando* and *Lewis* regarding the impossibility preemption doctrine.

### B.   Compelling Cannabis Coverage Is an Obstacle to Congress's Objectives.

Independently, state law is also preempted where, as Plaintiffs interpret here, it "stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress." *Crosby*, 530 U.S. at 373 (citation omitted). To make this determination, courts consider "the entire

scheme of the statute" and find that state law is preempted if "the state law undermines the intended

purpose and 'natural effect' of" provisions of federal law. *Id.* (citation omitted). If New Mexico

law compelled Defendants to cover and pay for cannabis, as Plaintiffs demand, it would stand as

an obstacle to Congress's purposes and objectives in enacting the CSA and Medicaid Act.

### 1.    Compelling Coverage of Cannabis Is an Obstacle to the CSA.

Congress enacted the CSA "with the main objectives of combating drug abuse and

controlling the legitimate and illegitimate traffic in controlled substances." *Gonzales* v. *Oregon*,

546 U.S. 243, 250 (2006). The Act provides a "comprehensive regulatory regime specifically

designed to regulate which controlled substances can be utilized for medicinal purposes, and in

what manner." *Raich*, 545 U.S. at 27 (quoting 21 U.S.C. § 801(1)). While certain states, including

New Mexico, developed their own medical cannabis programs, "[t]he CSA does not contemplate

that state legislatures' determinations about the use of a controlled substance can be used to bypass

the CSA's rescheduling process." *Krumm v. Holder*, No. 13CV0562, 2014 U.S. Dist. LEXIS

178064, at *10 (D.N.M. Mar. 19, 2014), *aff'd*, 594 F. App'x 497 (10th Cir. 2014). As the Supreme

Court noted, the CSA is far more comprehensive than state medical cannabis laws:

> [E]ven if respondents are correct that marijuana does have accepted medical uses .
> . . the CSA would still impose controls beyond what is required by [state] law. The
> CSA requires manufacturers, physicians, pharmacies and other handlers of
> controlled substances to comply with statutory and regulatory provisions
> mandating registration with the DEA, compliance with specific production quotas,
> security controls to guard against diversion, recordkeeping and reporting
> obligations, and prescription requirements. The dispensing of new drugs, even
> when doctors approve their use, must await federal approval. ***Accordingly, the
> mere fact that marijuana – like virtually every other controlled substance
> regulated by the CSA – is used for medicinal purposes cannot possibly serve to
> distinguish it from the core activities regulated by the CSA***.

*Raich*, 545 U.S. at 27-28 (emphasis added) (citations omitted).

If New Mexico law compelled health plans to cover and pay for medical cannabis

distributed under LECUA – including with federal funds – as Plaintiffs demand, the state law

would frustrate the purposes of the CSA's "comprehensive regulatory regime." *Raich*, 545 U.S. at 27. Today, cannabis remains a Schedule I drug, and Congress has chosen on myriad occasions not to reduce or eliminate the classification of cannabis under the CSA. *See id.* at 15. Compelling Defendants to cover and pay for a drug deemed illegal by the CSA is an obstacle to Congress's objectives. *Albuquerque Pub. Schools*, 2019 U.S. Dist. LEXIS 133504, at *29 (holding that "the [LE]CUA would stand as an obstacle to the accomplishment and execution of Congress' full purposes and objectives if interpreted to make lawful precisely what the CSA makes unlawful.").

Moreover, cannabis distributed under LECUA does not follow the "statutory and regulatory provisions mandating registration with DEA, compliance with specific production quotas, security controls to guard against diversion, recordkeeping and reporting obligations, and prescription requirements" for controlled substances under the CSA. *See Raich*, 545 U.S. at 27-28. Thus, Plaintiffs' claim "interferes" with "the detailed manner with which Congress has addressed and mandated" the regulation of controlled substances and is therefore preempted. *Cf. Colo. Dep't of Pub. Health & Env't v. U.S.*, 693 F.3d 1214, 1216, 1224 (10th Cir. 2012) (state regulation prohibiting storage of hazardous waste was preempted by federal statute requiring destruction of hazardous waste because of "the detail Congress has provided regarding how and when the DOD must destroy these weapons").

