## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW MEXICO

**NEW MEXICO TOP ORGANICS—ULTRA HEALTH, INC.,**
**a New Mexico corporation,**
**JACOB R. CANDELARIA, on behalf of himself and all others similarly situated,**
**MATIAS TRUJILLO, as father and guardian of MT, a minor,**
**and on behalf of himself and all others similarly situated,**
**ERICA ROWLAND, on behalf of herself and all others similarly situated, and**
**ARIEL MCDOUGAL, on behalf of herself and all others similarly situated,**
        **Plaintiffs,**

**vs.**                                              **No. 1:22-cv-00546-MV-LF**

**BLUE CROSS AND BLUE SHIELD OF NEW MEXICO,**
**PRESBYTERIAN HEALTH PLAN, INC.,**
**a New Mexico corporation, and**
**WESTERN SKY COMMUNITY CARE, INC.,**
**a New Mexico corporation,**
        **Defendants.**

### PLAINTIFFS' RESPONSE TO DEFENDANTS' MOTION TO DISMISS

Defendants ask the Court to consider numerous disputed documents and facts outside the pleadings in their purported Rule 12(b)(6) motion, from disputed guidance from the New Mexico Office of Superintendent of Insurance ("OSI"), to the member handbooks and benefit booklets, to selected pages from Plaintiff Candelaria's BCBSNM benefit booklet, to the benchmark plan and the alternative benefit plan. Plaintiffs are entitled to discovery on the actual benefits Defendants do provide beyond the broad categories.

Then, Defendants misconstrue Plaintiffs' Amended Complaint and focus entirely on SB317, rather than the aggregated effect of New Mexico statutes. Medical cannabis is a medically necessary behavioral health service under the Lynn and Erin Compassionate Use Act[1] ("LECUA"), caselaw, and experts in the field; New Mexico health insurance plans must cover medically necessary behavioral

---

[1] N.M. STAT. ANN. 1978 § 26-2B-1 et seq.

health services under the New Mexico benchmark or the Alternative Benefit Plan; and SB317 requires no cost sharing for those behavioral health services. New Mexico law requires that Defendants cover medical cannabis because it is a behavioral health service as defined under New Mexico law and according to expert opinion informing LECUA—not a medication or prescription as defined under federal Medicaid law. *See Vialpando v. Ben's Auto. Services*, 2014-NMCA-084, ¶ 11, 331 P.3d 975, 978 ("medical [cannabis] is not a prescription drug").  The Court need not reconcile federal Medicaid law on prescriptions, and lack of federal reimbursement is not a barrier to New Mexico mandating coverage.

Defendants' "background" information also looks far beyond the pleadings and is incomplete or incorrect, because cannabis is set to be rescheduled, and because determinations of medical necessity and the specific behavioral health services that must be covered are either fact issues, or allegations that must be taken as true and construed in Plaintiffs' favor at this point in the proceedings. Nearly all of Defendants' listed "Other Authorities" are actually extrinsic evidence. Mot. vii–viii. Laboring through any such contested factual determinations as part of a Rule 12 motion is wholly inappropriate.

1. **The Rule 12(b)(6) standard requires only plausibility, allegations must be accepted as true, and looking beyond the pleadings is generally inappropriate.**

To survive a motion to dismiss under Fed. R. Civ. P. 12(b)(6), the complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 127 S. Ct. 1955, 1974 (2007)). The Court must "ask whether there is 'plausibility in [the] complaint.'" *Christy Sports, LLC v. Deer Valley Resort Co., Ltd.*, 555 F.3d 1188, 1191–92 (10th Cir. 2009) (quoting *Twombly*, 127 S. Ct. at 1970). "The complaint 'does not need detailed factual allegations,' but the '[f]actual allegations

must be enough to raise a right to relief above the speculative level.'" *Id.* (quoting *Twombly*, 127 S. Ct. at 1964, 1965).

> The concept of 'plausibility' at the dismissal stage refers not to whether the allegations are likely to be true; the court must assume them to be true. The question is whether, if the allegations are true, it is plausible and not merely possible that the plaintiff is entitled to relief under the relevant law.

*Id.* (quoting *Robbins v. Oklahoma*, 519 F.3d 1242, 1247 (10th Cir. 2008)). The Tenth Circuit has clarified that the *Twombly/Iqbal* formulation is simply a "refined standard," not a "heightened" or "more stringent" standard. *See Khalik v. United Air Lines*, 671 F.3d 1188, 1191 (10th Cir. 2012). It is not even necessary that a plaintiff set forth a prima facie case in order to survive a motion to dismiss. *Id.* at 1192. Finally, "[t]he court must view all reasonable inferences in favor of the plaintiff, and the pleadings must be liberally construed." *Ruiz v. McDonnell*, 299 F.3d 1173, 1181 (10th Cir. 2002).

Generally the Court may not look beyond the four corners of the complaint unless a defendant submits "an indisputably authentic copy [of the extrinsic evidence] to the court to be considered on a motion to dismiss." *Becher v. United Healthcare Services, Inc.*, 374 F. Supp. 3d 1102, 1106 (D. Kan. 2019) (quoting *Geer v. Cox*, 242 F.Supp.2d 1009, 1016 (D. Kan. 2003) (internal quotation marks and citation omitted)). Further, "[a]t the motion to dismiss stage, the court cannot properly consider extrinsic evidence that isn't central to a plaintiff's claim. This is the rule even if the extrinsic evidence is central to the defendant's 'theories of defense.'" *Id.* at 1106 (quoting *Capital Sols., LLC v. Konica Minolta Bus. Sols. USA, Inc.*, Nos. 08-2027-JWL, 08-2191-JWL, 2008 WL 3538968, at *3 (D. Kan. Aug. 11, 2008)).

**2. Cannabis will be reclassified to Schedule III due to its documented medical use in 38 states and its imminent, new classification, and current classification poses no barrier to insurer reimbursement for use under state medical cannabis programs.**

The Drug Enforcement Administration ("DEA") of the Department of Justice ("DOJ") is the lead federal agency in enforcing narcotics and controlled substances laws and regulations, and it

published a proposed rule in the Federal Register to reclassify cannabis as a Schedule III drug. *See Schedules of Controlled Substances: Rescheduling of Marijuana*, 89 Fed. Reg. 44,597 (May 21, 2024) (to be codified at 21 C.F.R. Pt. 1308).[2] In 60 days, the DEA/DOJ could make permanent this new rule and classification. All of Defendants' arguments based on the purported illegality of medical cannabis fail, because they will be based on an incorrect assertion of disputed fact. Moreover, since August 2023, the Department of Health and Human Services ("HHS") has recommended that cannabis be rescheduled to Schedule III because it is has an acceptable medical use. 89 Fed. Reg. at 44,599 (citing Letter for Anne Milgram, Administrator, DEA, from Rachel L. Levine, M.D., Assistant Secretary for Health, HHS (Aug. 29, 2023)). The recommendation of HHS was binding prior to the DEA filing its proposed rule. *Id.* (citing Questions Related to the Potential Rescheduling of Marijuana, 45 Op. O.L.C. ____, at *25 (Apr. 11, 2024) ("OLC Op.")). Even during the rule making process, the DOJ must afford HHS's scientific and medical recommendations significant deference. *Id.* (citing OLC Op. at 25-26).

