**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW MEXICO**

NEW MEXICO TOP ORGANICS—ULTRA HEALTH, INC.,
JACOB R. CANDELARIA,
MATIAS TRUJILLO,
ERICA ROWLAND, AND
ARIEL McDOUGAL,
on behalf of themselves and all others similarly situated,

        Plaintiffs,

vs.                                                  No. 22-CV-546 MV/LF

BLUE CROSS AND BLUE SHIERLD OF NEW MEXICO,
PRESBYTERIAN HEALTH PLAN, INC., AND
WESTERN SKY COMMUNITY CARE, INC.,

        Defendants.

**MEMORANDUM OPINION AND ORDER**

**THIS MATTER** is before the Court on Defendant's Combined Motion to Dismiss Plaintiffs'

First Amended Complaint [Doc. 69]. The Court, having considered the Motion and relevant law,

finds that the Motion is well-taken and will be granted.

**BACKGROUND**

Plaintiffs seek a determination that medical cannabis in New Mexico should be fully

covered by health insurance, both for individuals with Medicaid insurance and for individuals who

have private insurance. Doc. 22 at 1. Plaintiffs include a corporation in the cannabis selling

business and individuals who pay out of pocket for medical marijuana to treat behavioral health

conditions. Specifically, Plaintiffs are as follows:

New Mexico Top Organics is a licensed medical marijuana dispensary corporation in New

Mexico. Doc. 22 at 4; Doc. 69 at 2. Jacob R. Candelaria has a health insurance policy with Blue

Cross and Blue Shield, which covers behavioral health services. *Id.* He has been diagnosed with

posttraumatic stress disorder and uses a medical marijuana card to obtain medical cannabis to improve his condition. *Id.* Matias Trujillo is the father and guardian of MT, a minor, who uses medical marijuana as a treatment for his non-verbal autism. *Id.* Mr. Trujillo and MT are participants in the Medicaid program and have Presbyterian's Centennial Care 2.0 plan, which covers behavioral health services. *Id.* Erica Rowland likewise is a participant in the Medicaid program and has Western Sky's Centennial Care 2.0 plan, which covers behavioral health services. Doc. 22 at 4-5; Doc. 69 at 2. She has been diagnosed with posttraumatic stress disorder and uses medical cannabis to improve her condition. *Id.* She hopes to start a business in the cannabis industry. *Id.* Ariel McDougal is also a participant in the Medicaid program and has Blue Cross and Blue Shield of New Mexico's Centennial Care 2.0 plan, which covers behavioral health services. *Id.* She has been diagnosed with posttraumatic stress disorder and uses medical marijuana as part of her treatment. *Id.*

Plaintiffs allege that New Mexico state law requires insurance companies to fully cover the cost of medical marijuana used for behavioral health issues. Doc. 22 at 1. Plaintiffs allege seven counts of violations: violation of state law, specifically the Behavioral Health Services Equity Acts, breach of contract, breach of the covenants of good faith and fair dealing, violation of the Unfair Practices Act, violation of the Insurance Code Trade Practices and Fraud Act (by non-Medicaid class members against non-Medicaid defendants), unjust enrichment, and an action for declaratory judgement. *Id.* at 21-27. Plaintiffs bring this action as a class and request class certification as well as declaratory relief, compensatory damages, punitive damages, and attorneys fees. *Id.* at 17, 27-28. Plaintiffs originally brought this action in state court, but Defendants removed the case to federal court and this Court found removal proper. Doc. 67.

**STANDARD**

Under Rule 12(b)(6), the Court may dismiss a complaint for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). "The nature of a Rule 12(b)(6) motion tests the sufficiency of the allegations within the four corners of the complaint." *Mobley v. McCormick*, 40 F.3d 337, 340 (10th Cir. 1994). When considering a Rule 12(b)(6) motion, the Court must accept as true all well-pleaded factual allegations in the complaint, view those allegations in the light most favorable to the plaintiff, and draw all reasonable inferences in the plaintiff's favor. *Smith v. United States*, 561 F.3d 1090, 1097 (10th Cir. 2009), *cert. denied*, 130 S. Ct. 1142 (2010).

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citations omitted). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief.'" *Id.* (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 557 (2007)).