### 2.      Compelling Coverage of Cannabis Is an Obstacle to the Medicaid Act.

The Medicaid Act also creates a detailed system for the use of federal Medicaid funds. State with Medicaid programs "must comply with the federal Medicaid laws and regulations." *Amisub, Inc. v. Colo. Dep't of Soc. Servs.*, 879 F.2d 789, 795 (10th Cir. 1989).

To be covered under the Medicaid program, a drug or medication must be approved by the FDA. 42 U.S.C. § 1396r-8(k)(2). Cannabis is not. *See supra*, pp. 4-6.

19

Additionally, a drug's manufacturer must enter into a rebate agreement with the government. 42 U.S.C. § 1396r–8(a). Cannabis does not have a single "manufacturer," and the government has not entered any rebate agreements for cannabis, which undermines the purpose of requiring such agreements (*i.e.*, to control the cost of drugs purchased with federal funds).

Moreover, the Medicaid Act requires that states "provide for a drug use review program . . . to assure that prescriptions (i) are appropriate, (ii) are medically necessary, and are (iii) are not likely to result in adverse medical results" that follows the detailed requirements in the Act. 42 U.S.C. § 1396r-8(g)(1)(A). Mandating coverage for cannabis cannot possibly comport with the Medicaid Act, because "by characterizing marijuana as a Schedule I drug, Congress expressly found that the drug has no acceptable medical uses." *Raich*, 545 U.S. at 27.

Further, the Medicaid Act contains requirements for drugs that are "controlled substances" under the CSA. *E.g.*, 42 U.S.C. § 1396w-3a(a) (state must establish a "qualified prescription drug monitoring program" for those prescribed a "controlled substance"). The Act does not contemplate coverage for Schedule I substances like cannabis; it defines "controlled substance" as "a drug that is included in schedule II" or "schedule III or IV" at the state's option. 42 U.S.C. § 1396w-3a(h)(1).

Compelling MCOs to cover cannabis is incompatible with the Medicaid Act's detailed regulatory framework, "create[s] an obstacle to the full purposes and objectives of Congress," and is therefore preempted. *Cf. Arizona v. U.S.*, 567 U.S. 387, 410 (2012) (holding that state statute authorizing state officers to make warrantless more broadly than federal law was "preempted by federal law" because it "creates an obstacle to the full purposes and objectives of Congress"); *Colo. Dep't of Pub. Health & Env't*, 693 F.3d at 1224 (finding conflict preemption based "on the detail Congress has provided" regarding federal statutory scheme).

20

### III.    SB317 IS NOT PRIVATELY ENFORCEABLE (COUNT ONE).

SB317 does not compel coverage of cannabis, and it would be preempted by federal law if it did. *See supra*. Count One further fails for a third reason: SB317 is not privately enforceable.

To bring a private cause of action, Plaintiffs must establish that the Legislature intended for private parties to enforce the relevant New Mexico state statute. *Woodard v. Fid. Nat'l Title Ins. Co.*, No. CIV 06-1170 RB/WDS, 2007 U.S. Dist. LEXIS 97455, at *16 (D.N.M. Dec. 4, 2007) (citations omitted). "Where 'there is no *express* language in the statute creating a private right of action, [courts] conclude that the Legislature did not intend to create such a right of action.'" *Ward v. Convergys Inc.*, No. 1:10-cv-21 WJ/WDS, 2010 U.S. Dist. LEXIS 152288, at *5 (D.N.M. Apr. 30, 2010) (quoting *Eisert v. Archdiocese of Santa Fe*, 2009-NMCA-042, ¶ 29); *accord Patterson v. Globe American Cas. Co.*, 1984-NMCA-076, ¶ 10 ("[T]he Legislature knows how to create a private remedy if it intends to do so. By negative inference, the Legislature's failure to provide for a private action suggests that it did not intend to create one.").