Indeed, "[s]ince 1996, 38 States, the District of Columbia, and 4 Federal Territories have legalized the use of medical [cannabis]." 89 Fed. Reg. at 44,600 (citing Memorandum for DEA, from HHS, re: Basis for the Recommendation to Reschedule Marijuana to Schedule III of the Controlled Substances Act ("HHS Basis for Rec.") at 30; OLC Op. at *9). And for a decade, Congressional legislation has prevented the DOJ from prosecuting or taking any action that would interfere with state medical cannabis programs. Every year since 2014, Congress included a rider on the appropriations bill that prohibits the Department of Justice to use any appropriated funds "to prevent any [state with medical cannabis] from implementing their own laws that authorize the use,

---

[2] The proposed rule refers to marijuana, which it defines as all parts of "the plant Cannabis sativa L." with more than .3 percent delta-9-tetrahydracannabinol ("Δ9-THC"). 89 Fed. Reg. at 44600 (citing 21 U.S.C. § 802(16); 7 U.S.C. § 1639o(1)). But the word "marijuana" carries a derogatory meaning. The more appropriate term is cannabis, the term used in LECUA and throughout this Response.

distribution, possession, or cultivation of medical [cannabis]." *See, e.g.*, Consolidated Appropriations Act 2022, Pub. L. No. 117-103, 136 Stat 49, § 531 (March 15, 2022). The rider prohibits the DOJ from spending funds to bring prosecutions if doing so prevents a state from giving practical effect to its medical cannabis laws. *United States v. Bilodeau*, 24 F.4th 705, 712–13 (1st Cir. 2022), *cert. denied, Bilodeau v. United States*, 2022 WL 2295607 (U.S. June 27, 2022); *United States v. Pisarski*, 965 F.3d 738, 740–41 (9th Cir. 2020); *United States v. McIntosh*, 833 F.3d 1163, 1175–76 (9th Cir. 2016). So long as a person is in strict compliance with the medical cannabis laws of the state, the federal government cannot prosecute them. *Bilodeau*, 24 F.4th at 713.

For years, Defendants have been protected from any DOJ enforcement action against them for covering medical cannabis in compliance with New Mexico's medical cannabis law. Indeed, Congressional action continues to justify Justice Thomas' criticism of *Raich*, and casts grave doubt on whether it is even good law anymore, and whether Defendants' heavy reliance on *Raich* is warranted. *Standing Akimbo, LLC v. United States*, 141 S. Ct. 2236, 2238 (2021) (Thomas, J.) (quoting *Gonzales v. Raich*, 545 U.S. 1, 42 (2005) (O'Connor, J., dissenting)). Moreover, New Mexico state courts repeatedly have ordered insurers to reimburse for medical cannabis—and those insurers faced no federal interference or exposure to criminal penalty. *See, e.g.*, *Barrozo v. Albertsons, Inc.*, No. A-1-CA-39001, 2022 WL 6688497, at *1 (N.M. Ct. App. Oct. 11, 2022), *cert. denied sub nom. Barrozo v. Albertson's*, 2022-NMCERT-012, ¶ 2, 547 P.3d 68 (insurer reimbursed $108.18 for medical cannabis without objection and only issue was how much to reimburse—not whether to reimburse).

The extent and scope of federal regulation of medical cannabis is in a state of rapid flux. Assessing this change and its impact on Plaintiffs' claims is more appropriately dealt with through discovery. It is premature for this Court to determine on a Rule 12 motion whether Defendants can

use federal prohibition arguments as excuses not to cover medical cannabis. In weeks, it will soon be in the same category as Tylenol with codeine.

**3. Defendants cover medically necessary benefits according to their member handbooks, benefit booklets, and Medicaid law; Plaintiffs' providers have already determined that medical cannabis is medically necessary for Plaintiffs under LECUA.**

Next, Defendants assert that they only cover benefits according to their member handbooks and benefit booklets, neither of which is part of the complaint, and both of which require findings of fact inappropriate for a Rule 12 motion. Defendants ask this Court to determine, without discovery, that medical cannabis is not medically necessary.

To start, Plaintiffs have plausibly alleged that cannabis is a medically necessary behavioral health service based on scientific literature. Am. Compl. (Doc. 22) ¶¶ 67-71 (detailing with citation numerous studies finding the medical benefits of cannabis to treat various behavioral health conditions). Those studies support a reasonable inference of the plausibility of the medical necessity of medical cannabis. Further, for Plaintiffs and other qualified patients with behavioral health conditions, a provider has already determined that medical cannabis is medically necessary to treat their behavioral health conditions pursuant to LECUA. *See, e.g.*, *Lewis v. Am. Gen. Media*, 2015-NMCA-090, ¶ 2, 355 P.3d 850, 852 (holding LECUA's required medical certification forms and notes of qualified patient's authorized health care provider were substantial evidence that the use of medical cannabis constitutes reasonable and necessary medical care). And Defendants' citations and excerpts from the benefit booklets all agree that Defendants cover medically necessary services. For Rule 12(b)(6) purposes, it is reasonable to infer from the allegations that Defendants must cover medical cannabis because it is a medically necessary service.

At the very least, medical necessity will be a factual issue inappropriate for determination on the pleadings. *See K.G. ex rel. Garrido v. Dudek*, 981 F. Supp. 2d 1275, 1281 (S.D. Fla. 2013)

(discussing trial testimony establishing that particular treatment will be effective and thus mandated under Medicaid law); *Moore ex rel. Moore v. Reese*, 637 F.3d 1220, 1258 (11th Cir. 2011) ("The record presents material issues of fact over what amount of private duty nursing hours are medically necessary for Moore, which must be resolved by a factfinder at trial."); *Maez v. Riley Indus.*, 2015-NMCA-049, ¶ 27, 347 P.3d 732 (reviewing whether factual record supported that medical cannabis was necessary medical care). Truly, "the Medicaid Act and its implementing regulations grant states the authority to set reasonable standards for the terms 'necessary' and 'medical necessity.'" *K.G.*, 981 F. Supp. 2d at 1281 (citing 42 U.S.C. § 1396a(a)(17); 42 C.F.R. § 440.230(d)); *Rush v. Parham,* 625 F.2d 1150, 1154–55 (5th Cir.1980)). Discovery is necessary on medical necessity.