The Court in *Iqbal* identified "two working principles" in the context of a motion to dismiss. *Id.* First, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* Accordingly, Rule 8 "does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions." *Id.* at 678-79. "Second, only a complaint that states a plausible claim for relief survives a motion to dismiss." *Id.* at 679; *see Twombly*, 550 U.S. at 570 (holding that a plaintiff must "nudge" her claims "across the line from conceivable to plausible"). Accordingly, "where the well-pleaded facts do

3

not permit the court to infer more than the mere possibility of misconduct, the complaint has

alleged – but it has not shown – that the pleader is entitled to relief." *Id.* (citation omitted).

In keeping with these two principles, the Court explained,

a court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth.  When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief."

*Id.* at 679.

## DISCUSSION

The basis of the First Amended Complaint is Plaintiffs' allegation that health insurance

companies operating in New Mexico are required by state law to cover the cost of medical cannabis

when it is being properly used for diagnosed behavioral health issues. Doc. 22 at 1. Plaintiffs assert

that this mandate stems from the "aggregated effect of New Mexico statutes." Doc. 74 at 1. First,

the Lynn and Erin Compassionate Use Act ("LECUA") allows the use of medical cannabis in New

Mexico for patients who have been diagnosed with "debilitating medical conditions." NMSA

1978, § 26-2B-1 *et seq.* The definition of "debilitating medical conditions" includes posttraumatic

stress disorder and "any other medical condition, medical treatment, or disease as approved by the

department." *Id.* at § 26-2B-3. The LECUA exempts qualified patients from criminal and civil

penalties otherwise associated with the use of cannabis. *Id.* at § 26-2B-5.

Next, Senate Bill 317, which was codified in the New Mexico Insurance Code as NMSA

1978 § 59A-22-57, 59A-23-16, 59A-46-51, requires that insurers "that offer[] coverage of

behavioral health services shall not impose cost sharing on those behavioral health services."

NMSA 1978 § 59A-22-57, 59A-23-16, 59A-46-51. Either as a service or medication, medical

cannabis falls within the definition of a behavioral health service. *See Vialpando v. Ben's Auto.*

4

*Servs.*, 331 P.3d 975, 978-79 (N.M. Ct. App. 2014). The sponsors of Senate Bill 317, Senators Jeff

Steinborn and Martin Hickey, are reported as having said that the law makes it clear that insurers

should cover medical cannabis. Robert Nott, *New State Law Requires Health Insurers Cover*

*Medical Cannabis for Some Conditions*, Santa Fe New Mexican, Feb. 23, 2022. Plaintiffs argue

that "the relevant statutes should be read harmoniously so that behavioral health treatment is more

accessible through insurance coverage." Doc. 22 at 3.

Plaintiffs describe how federal and state laws and regulations set baselines that insurance

companies must meet in providing coverage. Doc. 22 at 14-15. For instance, pursuant to the federal

Affordable Care Act, non-grandfathered individual and small group plans must meet certain

requirements determined by the states in which they operate. Doc. 22 at 14; 42 U.S.C. §§ 300gg-

6(a), 18022(b). Defendants argue that the insurance they provide is consistent with the New

Mexico Benchmark Plan, but also that Plaintiffs "do not and cannot allege that any Plaintiff's plan

must follow the New Mexico Benchmark Plan." Doc. 69 at 7 n.5. The Court need not address the

question of whether Defendants are bound by the New Mexico Benchmark Plan, because the Plan

does not require coverage of medical cannabis. New Mexico Benchmark Plan at 37, 41, 42 (not

specifically mentioning cannabis, but excluding all non-FDA approved substances). Therefore,

even accepting as true Plaintiff's allegation that Defendants are required to meet the baseline

coverage in the Benchmark Plan, the Benchmark Plan contains no requirement that Defendants

provide coverage of medical cannabis.

Within this statutory landscape, New Mexico state courts have held that medical cannabis

is a reasonable and necessary medical service. *Id.* at 10. In *Vialpando*, the Court of Appeals of

New Mexico found that, under the Workers' Compensation Act, an employer must reimburse an

injured worker for medical cannabis when it is used pursuant to the LECUA. 331 P.3d at 976. The

Court found that medical cannabis is covered under the Workers' Compensation Act because it constitutes "reasonable and necessary health care services from a health care provider." *Id.* Furthermore, the Court found that there was no conflict with federal law because the employer did not clearly state a specific federal law that reimbursement would violate, and the federal government's public policy position is unclear. *Id.* at 979-80.