Nothing in the text of SB317 affords Plaintiffs or any other party a private cause of action. *See* NMSA 1978, §§ 59A-22-57, 59A-23-16, 59A-46-57, 59A-47-51. Indeed, SB317 does not even apply to Plaintiffs' Medicaid and self-funded plans. *See supra*, pp. 9-10. And according to the statutory scheme of the Insurance Code, the New Mexico Legislature intended for OSI – not private parties – to evaluate and enforce compliance with SB317. Health care plans in New Mexico that are subject to the Insurance Code must be submitted to and approved by OSI. NMSA 1978, § 59A-18-12. OSI's review determines, among other things, whether the proposed health plan complies with SB317, and OSI disapproves plans that are non-compliant. *See* NMSA 1978, § 59A-18-14. OSI also asks New Mexicans like Plaintiffs to submit complaints to the agency when they believe a health plan fails to comply with SB317, and OSI has the authority to enforce compliance through lawsuits, criminal referrals, and civil monetary penalties. NMSA 1978, § 59A-2-11; *No*

*Behavioral Health Cost Sharing*, OSI, available at https://www.osi.state.nm.us/pages/bureaus/ consumer/resources/no-behavioral-health-cost-sharing. Because Plaintiffs cannot show that the New Mexico Legislature intended for them to bring a private cause of action under SB317, among other reasons, Count One should be dismissed. *Ward*, 2010 U.S. Dist. LEXIS 152288, at *6.

## IV.   PLAINTIFFS FAIL TO STATE A CLAIM FOR BREACH OF CONTRACT (COUNT TWO).

Plaintiffs also fail to state a plausible claim that Defendants breached their terms of coverage.[7] To maintain Count Two, Plaintiffs must allege facts showing (1) the existence of a valid and binding contract, (2) Plaintiffs' compliance with that contract, (3) Defendants' breach, and (4) damages resulting from Defendants' breach. *See Tweed v. CitiMortgage, Inc.*, No. CIV 17-0336, 2017 U.S. Dist. LEXIS 62070, at *5 (D.N.M. Apr. 24, 2017) (dismissing breach of contract claim). Plaintiffs fail to meet the second and third elements.

Defendants cover and pay claims for medically necessary drugs and medications on their Drug List. *See supra*, pp. 4-7. When members seek benefits for drugs or medications that are not on Defendants' Drug Lists – such as cannabis – they must first obtain Defendants' prior authorization. *See id.* Moreover, to receive benefits for drugs, medications, or other services covered by the plan, members or their providers must file claims with Defendants. *See id.* If Defendants deny benefits for an item or service, members must appeal the decision. *See id.*

Plaintiffs do not allege that they sought prior authorization or an exception from Defendants for coverage of their medical cannabis, as is required by Defendants' coverage terms. *See generally* FAC. Nor do Plaintiffs allege that they or anyone on their behalf filed claims with

---

[7] Plaintiffs do not specify what contracts Defendants allegedly breached. Plaintiffs Trujillo, Rowland, and McDougal allege that they "are beneficiaries of the MCO contracts" but do not explain what "MCO contracts" are. *See* FAC, ¶ 132; *see also M.G. v. Scrase*, 637 F. Supp. 3d 1238, 1242-44 (D.N.M. 2022) (holding Medicaid members cannot enforce Medicaid MCOs' MMCSAs with HSD). Plaintiff Candelaria argues that he "entered into [a] valid written contract[ ] with [BCBSNM] for health insurance," FAC, ¶ 131, but BCBSNM contracts with the University of New Mexico for its self-funded plan. *See* FAC, ¶ 15; **Ex. A**, p. 3. Because Plaintiffs seek cannabis coverage, Defendants will focus on their coverage terms, which preclude relief.