**4.  The Medicaid Act is not a barrier to New Mexico mandating coverage of medical cannabis as a medically necessary behavioral health service.**

Defendants assert that under the Medicaid Act they only cover FDA approved drugs. But in a matter of months, medical cannabis is on track to be classified as a Schedule III controlled substance, just like low dose codeine and anabolic steroids. As discussed, in large part, the DOJ's proposed rule change relies on the reality that 38 states have medical cannabis laws and millions of people use medical cannabis today to treat their medical conditions.  Further:

> Although the Medicaid statute and its regulations impose many obligations, states do retain substantial discretion in implementing their plans and in choosing "the proper mix of amount, scope, and duration limitations on coverage, as long as care and services are provided in the best interests of the recipients."

*Rosie D. v. Romney*, 410 F. Supp. 2d 18, 24–25 (D. Mass. 2006) (quoting *Alexander v. Choate,* 469 U.S. 287, 303 (1985).

Indeed, "the state may choose to expand the care and services available under its plan beyond the seven mandated categories." *See* §§ 1396a(10)(A), 1396d(a) (defining "medical assistance" by enumerating twenty-eight types of care and services). Under the Medicaid Act, by participating in

Medicaid, New Mexico must provide "medical assistance" that includes "at least the care and services listed in paragraphs (1) through (5), (13)(B), (17), (21), (28), (29), and (30) of section 1396d(a)." 42 U.S.C. § 1396a(10)(A). "For example, a state must provide coverage of inpatient hospital and physicians' services, but retains the option of covering private duty nursing or physical therapy services." *Rosie D.*, 410 F. Supp. 2d at 24 (citing §§ 1396a(a)(10)(A), 1396d(a)).

Particularly, New Mexico can provide "any other medical care, and any other type of remedial care recognized under State law" as part of its medical assistance program for Medicaid recipients. 42 U.S.C. § 1396d(a)(32). And New Mexico in fact does provide care and services recognized under state law for its Medicaid recipients—even beyond what will be federally reimbursed. For example, New Mexico mandates coverage for pregnancy termination for Medicaid recipients despite the federal government not reimbursing for that service. Specifically:

> The benefit package includes services for the termination of a pregnancy as detailed in 8.310.2 NMAC. Medically necessary pregnancy terminations which do not meet the requirements of 42 CFR 441.202 are excluded from the capitation payment made to the MCO and shall be reimbursed solely from state funds pursuant to the provisions of 8.310.2 NMAC.

8.308.9.16 NMAC. Similarly:

> [a] MCO is encouraged to offer value added services that are not Medicaid covered benefits or in lieu of services or settings. The MCO may utilize providers licensed in accordance with state and federal requirements to deliver services. The MCO shall provide and coordinate comprehensive and integrated health care benefits to each member enrolled in managed care and shall cover the physical health, behavioral health and long-term care services per this section, its contract, and as directed by HSD.

8.308.9.9 NMAC.

In other words, the Medicaid Act does not prohibit New Mexico from covering medical cannabis as a behavioral health service even without federal funds being used to reimburse for that coverage, consistent with the coverages of the New Mexico Benchmark plan and the alternative

benefit plan that must at least have the same minimum coverage of, inter alia, "[m]ental health and substance use disorder services, including behavioral health treatment." 42 C.F.R. 440.347; 45 C.F.R. § 156.100; 45 C.F.R. § 156.110; 45 C.F.R. § 156.111.

A lack of federal reimbursement simply is not the barrier to coverage that Defendants claim. New Mexico expects MCOs to cover items above and beyond what the federal government requires. Some of these items are clearly not FDA-approved and instead are directed at the unique characteristics of New Mexico's population. *See also, e.g.*, BCBSNM Traditional Medicine Benefit, available at https://www.bcbsnm.com/community-centennial/pdf/cc-traditional-medicine-benefit-nm.pdf (describing Medicaid member benefit to receive services from traditional healer as Value-Added Service). Discovery is needed on these issues.

Moreover, New Mexico courts have already defined medical cannabis as a reimbursable *service,* rejecting that it must be defined as a prescription drug:

> [B]y definition, medical [cannabis] is not a prescription drug. Although it is a controlled substance, it is not dispensed by a licensed pharmacist or a health care provider upon a written order of a health care provider. A doctor may not order medical [cannabis] but may certify a patient to enroll in the medical cannabis program. Section 26–2B–3 (14). The program is not a licensed pharmacist or a health care provider. To Employer, the fact that the program is not a licensed pharmacist or a health care provider is the reason that the WCJ's order does not comply with the Act or the regulations. But this argument rests on the basis that the definition of a prescription drug is the only manner by which the WCJ could order Employer's reimbursement of medical [cannabis]. It does not take into account the definition of "services." That definition is significantly broader than the definition of prescription drug. It includes non-prescription drugs and other products and further includes providers other than licensed pharmacists and health care providers. There is no basis in the regulations to declare that the definition of prescription drug is the exclusive manner to address the provision of medical [cannabis] to an injured worker.

*Vialpando v. Ben's Auto. Services*, 2014-NMCA-084, ¶ 11, 331 P.3d 975, 978.

Defendants' argument that somehow the Medicaid Act prohibits them from covering medical cannabis as a medically necessary behavioral health service misses the mark, and ignores the wide latitude New Mexico has to mandate such coverage, even for Medicaid recipients such as Plaintiffs.

**5. SB317 does apply to Plaintiffs' health insurance plans.**

Defendants summarily claim that SB317 does not apply to Plaintiffs' Medicaid plans and solely cite a provision of the Patient Protection Act in support of their contention. Mot. 10 (citing N.M. STAT. ANN. 1978 § 59A-57-10). But that statute states: "[a] managed health care plan offered through the Medicaid program shall grant enrollees and providers the same rights and protections as are granted to enrollees and providers in any other managed health care plan subject to the provisions of the Patient Protection Act." N.M. STAT. ANN. 1978 § 59A-57-10(A) (1998). Moreover, it is not clear how provisions of the Patient Protection Act would somehow make SB317 inapplicable to Plaintiffs' Medicaid plans. Moreover, SB317 is not the operative law that would require Plaintiffs' Medicaid plans to cover medical cannabis. LECUA has determined that medical cannabis is a medically necessary behavioral health service for qualified patients suffering from the included behavioral health conditions. And Defendants must cover medically necessary behavioral health services under the benchmark plan or the alternative benefit plan. 45 C.F.R. § 156.110(a)(5). Plaintiffs' Medicaid plans cannot offer less behavioral health coverage than the benchmark plan. 42 C.F.R. § 440.300 (requiring benchmark-equivalent health care benefit coverage). SB317 need not directly apply at all to Plaintiffs' Medicaid plans for those plans to still be required to cover medical cannabis as a medically necessary behavioral health service under LECUA and the Alternative Benefit Plan that must be the equivalent of the benchmark plan.