In *Sacred Garden, Inc. v. New Mexico Tax. & Rev. Dep't*, the Court of Appeals of New Mexico found that medical cannabis should qualify as a prescription drug for tax deduction purposes. 495 P.3d 576, 577 (N.M. Ct. App. 2020). The Court noted that, when medical cannabis is dispensed pursuant to the LECUA with a medical certification form, the process satisfies the restrictions requirement stemming from the federal Food, Drug and Cosmetics Act, and therefore qualifies as a prescription. *Id.* at 578.

The New Mexico legislature has agreed that "[f]or the purposes of medical care…a qualified patient's use of cannabis pursuant to the Lynn and Erin Compassionate Use Act shall be considered the equivalent of the use of any other medication under the direction of a physician and shall not be considered to constitute the use of an illicit substance or otherwise disqualify a qualified patient from medical care." NMSA 1978 § 32A-3A-15 (2019). Likewise, the medical community in New Mexico has found that medical cannabis is an effective treatment for a range of psychiatric disorders, including posttraumatic stress disorder. Doc. 22 at 12. Plaintiffs argue that, from the combination of state legislation, state court decisions, and the professional reports of the medical community in New Mexico, there arises a state law mandate for health insurance to cover medical cannabis. *Id.* at 11-12.

In response to Defendants' arguments that any state law on the issue is preempted by federal law prohibiting the use of cannabis, Plaintiffs argue that cannabis likely will soon be

reclassified from a Schedule I drug to a Schedule III drug. Doc. 74 at 4. Plaintiffs discuss the medical reasoning behind a reclassification effort and a DOJ proposed rulemaking for reclassification. *Id.* They note that, since August 2023, the Department of Health and Human Services (HHS) has recommended that cannabis be rescheduled to a Schedule III drug. *Id.* Plaintiffs also note that, since 2014, Congress has prohibited the DOJ from taking action to interfere with state medical cannabis programs. *Id.*

Defendants move to dismiss the First Amended Complaint based on the following arguments: New Mexico state law does not compel Defendants to offer insurance for medical cannabis, federal law would preempt such a state law if it did exist, SB 317 is not privately enforceable, Plaintiffs fail to state a claim for breach of contract, Defendants have not breached any implied covenant, Plaintiffs failed to state an Unfair Practices Act violation, Plaintiffs' claim for an Insurance Code Trade Practices Act violation fails, Plaintiffs cannot recover for unjust enrichment, and Plaintiffs have no right to declaratory relief. Doc. 69.

As set forth herein, this Court finds that New Mexico state law does not compel health insurance coverage of medical cannabis and that, even if it did, such a requirement would be preempted by federal law. For these reasons alone, the Court must grant Defendants' motion to dismiss, and thus need not address Defendants' remaining arguments.

1. **New Mexico State Law Does Not Compel Defendants To Offer Health Insurance Coverage Of Medical Cannabis.**

Plaintiffs allege that the mandate for health insurance companies to cover the costs of medical cannabis comes not only from SB 317, but from the "aggregated effect of New Mexico statutes." Doc. 74 at 1. Plaintiffs' argument starts with the supposition that medical cannabis is a medically necessary behavioral health service under the LECUA, caselaw, and reports from experts in the field. Doc. 22 at 9-12. Next, Plaintiffs argue that under SB 317 and either the New

7

Mexico Benchmark or the Alternative Benchmark Plan, Defendants must cover medically necessary behavioral health services with no cost-sharing. *Id.* at 13-17. Plaintiffs' argument, however, is not sound.

This Court need not and does not address the question of whether cannabis is medically necessary because doing so is not integral to the analysis in this case and because this Court, without direct knowledge and experience in the medical field, is not in the best position to make that decision. Certainly, the LECUA, the medical experts Plaintiffs cite, *see id.* at 11-13, and the New Mexico Court of Appeals in *Vialpando* and *Sacred Garden* suggest that cannabis is reasonably necessary as a treatment for some behavioral health conditions. On the other hand, by virtue of its classification as a Schedule I drug, Congress has decreed that cannabis has no medical use. 21 U.S.C. § 812(b). Even accepting as true for the sake of argument that cannabis does have medical value, state law still does not compel Defendants to provide coverage for it.