Defendants seeking benefits for medical cannabis, as is also required by Defendants' coverage terms. *Id.* Plaintiffs further do not allege that they appealed Defendants' coverage denials for cannabis. *Id.* Instead, Plaintiffs merely complain that they "have paid, without reimbursement, one hundred percent (100%) of the cost of their medical cannabis . . ." FAC, ¶ 134; *accord* FAC, ¶ 6 (cannabis users pay "the entirety of the cost of their medical cannabis"), 113(c) ("Plaintiffs and members of the class paid for their medical cannabis, without reimbursement, from January 1, 2022 to the present"), 121(c) (same). Plaintiffs do not explain how Defendants can possibly be expected to cover and pay for any items or services without Plaintiffs first notifying Defendants by seeking prior authorization, filing a claim, and/or appealing a coverage denial. *See* FAC.

Further, Defendants did not breach their coverage obligations because their terms plainly exclude coverage for cannabis. Specifically, Defendants only cover medically necessary items and services, and federal law dictates that cannabis "has no acceptable medical uses." *Raich*, 545 U.S. at 27; *supra*, pp. 4-7. Defendants' coverage terms also preclude coverage for drugs and medicines that have not been approved by the FDA, and cannabis is not an FDA-approved medication. *Supra*, pp. 4-7.[8] These specific provisions must control over a provision that broadly incorporates state law. *See Rodarte v. Presbyterian Ins. Co.*, 2016-NMCA-051, ¶ 15 ("[A] specific provision [in a contract] relating to a particular subject will govern in respect to that subject, as against a general provision, even though the latter, standing alone, would be brought enough to include the subject to which the more specific provision relates.") (citation and internal quotations omitted).

Because Plaintiffs have not and cannot allege facts showing that they complied with the terms of coverage or that BCBSNM breached such terms, Count Two must be dismissed.

---

[8] Western Sky expressly excludes coverage for medical cannabis. *See* Western Sky Member Handbook, *supra*, p. 41.

## V.  DEFENDANTS DID NOT BREACH ANY IMPLIED COVENANT (COUNT THREE).

Separate from the above, several principles of New Mexico law bar Plaintiffs from stating a claim for breach of the implied covenant of good faith and faith dealing. First, "[a] cause of action for breach of an implied covenant of good faith and fair dealing cannot prevail without an accompanying showing for breach of a contract." *Sessions v. New Mexico*, No. 20-cv-606 MV/KRS, 2022 U.S. Dist. LEXIS 195806, at *24-25 (D.N.M. Oct. 26, 2022) (citation omitted). Here, because Plaintiffs fail to state a claim for breach of contract, they cannot prevail on their claim for breach of the implied covenant of good faith and fair dealing. *Id.*; *see supra*, pp. 22-23.

Relatedly, the implied covenant cannot be used to "rewrite a valid agreement by imposing an obligation not found in the express terms of that agreement." *Grebe v. State Farm Ins*., No. 01-833 WWD/KBM, 2002 U.S. Dist. LEXIS 30447, at *6 (D.N.M. Apr. 3, 2002) (dismissing implied covenant claim and citing *Melnick v. State Farm Mut. Auto. Ins. Co*., 1988-NMSC-012, ¶ 17). Plaintiffs complain that "[b]y refusing to cover the cost of medical cannabis as a behavioral health service or medication, Defendants knowingly deprived Plaintiffs of the benefits to which they are entitled by law." FAC, ¶ 139. Yet Defendants' coverage terms preclude coverage of cannabis. *See supra*, pp. 4-7, 22-23. There is no breach of the covenant when a defendant "refus[es] to provide [the member] a benefit for which the contract unambiguously did not call." *Apodaca v. Young Am. Ins. Co*., No. 18-0399 JB/JHR, 2023 U.S. Dist. LEXIS 204861, at *118 (D.N.M. Nov. 15, 2023).