Then Defendants summarily claim that SB317 does not apply to "self-insured plans" and assume that Plaintiff Candelaria's health insurance plan is a "self-funded plan" despite there being no

such allegations in the Complaint. Mot. 10.[3] These assertions of fact are inappropriate for resolution in a Rule 12 motion and discovery is necessary for this factual determination. Further, Plaintiff Candelaria has coverage under his spouse's BCBSNM plan as an employee of the University of New Mexico Hospital—making him a state employee. In other words, Plaintiff Candelaria's BCBSNM plan is a "state employee health plan[]" that OSI has explicitly included in the very notice Defendants cite.

And SB317 explicitly applies to "any form of self-insurance" by its plain language and by its corresponding language that applies to government plans procured under the Health Care Purchasing Act: "Until January 1, 2027, group health coverage, *including any form of self-insurance*, offered, issued or renewed under the Health Care Purchasing Act that offers coverage of behavioral health services shall not impose cost sharing on those behavioral health services." N.M. STAT. ANN. 1978 § 13-7-26(A) (emphasis added). Defendants conveniently leave out that SB317 was codified in the Health Care Purchasing Act at Section 13-7-26 so that it applies to public employee plans such as Plaintiff Candelaria's plan. And all "[g]roup coverage, including any form of self-insurance, offered, issued or renewed under the Health Care Purchasing Act shall provide coverage for all mental health or substance use disorder services required by generally recognized standards of care." N.M. STAT. ANN. 1978 § 13-7-31.

Moreover, a close read of the OSI Notice that Defendants rely on reveals that OSI's interpretation that SB317 does not apply to "self-insured plans" is based on the fact that such employer funded plans are governed by the Employee Retirement Income Security Act ("ERISA"). But ERISA does not apply to Plaintiff Candelaria's BCBSNM plan because ERISA specifically does not apply to government plans. 29 U.S.C. § 1003(b)(1). Similarly, ERISA does not apply to Plaintiffs'

---

[3] Defendants also appear to assert that at least one plan is a "grandfathered (sic)" plan, also an inappropriate factual assertion. Mot. 7 n.5.

Medicaid plans that are also government plans. *Id.* As a result, OSI's guidance is of little applicability to the plans at issue in this case.

Lastly, OSI's Notice is not binding or dispositive as to whether Defendants in this case must cover medical cannabis as a behavioral health service without cost sharing, an issue that requires analysis and interpretation of more than just SB317.

6. **SB317 requires coverage of medical cannabis as a behavioral health service in conjunction with the state benchmark plan or the alternative benefits plan requiring coverage of behavioral health services, and LECUA's mandate that medical cannabis is a medically necessary behavioral health service for them.**

The New Mexico Benchmark Plan does not exclude medical cannabis as Defendants argue. The "'State benchmark plan' means a qualified health plan that has been approved for sale on the exchange and that is identified by the superintendent as the plan to be used in developing affordability criteria." 13.10.36.7(O) NMAC. The New Mexico Benchmark Plan as determined by OSI was previously the equivalent of the Presbyterian Silver plan. But there is a factual issue regarding what the current benchmark is and Defendants have failed to attach an undisputedly authentic copy to their motion.

Even under the purported benchmark plan that Defendants cite, outpatient medical services include medical drugs, NMBP at 26-27, just like SB317 includes coverage of medical drugs as behavioral health services, *see, e.g.*, N.M. STAT. ANN. 1978 § 59A-22-57(B)(1). Medical cannabis need not be defined as a drug or medication—it is a behavioral health service pursuant to LECUA and New Mexico caselaw interpreting it. *Vialpando*, 2014-NMCA-084, ¶ 11.

Plaintiffs' Medicaid plans must cover the same essential services that New Mexico's benchmark plan covers, including treatment for behavioral health conditions. Under LECUA, medical cannabis is a medically necessary treatment for Plaintiffs' behavioral health conditions. *Vialpando*,

2014-NMCA-084, ¶ 11. It must be covered. Or at the very least, there is a dispute of fact regarding these issues rendering them inappropriate for determination at this stage.

### 7. The CSA and the Medicaid Act do not preempt a state mandate to cover medical cannabis.

The Controlled Substances Act ("CSA") preempts state law whenever "there is a positive conflict between [a] provision of th[e CSA] and [a] State law so that the two cannot consistently stand together." 21 U.S.C. § 903. *See also Oregon Prescription Drug Monitoring Program v. U.S. Drug Enf't Admin.*, 860 F.3d 1228, 1236 (9th Cir. 2017). To apply 21 U.S.C. § 902, this Court must determine whether "compliance with both federal and state regulations is a physical impossibility," or the "state law stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress." *Gade v. Nat'l Solid Wastes Mgmt. Ass'n*, 505 U.S. 88, 98 (1992). *See also Oregon Prescription Drug Monitoring Program*, 860 F.3d at 1236.

There is simply no physical impossibility for Defendants to both cover medical cannabis through reimbursement and comply with the CSA. First, the DOJ is powerless to prosecute any Defendant for covering medical cannabis consistent with LECUA due to the appropriations rider. And it would be premature to rule that Defendants cannot cover medical cannabis based on Defendants' argument that according to the CSA it has no medical use, because the DOJ already has proposed a rule asserting in part that medical cannabis indeed does have an acceptable medical use, consistent with HHS's longstanding position. 89 Fed. Reg. at 44,616–44,619. In a matter of months, cannabis likely will be reclassified as a Schedule III controlled substance, even more formally allowing for its medical application. The full purpose and objectives of Congress are changing with respect to the CSA's application to cannabis and medical cannabis.

Against this rescheduling backdrop, the reasoning of prior cases on this point no longer holds at all. For example, this district's decision in *Albuquerque Pub. Sch. v. Sledge* was based on its

reasoning that "in the CSA, Congress conclusively determined that cannabis 'has a high potential for abuse' and 'no currently accepted medical use in treatment,' and that there is 'a lack of accepted safety for use of the drug,' even 'under medical supervision.'" *Albuquerque Pub. Sch. v. Sledge*, Civ. No. 18-1029 KK/LF, Civ. No. 18-1041 KK/LF, 2019 WL 3755954, at *13 (D.N.M. Aug. 8, 2019) (quoting 21 U.S.C. § 812(b)(1) & Sch. I). Now, HHS has made the opposite determination, and the DEA expanded its analysis to include the abundantly clear fact that 38 states have implemented medical cannabis programs demonstrating the acceptable medical uses of cannabis. 89 Fed. Reg. at 44,616–44,617.

Similarly, this district's decision in *Hemphill v. Liberty Mut. Ins. Co.* also reasoned that "by characterizing marijuana as a Schedule I drug, Congress expressly found that the drug has no acceptable medical uses." *Hemphill v. Liberty Mut. Ins. Co.*, No. Civ. 10-861 LH/RHS, 2013 WL 12123984, at *2 (D.N.M. Mar. 28, 2013) (citing *Raich*, 545 U.S. at 27). *Hemphill*'s heavy reliance on the fact that at that time cannabis was a Schedule I drug crumbles considering the DEA's proposed rule to reschedule cannabis.