To start, the New Mexico Benchmark and Alternative Benchmark Plan explicitly include coverage of some outpatient behavioral services, but not all. *See* New Mexico Benchmark Plan at 37; 42 C.F.R. § 440.347; 45 C.F.R. § 156.100; 45 C.F.R. § 156.110; 45 C.F.R. § 156.111. Under the Benchmark Plan, there are some behavioral health treatments that are explicitly covered and some that are explicitly not covered. New Mexico Benchmark Plan at 25-27. Tellingly, cannabis does not seem to be included in either category. *Id.* The fact that medical cannabis is not explicitly covered in the state's Benchmark Plan signifies that state law does not mandate coverage of it.

Turning then to SB 317, the law requires that insurance plans that cover behavioral health services not impose any cost-sharing "on those services." NMSA 1978 §§ 59A-22-57, 59A-23-16, 59A-46-57, 59A-47-51. This language suggests that the prohibition on cost-sharing applies only to those behavioral health services that the insurance provider already covers. *See Woods v. Std.*

*Ins. Co.*, 771 F.3d 1257, 1263 (10th Cir. 2014) ("analysis must begin and end with the language of the statute itself"). Because the insurance providers do not cover medical cannabis, and they are not required to provide such coverage under the New Mexico Benchmark requirements, it follows that they are not required to eliminate cost-sharing. Whether the intent of the statute was to include medical cannabis, as is suggested by the article quoting the bill's sponsors, the language of the statute does not do so. And this Court is bound by the plain meaning of the statute, not an article discussing the statute. *Landavazo v. Sanchez*, 802 P.2d 1283, 1286 (N.M. 1990) ("A statute must be interpreted according to its plain meaning."). For these reasons, the Court does not find that New Mexico state law compels Defendants to cover the cost of medical cannabis.

2. **Even If New Mexico State Law Did Compel Defendants To Cover the Cost of Medical Cannabis, such a Law or Laws Would Be Preempted by Federal Prohibitions.**

Defendants argue that they cannot be compelled to offer coverage of medical cannabis because doing so would be a violation of federal law. Doc. 69 at 14. In response, Plaintiffs argue that federal law is on the brink of changing and that Defendants do not outline exactly what federal law their providing coverage would violate. Doc. 74 at 13-15. Despite the proposed rulemaking that Plaintiffs cite, federal law regarding cannabis has not substantially changed, and the federal criminalization of cannabis preempts any state law decriminalization. In addition, to the extent it is necessary to describe a specific federal law that they would be in violation of if they followed Plaintiff's understanding of state law, Defendants have done so. Doc. 69 at 14 (aiding and abetting in violation of 18 U.S.C. § 2(a).

Cannabis remains a Schedule I drug pursuant to the Controlled Substances Act. 21 U.S.C. § 812(c). As a Schedule I drug, under federal law cannabis (A) has a high potential for abuse, (B) has no currently accepted medical use in treatment, and (C) there is a lack of accepted safety for

use under medical supervision. 21 U.S.C. § 812(b). Because it is designated as a Schedule I drug, the use, possession, distribution, or manufacturing of cannabis is a criminal offense under federal law. 21 U.S.C. § 841(a)(1). And consistent with that designation and its ramifications, the United States Food and Drug Administration ("FDA") has not approved medical cannabis for any use, medical or otherwise.[1] Much of Plaintiffs' rebuttal argument depends on the changing federal landscape of cannabis regulation. Doc. 74 at 3. Plaintiffs assert that, if the proposed reclassification of cannabis becomes permanent, "all of Defendants' arguments based on the purported illegality of medical cannabis fail, because they will be based on an incorrect assertion of disputed fact." *Id.* at 4. The Court, however, need not address these arguments because the proposed reclassification of cannabis did not come to be, and cannabis in fact remains a Schedule I drug. (A hearing on the proposed rulemaking remains on hold pending an appeal. *See* Schedules of Controlled Substances: Rescheduling of Marijuana, 89 Fed. Reg. 44,597 (May 21, 2024)).