## VI.  PLAINTIFFS FAIL TO STATE AN UNFAIR PRACTICES ACT VIOLATION (COUNT FOUR).

Equally unavailing is Plaintiffs' claim that "Defendants' conduct in failing to pay for medical cannabis as a behavioral health service or medication . . . constitutes an 'unconscionable trade practice' within the meaning of NMSA 1978, § 57-12-2(E)." FAC, ¶ 144. Under the "UPA," an "'unconscionable trade practice' means an act or practice in connection with the sale . . . of any . . . services, including services provided by licensed professionals . . . that to a person's detriment:

(1) takes advantage of the lack of knowledge, ability, experience or capacity of a person to a grossly unfair degree; or (2) results in a gross disparity between the value received by a person and the price paid." NMSA 1978, § 57-12-2(E). Plaintiffs fail to plausibly allege a claim for procedural or substantive unconscionability under subsections (E)(1) or (E)(2), respectively.

Procedural unconscionability "examines the particular factual circumstances surrounding the formation of [a] contract, including the relative bargaining strength, sophistication of the parties, and the extent to which either party felt free to accept or decline terms demanded by the other." *Apodaca*, 2023 U.S. Dist. LEXIS 204861, at *32 (quoting *Cordova v. World Fin. Corp.*, 2009-NMSC-021, ¶ 23). The FAC contains no allegations to support such a claim.

Substantive unconscionability "concerns the legality and fairness of the contract terms themselves and focuses on such issues as whether the contract terms are commercially reasonable and fair, the purpose and effect of the terms, the one-sidedness of the terms, and other similar policy concerns." *Id.* (quoting *Cordova*, 2009-NMSC-021, ¶ 22). Plaintiffs' bald accusation that they did not receive contract benefits is not sufficient to support a claim that Defendants engaged in a substantively unconscionable trade practice. Indeed, if it were sufficient, "practically every breach of contract claim would also be an unconscionability claim, which is not, we believe, what the Legislature intended in enacting the UPA." *Robey v. Parnell*, 2017-NMCA-038, ¶ 54; *see id.*, ¶ 56 ("[T]hose seeking relief for an unconscionability claim must establish that the defendant economically exploited the plaintiff.") (citation omitted).

Defendants did not economically exploit Plaintiffs by not covering a drug that is illegal under federal law, not approved by the FDA, and excluded from their respective coverage terms.

## VII. PLAINTIFFS' INSURANCE CODE TRADE PRACTICES ACT CLAIM FAILS (COUNT FIVE).

Plaintiffs' claim for violation of the Insurance Code Trade Practices Act also is deficient. Plaintiffs allege that "Defendants' conduct in failing to pay for medical cannabis as a behavioral

health service or medication as required by [SB317] constitutes an unconscionable trade practice or 'prohibited act' within the meaning of NMSA 1978 § 59A-16-24(A)." FAC, ¶ 151. This perfunctory allegation fails to state a plausible claim that Defendants violated the Act.

NMSA 1978, § 59A-16-24(A) provides, "No person shall willfully collect any sum as premium or charge for insurance or other coverage, which insurance or coverage is not then provided or in due course to be provided (subject to acceptance of the risk by the insurer) by a policy issued by an insurer as authorized by the Insurance Code." Plaintiffs do not allege that they paid a premium for health insurance and were not provided any medical or behavioral health services. *See generally* FAC. Nor do they allege that the coverage Defendants provided was illusory. *Compare with, e.g.*, *Peck*, 665 F. Supp. 3d at 1256. Instead, Plaintiffs merely complain that Defendants do not cover and pay for a particular drug that is illegal under federal law, clearly excluded by their coverage terms, and absent from their publicly available Drug Lists. *See* FAC, ¶ 151; *supra*, pp. 3-7. Such allegations do not plausibly show a violation of NMSA 1978, § 59A-16-24. *Cf. Slack v. Robinson*, 2003-NMCA-083, ¶¶ 36-37 (application of policy limitations in insurance contract did not violate NMSA 1978, § 59A-16-24).