In *Garcia v. Tractor Supply Co.*, this district reasoned that "[s]tate medical marijuana laws that provide limited state-law immunity may not conflict with the CSA." *Garcia v. Tractor Supply Co.*, 154 F. Supp. 3d 1225, 1230 (D.N.M. 2016). And that case analyzed whether an employer had to accommodate an employee's medical cannabis use under the New Mexico Human Rights Act, *id.*, which is different than simply reimbursing for medical cannabis as a behavioral health service. Moreover, other districts have held otherwise. In *Noffsinger v. SSC Niantic Operating Co. LLC*, the federal District of Connecticut held:

> Given that the CSA nowhere prohibits employers from hiring applicants who may be engaged in illegal drug use, defendant has not established the sort of "positive conflict" between § 21a–408p(b)(3) and the CSA that is required for preemption under the very terms of the CSA. *See* 21 U.S.C. § 903. Nor does any tension between § 21a–

> 408p(b)(3) and the CSA rise to the level of the "sharp" conflict required to establish
> obstacle preemption under the case law. The CSA does not preempt § 21a–408p(b)(3).

273 F. Supp. 3d 326, 336 (D. Conn. 2017). LECUA now also has a similar protection against

discrimination for employees. N.M. STAT. ANN. 1978 § 26-2B-9(A) (2019) ("it is unlawful to take an

adverse employment action against an applicant or an employee based on conduct allowed under the

Lynn and Erin Compassionate Use Act"); *Stanley v. Cnty. of Bernalillo*, No. A-1-CA-36835, 2019

WL 6728849, at *2 (N.M. Ct. App. Nov. 26, 2019) (discussing LECUA prior to employee protection

amendment). This further renders the *Garcia* decision unusable to guide the Court here.

Defendants still are unable to articulate how mere reimbursement for medical cannabis

services violates the CSA. Indeed, the CSA has not been a barrier for insurers to insure businesses

engaged in the cannabis industry against loss—even of cannabis products. *See, e.g.*, *Apex Sols., Inc.*

*v. Falls Lake Nat'l Ins. Co.*, Case No. 21-cv-05496-HSG, 2021 WL 5102157, at *1 (N.D. Cal. Nov.

3, 2021) (discussing claim under insurance policy for loss of cannabis products); Cannabis Insurance

coverage offered through HUB, available at https://www.hubinternational.com/industries/cannabis-

insurance/.

The only particularized argument Defendants offer is that somehow reimbursement is the

equivalent to aiding or abetting. Of course, New Mexico courts have repeatedly rejected this

argument. For example, like Defendants here, in *Vialpando*, the employer asserted that, "because

marijuana remains a controlled substance under federal law, the order to reimburse Worker for money

spent purchasing a course of medical [cannabis] 'essentially requires' Employer to commit a federal

crime." *Vialpando*, 2014-NMCA-084, ¶ 15. But just like Defendants here, in *Vialpando*, the employer

did "not cite to any federal statute it would be forced to violate." *Id.* In *Lewis*, the Court of Appeals

affirmed "we declined to reverse the WCJ's order in *Vialpando* based on either federal law or public

policy, observing that the employer had not demonstrated that the order would have required it to

15

violate a federal statute and that federal public policy was ambiguous in contrast with New Mexico's clear public policy expressed in the Compassionate Use Act." *Lewis*, 2015-NMCA-090, ¶ 26.

Defendants only cite to the general prohibition that "it shall be unlawful for any person knowingly or intentionally--(1) to manufacture, distribute, or dispense, or possess with intent to manufacture, distribute, or dispense, a controlled substance . . . ."21 U.S.C. § 841(a)(1). But there is no dispute Defendants would not be knowingly or intentionally manufacturing, distributing, or dispensing medical cannabis, nor would they be possessing medical cannabis with any such intent. Merely reimbursing for medical cannabis services would not aid, abet, counsel, command, induce or procure the commission of a federal crime. 18 U.S.C. § 2. Defendants do not bother to articulate the elements of aiding and abetting, which requires that "the government must prove beyond a reasonable doubt that the defendant: (1) 'willfully associate[d] with the criminal venture,' and (2) 'aid[ed] such venture through affirmative action.'" *United States v. Isaac-Sigala*, 448 F.3d 1206, 1210 (10th Cir. 2006) (quoting *United States v. Delgado–Uribe,* 363 F.3d 1077, 1084 (10th Cir. 2004)). Certainly, Defendants complying with state law mandating coverage of medical cannabis would not be "willfully associating with a criminal venture" nor aiding any criminal venture through affirmative action.

As already discussed, the DOJ is powerless to prosecute any Defendant for reimbursing Plaintiffs' medical cannabis purchased in accordance with LECUA due to the appropriations rider. And now the HHS and DEA agree that cannabis should not be classified as a Schedule I controlled substance because of its medical necessity under state programs like LECUA. Rather than it being impossible for Defendants to comply with both the CSA and covering medical cannabis, it is instead impossible for them to have any criminal exposure under the CSA for doing so.

For these same reasons, mandating coverage of medical cannabis as a medically necessary behavioral health service is not an obstacle to Congress's stated objectives as outlined in the DEA's proposed rule reclassifying it as Schedule III based on its extensive medical use in 38 states. Medicaid law also does not expressly prohibit reimbursing medical cannabis as a medically necessary behavioral health service, as already discussed.  The lack both of federal reimbursement or FDA approval is not a barrier to New Mexico mandating Medicaid coverage of medical cannabis as a medically necessary behavioral health service. In fact, Congress's clear objective in passing the Medicaid Act and giving states such wide latitude to determine what constitutes medical necessity and what unique benefits states ultimately choose to provide to their citizens is consistent with recognizing New Mexico's choice to mandate coverage of medical cannabis.

Moreover, to the extent that Defendants erroneously argue that medical cannabis cannot be covered as a Schedule I controlled substance, as already discussed, the premise of their argument will fall away in less than 60 days. In fact, it is the state's option whether to comply with the tracking requirements of 42 U.S.C. § 1396w-3a for Schedule III controlled substances. 42 U.S.C. § 1396w-3a(h)(1) (making it "the option of the State involved" to include in the definition of controlled substance "a drug included in schedule III or IV"). Once cannabis is classified as Schedule III, New Mexico already has controls in place under LECUA for qualified patients to access it as a medically necessary behavioral health service, and New Mexico already tracks medical cannabis production and sales. And even now, New Mexico can still require coverage of medical cannabis for its Medicaid recipients even without federal reimbursement.