When federal law and state law are contradictory, as is often the case regarding cannabis, the Supremacy Clause of the Constitution dictates that federal law preempts state law. *See Wos v. E.M.A.*, 568 U.S. 627, 636 (2013) (finding Medicaid Act preempted other state laws); 21 U.S.C. § 903 (Controlled Substances Act preempts state laws that are contradictory). There is conflict preemption when either "it is impossible for a private party to comply with both state and federal law" or state law "stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress." *Crosby v Nat'l Foreign Trade Council*, 530 U.S. 363, 372-73 (2000) (citations and quotations omitted).

---

[1] The FDA has approved some medical products that contain cannabis or cannabis-derived compounds, but the FDA has not approved cannabis itself. *See* "FDA Regulation of Cannabis and Cannabis-Derived Products, Including Cannabidiol (CBD)" July 16, 2024. FDA Regulation of Cannabis and Cannabis-Derived Products, Including Cannabidiol (CBD) | FDA

In this case, if state law did mandate coverage of medical cannabis, Defendants would not be able to comply with both federal and state law. Under federal law, the possession of cannabis is a criminal offense. *See* 21 U.S.C.  841(a)(1); *Gonzales v. Raich*, 545 U.S. 1, 14, 27 (2005). And federal law imposes criminal liability on anyone who "aids, abets, counsels, commands, induces, or procures" criminal action. 18 U.S.C. § 2(a). By providing coverage for medical cannabis, Defendants would be aiding and abetting illegal drug procurement. The likelihood of whether Defendants would be prosecuted for that crime is irrelevant. The criminalization of cannabis at the federal level remains intact, and therefore would conflict with a state law mandating coverage of medical cannabis. *See Hemphill v. Liberty Mut. Ins. Co.*, No. CV 10-861, 2013 WL 12123984, at *2-3 (D.N.M. Mar. 28, 2013) (determining that health insurance does not need to cover medical cannabis because federal law prohibiting cannabis preempts the LECUA).

Of equal importance, pursuant to the Medicaid Act, health insurance companies can only cover drugs and medications that have been "approved for safety and effectiveness as a prescription drug" by the FDA. 42 U.S.C. § 1396r-8(k)(2)(A). Because there is no FDA approval for medical cannabis, it would be a violation of federal law, specifically the Medicaid Act, for Defendants in this case to cover medical cannabis in their Medicaid plans. Similarly, the New Mexico Benchmark Plan specifically excludes drugs and services that are not FDA approved. New Mexico Benchmark Plan, 37, 41-42.

Plaintiffs allege that the Medicaid Act is not a barrier to Defendants providing coverage because insurance companies often go beyond the basic level required by the Medicaid Act. Doc. 74 at 8. But providing coverage of medical cannabis would not be going beyond the basic level required by the Medicaid Act. Rather, it would be moving in direct conflict with provisions of that Act. Plaintiffs' example of New Mexico mandating coverage for pregnancy termination under

Medicaid even though such coverage is not reimbursed by the federal government is therefore inapposite. *Id.*

Plaintiffs cite several cases in which the New Mexico Court of Appeals found that medical cannabis should be covered under the Workers' Compensation Act and that there was no preemption by federal law. *See Vialpando*, 331 P.3d at 980; *Lewis v. American General Media*, 355 P.3d 859, 858 (N.M. Ct. App. 2015). The Appeals Court found no federal preemption based on two analyses. First, they found that there was no preemption under a public policy rationale because federal public policy regarding cannabis is unclear. *Vialpando*, 331 P.3d at 980. Second, they found that there was no direct preemption because the defendant did "not cite to any federal statute it would be forced to violate, and [the Court] [would] not search for such a statute." *Id.* It is important to note that not only are these decisions from the Court of Appeals rather than the New Mexico Supreme Court, but also, more vitally, the question of preemption involves analysis of a federal statute; it is not a question of state law.