## VIII.   PLAINTIFFS CANNOT RECOVER FOR UNJUST ENRICHMENT (COUNT SIX).

Plaintiffs' claim for unjust enrichment also fails. "[T]he presence of a contract bars a claim for unjust enrichment." *Elliott Indus. v. BP Am. Prod. Co.*, 407 F.3d 1091, 1117 (10th Cir. 2005) (citing, among other things, *Ontiveros Insulation Co. v. Sanchez*, 2000-NMCA-51, ¶ 11). In *Elliott*, the Court dismissed the plaintiff's unjust enrichment claim for unpaid royalties because "contracts control how royalties are to be paid." *Id.* Here, Defendants' terms of coverage control whether Defendants cover cannabis and specify that they will not, Defendants cannot have been unjustly enriched, precluding Count Six.

## IX.   PLAINTIFFS HAVE NO RIGHT TO DECLARATORY RELIEF (COUNT SEVEN).

Finally, Plaintiffs' final claim for declaratory relief must fail. "To maintain a claim for declaratory relief . . . Plaintiff[s] must have a valid substantive cause of action underlying the claim for declaratory relief." *Salazar v. PennyMac Mortg. Inv. Trust Holdings I, LLC*, No. 19-517 KF/LF, 2019 U.S. Dist. LEXIS 158312, at *14-15 (D.N.M. Sept. 17, 2019) (dismissing claim because "Plaintiff has not stated a plausible substantive cause of action" against the defendant) (citation omitted). Plaintiffs have no valid substantive cause of action underlying their claim for declaratory relief, so it must be dismissed. *See supra*, pp. 9-26.

## CONCLUSION

New Mexico state law does not compel Defendants to cover and pay for Plaintiffs' cannabis. Federal law would preempt such a requirement. And each of Plaintiffs' causes of action fail for independent reasons. Thus, Defendants respectfully request that this Court dismiss the FAC with prejudice, award Defendants their costs, and for other further relief the Court deems proper.

.

Dated: April 29, 2024                                 Respectfully submitted,

/s/ Wade L. Jackson                                   /s/ Alfred A. Park
Wade L. Jackson                                       Alfred A. Park
Alexander G. Elborn                                   PARK & ASSOCIATES, LLC
SUTIN, THAYER & BROWNE, P.C.                           3840 Masthead St. NE
P.O. Box 1945                                         Albuquerque, NM 87109
Albuquerque, New Mexico 87103-1945                    T: (505) 246-2805
T: (505) 883-2500                                     apark@parklawnm.com
ajs@sutinfirm.com
age@sutinfirm.com                                     Christopher Smith (pro hac vice)
                                                      Melissa Z. Baris (pro hac vice)
Martin J. Bishop (pro hac vice)                       HUSCH BLACKWELL LLP
Jason T. Mayer (pro hac vice)                         190 Carondelet Plaza, Suite 600
REED SMITH LLP                                        St. Louis, MO 63105
10 South Wacker Drive, 40th Floor                     T: (314) 480-1500
Chicago, Illinois 60606-7507                          Chris.Smith@huschblackwell.com
T: (312) 207-1000                                     Melissa.Baris@huschblackwell.com
mbishop@reedsmith.com
jmayer@reedsmith.com                                  *Attorneys for Defendant Western Sky
                                                      Community Care, Inc.*

*Attorneys for Defendant Blue Cross and
Blue Shield of New Mexico, an
unincorporated division of Health Care
Service Corporation, a Mutual Legal
Reserve Company*

/s/ Linda M. Vanzi
Linda M. Vanzi
Melanie B. Stambaugh
RODEY, DICKASON, SLOAN, AKIN & ROBB,
P.A.
P.O. Box 1888
Albuquerque, NM 87103
T: (505) 765-5900
lvanzi@rodey.com
mstambaugh@rodey.com

*Attorneys for Defendant Presbyterian
Health Plan, Inc.*

28

## <u>CERTIFICATE OF SERVICE</u>

I, Jason T. Mayer, HEREBY CERTIFY that on April 29, 2024, the foregoing document was electronically filed through the District of New Mexico's CM/ECF system, which caused all counsel of record to be served by electronic means.

REED SMITH LLP,

By: <u>*/s/ Jason T. Mayer*</u>