**8. SB317 implies a private right of action.**

Relying primarily on an unpublished opinion, Defendants contend that if there is "no express language" in a statute creating a private right of action, then no private right of action can exist. *See*

Mot. 21 (citing *Ward v. Convergys Inc.*, No. 1:10-CV-21 WJ/WDS, 2010 WL 11493700 (D.N.M. Apr. 30, 2010)).  Such a position is contrary to the prevailing case law in New Mexico, which holds that a private right of action can be implied by a New Mexico statute.  *See Cates v. Mosher Enterprises, Inc.*, 2017-NMCA-063, ¶ 23, 403 P.3d 687, 694 (holding that a New Mexico statute can provide for an implied right of action); *Woodard v. Fid. Nat. Title Ins. Co.*, No. CIV 06–1170 RB/WDS, 2007 WL 5173415, at \*5–6 (D.N.M. Dec. 4, 2007) (analyzing when an implied right of action can exist).  When a statute does not expressly provide for a private right of action, the question turns to whether the statute contains an implied private right of action. *Woodard*, 2007 WL 5173415, at \*5–6.

Courts will look to the factors outlined in *Yedidag v. Roswell Clinic Corp.*, 2015-NMSC-012, ¶ 31, 346 P.3d 1136, to evaluate whether a private right of action is implied. These factors are:

> (1) Was the statute enacted for the special benefit of a class of which the plaintiff is a member? (2) Is there any indication of legislative intent, explicit or implicit, to create or deny a private remedy? and (3) Would a private remedy either frustrate or assist the underlying purpose of the legislative scheme?

*See Cates v. Mosher Enterprises, Inc.*, 2017-NMCA-063, ¶ 7, 403 P.3d 687, 690; *In re Picacho Hills Util. Co., Inc.*, U.S.D.C. Appeal No. 17-cv-1260 MV/JHR, 2019 WL 259133, at \*4 (D.N.M. Jan. 18, 2019); *see also Woodard*, 2007 WL 5173415, at \*5–6 (noting that the test to determine whether a statute embraces an implied private right of action is legislative intent) (citing *Key v. Chrysler Motors Corp.*, 1996-NMSC-038, ¶ 11, 918 P.2d 350, 354). While federal courts are more limited than state courts in their ability to find an implied private right of action in state statutes, nothing prohibits a federal court from utilizing the *Yedidag* factors to determine if an implied right of action exists. Federal courts, unlike state courts, may not look to public policy to determine whether an implied private right of action exists, but such a public policy analysis is independent of the three *Yedidag* factors outlined above. *See Nat'l Tr. for Historic Pres. v. City of Albuquerque*, 1994-NMCA-057, ¶ 11, 874 P.2d 798, 802.

Based on the *Yedidag* factors, an implied private right of action clearly exists for SB317.  First, SB317 was clearly enacted for the benefit of those patients that receive behavioral health services. The entire purpose of SB317 is to eliminate cost sharing for behavioral health services. Plaintiffs are qualified patients under LECUA specifically for the treatment of behavioral health conditions.  As recipients of behavioral health services, Plaintiffs are members of the class that SB317 is intended to benefit.

Second, in the statutory scheme applicable to this case, the Legislature has been explicit in identifying those areas where it intends to deny a private remedy. For example, when addressing the coverage of costs incurred in cancer clinical trials, the Legislature mandated that "[t]he provisions of this section do not create a private right or cause of action for or on behalf of a patient against the health plan providing coverage." N.M. STAT. ANN. 1978 § 59A-22-43(E).  If the Legislature intended for its silence to mean an absence of a private right of action, there would have been no need to specifically state that a private right of action does not exist for clinical trials. The fact that the Legislature believed it necessary to exclude a private right of action for clinical trials, demonstrates that the Legislature believed a private right of action existed for the rest of the statutory scheme. Had the Legislature intended for no private right of action to exist for any of the code sections, its language related to clinical trials would be rendered meaningless. Such an interpretation would violate a well-established canon of statutory interpretation: "'[a] statute must be construed so that no part of the statute is rendered . . . superfluous.'" *Gallegos v. Bernalillo Cnty. Bd. of Cnty. Commissioners*, 272 F. Supp. 3d 1256, 1266 (D.N.M. 2017) (quoting *State v. Javier M.*, 2001–NMSC–030, ¶ 32, 33 P.3d 1, 15)). Defendants are now asking this Court to do exactly that: interpret the statutory scheme in such a manner to deem the Legislature's own language as meaningless and superfluous.  Such an approach is contrary to both the fundamental tenet of statutory interpretation and the plain language of the

statutory scheme.  The indication here is that the Legislature intended for a private right of action to exist for SB317.

Finally, allowing a private remedy would assist the underlying purpose of SB317's legislative scheme.  The entire purpose of SB317 is to ensure that health insurers do not require their members, such as Plaintiffs, to share in the cost of receiving behavioral health services. It is these members that are optimally positioned to know whether or not the health insurers are complying with the mandates of SB317.  Allowing a private right of action to enforce beneficiaries' rights under SB317 would help ensure compliance by health insurers who would potentially face private litigation as a result of any non-compliance.  Heightened compliance with SB317 would further the Legislature's goal of ensuring that beneficiaries are not required to pay for behavioral health services.

All three of the *Yedidag* factors weigh in favor of finding an implied private right of action in SB317.  While a federal court cannot find an implied private right of action based solely on public policy grounds, the *Yedidag* factors, which are independent of the public policy analysis, allow for a federal court finding of an implied private right of action. Even in the absence of an express private right of action in the language of SB317, an implied right of action does exist.

**9.  Plaintiffs state a cause of action for breach of contract.**

Defendants' sole arguments regarding Plaintiffs' breach of contract claims are that (1) Plaintiffs did not allege they asked Defendants for coverage, and (2) Defendants' "terms plainly exclude coverage for cannabis." Mot. 22-23. These arguments cancel each other out, since Defendants take the position that they will not cover medical cannabis, but that Plaintiffs needed to ask for coverage to find that out, despite Defendants' stated intention to breach their contracts and not cover cannabis. Nonetheless, Plaintiffs did ask for coverage, and, unsurprisingly, Defendants did not respond by covering medical cannabis. *See* Letter to BCBSNM (Feb. 18, 2022) (attached as "Exhibit

1"); Letter to Presbyterian (Feb. 18, 2022) (attached as "Exhibit 2"); Letter to Western Sky (Feb. 18, 2022) (attached as "Exhibit 3").[4]  Moreover, the Court must accept as true Plaintiffs' allegations that "Defendants are in breach of their respective health insurance policies as Plaintiffs have paid, without reimbursement, one hundred percent (100%) of the cost of their medical cannabis." Doc. 22 ¶ 134. At the very least, there is a dispute of fact as to whether it was necessary for Plaintiffs to do more than send a letter requesting coverage, especially in light of Defendants' stated position that they will not reimburse for medical cannabis, and their continued refusal to do so to this day.