Judges in the federal district of New Mexico, however, have declined to follow the reasoning of the New Mexico Court of Appeals. In at least three cases, this district court has found that the federal prohibition on cannabis preempts state level attempts to compel third parties to either pay for or allow state-authorized use of medical cannabis. Doc. 69 at 15-16. *See Albuquerque Pub. Sch. v. Sledge*, No. CV 18-1029, 2019 WL 3759479, at *4 (D.N.M. Aug. 8, 2019) (determining that school did not have to accommodate medical cannabis use because state law allowing medical cannabis is preempted by Controlled Substances Act); *Hemphill*, No. CV 10-861, 2013 WL 12123984, at *2-3 (holding that insurance company did not have to pay medical expenses for cannabis use due to federal preemption); *Garcia v. Tractor Supply Co.*, 154 F. Supp. 3d 1225, 1230 (D.N.M. 2016) (finding that employer did not need to accommodate medical

cannabis use because it is circumscribed under federal law by Controlled Substances Act). Plaintiffs argue that *Garcia* is not relevant precedent because, since that decision was entered, the state legislature has clarified the LECUA to include employment discrimination protections. Doc. 74 at 15. However, the holding in *Garcia* is that federal law preempts state law in this context, so it matters not whether state law in support of medical cannabis has become more extensive. Doc. 74 at 15.

There are federal district courts that have upheld contracts that involve the cultivation of cannabis plants, and more specifically, insurance coverage of cannabis plants. *See Mann v. Gullickson*, 2016 WL 6473215 (N.D. Cal. November 2, 2016) (determining that federal public policy regarding cannabis is unclear and it was possible to craft a legal remedy); *Green Earth Wellness Center, LLC v. Atain Specialty Ins. Co.*, 163 F. Supp. 3d 821, 834-35 (D. Colo. 2016) (in a contractual case in which both parties "had a mutual intent to treat marijuana products as insurable commodities," finding that ambiguous federal public policy on cannabis does not render the contract unenforceable); *but see Tracy v. USAA Cas. Ins. Co.*, 2012 WL 928186 (D. Haw. Mar. 16, 2012) (holding that it would be against federal law and federal public policy to enforce an insurance contract regarding cannabis plants); *United States v. McIntosh*, 833 F.3d 1163, 1176 (9th Cir. 2016) ("we consider whether a superior authority, which prohibits certain conduct, can prevent a subordinate authority from implementing a rule that officially permits such conduct by punishing individuals who are engaged in the conduct officially permitted by the lower authority. We conclude that it can."). These are all persuasive rather than controlling cases; they illustrate that federal courts are grappling with the conflicting and somewhat uncertain legal landscape of cannabis regulation at the state and federal level. However, the cases in which courts found federal public policy was insufficiently clear to interfere with state law, namely *Mann* and *Green Earth*,

13

concerned contract law cases. The case before this Court is easily distinguishable because it not about the enforcement of a contract that evinced clear mutual intent to insure cannabis and whether federal law can override that contract.

Like other federal courts, this Court is not bound by the decisions of the New Mexico Court of Appeals. *See Rawers v. U.S.*, 488 F. Supp. 3d 1059, 1118 (D.N.M. 2020). This Court determines that, to the extent that state law could compel Defendants' coverage of medical cannabis, there is a conflict with federal law. And to the extent that it is necessary to identify a specific federal statute that such a state law would contravene, Defendants have done so by pointing to 18 U.S.C. § 2(a) and 21 U.S.C. § 841(a)(1). *See* doc. 69 at 14. While this Court agrees that the federal government's public policy position in regard to cannabis is unclear – cannabis remains federally illegal, but is not being prosecuted, and the medical value of cannabis is the source of continuous debate – the letter of the law in regard to cannabis is clear. Cannabis is federally prohibited and, therefore, any state law that compelled Defendants to cover medical cannabis in New Mexico would be preempted.

## CONCLUSION

This Court finds that New Mexico state law does not compel insurance coverage of medical cannabis and that, even if it did, such a law or laws would be preempted by federal law, under which cannabis, as a Schedule I drug, is deemed illegal and not medically useful. For these reasons alone, the Court must dismiss the First Amended Complaint and need not consider the remainder of Defendants' arguments in favor of dismissal.

**IT IS THEREFORE ORDERED** that Defendant's Combined Motion to Dismiss Plaintiffs' First Amended Complaint [Doc. 69] is **GRANTED,** as follows: the First Amended Complaint is **DISMISSED WITH PREJUDICE**.

ENTERED this 23rd day of April 2025.

_____
MARTHA VAZQUEZ
SENIOR UNITED STATES DISTRICT JUDGE