Defendants' argument that they cannot cover medical cannabis because they only cover medically necessary services ignores that, for Plaintiffs, a provider has already determined that medical cannabis is a medically necessary service as part of the process for them becoming qualified patients. Doc. 22 ¶¶ 50-57; *Vialpando*, 2014-NMCA-084, ¶ 10. At the very least, this is a factual issue. To the extent Defendants rely on cannabis being a Schedule I controlled substance, this argument is premature in light of the DEA's proposed rule. And Defendant MCOs can over medical cannabis as a value added service or otherwise as a service paid for solely with New Mexico funds, negating any imagined barrier in the Medicaid Act.

**10. Plaintiffs state a cause of action for breach of the covenant of good faith and fair dealing.**

Defendants argue that because there is no breach of contract, there can be no breach of the implied covenant of good faith and fair dealing. But Plaintiffs have plausibly alleged claims for breach of contract, and those allegations must be accepted as true for the purposes of Defendants' motion. "A party breaches the covenant of good faith and fair dealing by denying a contracting party the benefits owed to it under the contract." *Mirzai v. State of New Mexico Gen. Services Dept.*, 506 F. Supp. 2d 767, 777 (D.N.M. 2007). Plaintiffs have sufficiently alleged that Defendants denied

---

[4] These attached letters highlight the need for further discovery, and Plaintiffs object to consideration of extrinsic evidence without discovery. Fed. R. Civ. P. 56(d).

Plaintiffs the benefits owed under the contracts to provide coverage for medical cannabis as a medically necessary behavioral health service without cost sharing. Doc. 22 ¶¶ 138-139.

Moreover, Defendants greatly exaggerate the purported "clarity" of their contracts to claim that mandating coverage of medical cannabis would require "rewriting" a valid agreement. Mot. 24.[5] No rewriting at all is required to countenance a good faith and fair dealing claim here. "[E]very contract in New Mexico imposes the duty of good faith and fair dealing upon the parties in the performance and enforcement of the contract." *Grebe v. State Farm Ins.*, Civ. 01-833 WWD/KBM, 2002 WL 35650005, at *3 (D.N.M. Apr. 3, 2002) (quoting *Paiz v. State Farm Fire & Cas. Co.*, 1994-NMSC-079, ¶ 31, 880 P.2d 300, 309). While an implied covenant of good faith and fair dealing will not override express provisions addressed by the terms of a contract, *Grebe*, 2002 WL 35650005, at *3, Defendants' own terms state they will cover medically necessary services, and they must cover behavioral health services. 45 C.F.R. § 156.110(a). Medical cannabis is a medically necessary behavioral health service that must be covered. *Vialpando*, 2014-NMCA-084, ¶ 10.

**11. Plaintiffs state a cause of action for violations of the Unfair Practices Act.**

Again, Defendants skate past the federal pleading standard of plausibility to attack Plaintiffs' claims under the New Mexico Unfair Practices Act ("UPA"). But Plaintiffs have plausibly alleged that Defendants, by offering plans that do not cover medical cannabis as they should have, violated the UPA. Plaintiffs' allegations that must be accepted as true include that medical cannabis is a medically necessary behavioral health service for Plaintiffs. Doc. 22 ¶¶ 50-71. And Defendants agree that they must cover medically necessary services, and must cover behavioral health services. 45 C.F.R. § 156.110(a).

---

[5] Defendants admit that only Western Sky Community Care, Inc. has anything specific about medical cannabis. Mot. 23 n.8. The lack of any similar specificity in the remaining Defendants' policies is fatal to their claim that there can be no implied term. And all of this is inappropriate for resolving on a Rule 12(b)(6) motion, where the only concern of the Court is whether there are plausible allegations entitling Plaintiffs to relief. Plaintiffs have met this standard.

Moreover, Plaintiffs further allege that Defendants, as large health insurance companies, failed to provide coverage for their members who qualified to use medical cannabis under LECUA. In order to have so qualified, these patients were diagnosed by a healthcare practitioner as having a debilitating medical condition. Doc. 22 ¶¶ 53-54. The gross disparity in the bargaining strength and sophistication between health insurers and individuals with debilitating medical conditions is clear on its face. Nonetheless, Plaintiffs still allege in the First Amended Complaint that Defendants "took advantage of the lack of ability or capacity of Plaintiffs." Doc. 22 ¶ 145. Plaintiffs further allege that Defendants' refusal to pay for medical cannabis constituted an "unconscionable trade practice" that resulted in a "gross disparity between the value received by Plaintiffs and the consideration given . . . ." *Id.*

When analyzing a motion to dismiss, a "court must view all reasonable inferences in favor of the plaintiff, and the pleadings must be liberally construed." *Ruiz*, 299 F.3d at 1181. The factual allegations in a Complaint do not need to expressly lay out the basis for the claim of procedural unconscionability. *Johnson v. Hertz Corp.*, Civil No. 06-43 WJ/ACT, 2006 WL 8443332, at *3 (D.N.M. Nov. 20, 2006). "[T]he notice pleading requirements of Fed. R. Civ. P. 8 do not compel a Plaintiff to set forth all facts [regarding unconscionability] with particularity." *Id.* Even if not expressly pled, Plaintiffs' allegations of unconscionability can be sufficient to put Defendants on notice of a claim under a procedural or substantive theory. *Id.*

Here, Plaintiffs have sufficiently outlined allegations that put Defendants on notice of a claim under both a procedural or substantive theory. Plaintiffs have alleged that there is a gross disparity in both the sophistication of the parties and the fairness of the terms of the health insurance policies. This is sufficient to defeat a motion to dismiss. Further, the parties should be allowed to develop their claims/defenses regarding unconscionability through discovery. The New Mexico Supreme Court has held that "[a] court in which a portion of a contract, including a lease, is challenged as unconscionable

should receive evidence, if relevant, as to its commercial setting, purpose and effect in ruling on unconscionability." *State ex rel. State Highway & Transp. Dept. v. Garley*, 1991-NMSC-008, ¶ 32, 806 P.2d 32, 39. An analysis of procedural unconscionability will "require a court to take evidence on the circumstances surrounding contract formation." *Johnson*, 2006 WL 8443332, at *3. Plaintiffs have adequately pled their UPA claim, and should have the opportunity to develop the claim through discovery.

**12. Plaintiffs state a cause of action for violations of the Unfair Insurance Trade Practices Act.**

Under the Unfair Insurance Trade Practices Act ("UITPA"), Defendants cannot "collect any sum as premium or charge for insurance or other coverage, which insurance or coverage is not then provided . . . ." N.M. STAT. ANN. 1978 § 59A-16-24(A). Plaintiffs have clearly alleged that Defendants are offering insurance that does not cover without cost sharing medical cannabis despite it being a medically necessary behavioral health service, contrary to the requirements of the benchmark plan, and SB317. Defendants are receiving premiums, either as MCOs from the state or as Health Maintenance Organizations ("HMO") for private insurance. Thus they are violating N.M. STAT. ANN. 1978 § 59A-16-24(A). Defendants cannot dispute that they receive premiums. For the MCO Defendants offering Medicaid plans, their very definition includes that they are receiving premiums: "'managed care organization' means a person eligible to enter into risk-based prepaid capitation agreements with the department to provide health care and related services . . . ." N.M. STAT. ANN. 1978 § 27-11-2(G). Similarly:

> 'health maintenance organization' means a person that undertakes to provide or arrange for the delivery of basic health care services to enrollees on a prepaid basis, except for enrollee responsibility for copayments or deductibles, including a carrier that issues:
> (1)    a short-term contract;

>   (2)    an excepted benefit policy or contract intended to supplement major medical coverage, including medicare supplement, vision, dental, disease-specific, accident-only or hospital indemnity-only insurance policies; or
>
>   (3)    a policy for long-term care or disability income;

N.M. STAT. ANN. 1978 § 59A-46-2(O) (2019).

Just as with Plaintiffs' UPA claim, Plaintiffs' meet the pleading standard and plausibly allege that Defendants violated the UITPA. *Johnson*, 2006 WL 8443332, at *3.

**13. Plaintiffs state a cause of action for unjust enrichment.**

New Mexico has long recognized actions for unjust enrichment. *Ontiveros Insulation Co. v. Sanchez*, 2000–NMCA–051, ¶ 11, 129 N.M. 200 (citing *Tom Growney Equip., Inc. v. Ansley*, 1994–NMCA–159, ¶ 6). To prevail on an unjust enrichment claim, one must show that: (1) another has knowingly benefitted at one's expense, and (2) in a manner such that allowance of the other to retain the benefit would be unjust. *Hunt v. N. Carolina Logistics, Inc.*, 193 F. Supp. 3d 1253, 1266 (D.N.M. 2016) (Browning, J.) (citing *Ontiveros*, 2000-NMCA-051, ¶ 11).

New Mexico courts have long recognized that claims for unjust enrichment are distinct from claims sounding in contract or tort law. *See Hydro Conduit Corp. v. Kemble*, 1990-NMSC-061, ¶ 19, 110 N.M. 173 (noting that unjust enrichment constitutes an independent basis for recovery in a civil law action, analytically and historically distinct from the other two principal grounds for liability under contract and tort). The theory of unjust enrichment "has evolved largely to provide relief where, in the absence of privity, a party cannot claim relief in contract and instead must seek refuge in equity." *Ontiveros*, 2000-NMCA-051, ¶ 11.

Defendants contend that Plaintiffs cannot maintain a cause of action for unjust enrichment due to the "presence of a contract." Mot. 26. Earlier in their same motion, Defendants appear to argue that there is no contractual relationship between the parties. Mot. 22 n.7. Defendants cannot simultaneously argue that there is no contractual relationship, while also moving to dismiss Plaintiffs'

claim for unjust enrichment due to the existence of a contract. Further, Defendants contend that the benefits sought by Plaintiffs are not included in any contract. Mot. 22-23. If these benefits are not covered in any contract, then Plaintiffs should be allowed to seek relief in equity. In either case, it would be inappropriate and premature to dismiss Plaintiffs' claim for unjust enrichment, and Plaintiffs in any event, as masters of their Complaint, certainly are allowed to plead alternative theories of recovery

**14. Plaintiffs have a right to declaratory relief.**

Plaintiffs have a valid claim for declaratory judgment because their other causes of action are all plausible substantive causes of action. *Carr v. Oklahoma Student Loan Auth.*, No. CIV-23-99-R, 2023 WL 6929853, at *5 (W.D. Okla. Oct. 19, 2023) (denying motion to dismiss declaratory judgment action under 28 U.S.C. § 2201). Defendants' only argument that Plaintiffs' claim for declaratory relief should be dismissed is based on their arguments that all other claims must be dismissed. As already discussed, Plaintiffs have sufficiently pled multiple causes of action and dismissal under Rule 12(b)(6) is inappropriate.

**15. Plaintiffs request leave to amend their complaint if there is any insufficiency.**

In the alternative, if there is any doubt about the sufficiency of the allegations under Rule 12(b)(6), Plaintiffs should be afforded the ability to amend their complaint. Rule 15(a) allows a party to amend his or her complaint after twenty days have elapsed since the opposing party was served "only by leave of court or by written consent of the adverse party," with such amendments being "freely given when justice so requires." Fed. R. Civ. P. 15(a). *See also Calderon v. Kansas Dept. of Social and Rehabilitation Serv.,* 181 F.3d 1180, 1186 (10th Cir. 1999) ("The liberal granting of motions for leave to amend reflects the basic policy that pleadings should enable a claim to be heard on its merits."); *Hall v. Bellmon*, 935 F.2d 1106, 1109-10 (10th Cir. 1991) (stating that "dismissals

under Rule 12(b)(6) typically follow a motion to dismiss, giving plaintiff notice and opportunity to amend his complaint."); *Awad v. United States*, No. 15-CV-0373-MV-KBM, 2016 WL 10592150, at *2 (D.N.M. Feb. 24, 2016) ("[T]his Court has consistently endorsed the view that "if a complaint is vulnerable to 12(b)(6) dismissal, a district court must permit a curative amendment, unless an amendment would be inequitable or futile.") (quoting *Phillips v. Cty. of Allegheny*, 515 F.3d 224, 236 (3d Cir. 2008)). Accordingly, if the Court believes that any of Plaintiffs' claims do not meet the standards of Rule 12(b)(6) then Plaintiffs request they be afforded the opportunity to amend their complaint.

**16. Plaintiffs respectfully request the Court deny Defendants' Motion in its entirety.**

Defendants want to complicate this case with federal law. But it is about state law, and New Mexico's ability to require Defendants to cover medical cannabis as a medically necessary behavioral health service, whether there is federal reimbursement or not. Moreover, it is premature to adopt Defendants' arguments that are based nearly entirely on *Raich* and cannabis being a Schedule I controlled substance, when that is imminently going to change.

Respectfully submitted,

**SAUCEDO HARRIGAN APODACA GRIESMEYER APODACA**

By: ___*/s/ Brian Griesmeyer*___
       Christopher T. Saucedo
       Ryan H. Harrigan
       Frank T. Apodaca
       Brian Griesmeyer
800 Lomas Blvd. NW, Suite 200
Albuquerque, NM 87102
(505) 338-3945
csaucedo@saucedochavez.com
rharrigan@saucedochavez.com
fapodaca@saucedocahvez.com
bgriesmeyer@saucedochavez.com
*Attorneys for Plaintiffs*

I HEREBY CERTIFY that on May 31, 2024,
the foregoing was filed electronically through
the CM/ECF system, which caused all parties and
counsel to be served by electronic means, as more
fully reflected on the Notice of Electronic Filing.

*/s/ Christopher T. Saucedo*
Christopher T. Saucedo, Esq.